## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| KURT MORALES II, BEN FABRIKANT, STEPHEN OST, BRANDON CALLIER, and NATHAN BYARS, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SUNPATH LTD., a Delaware corporation, NORTHCOAST WARRANTY SERVICES, INC., a Delaware corporation, and MATRIX FINANCIAL SERVICES, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.:  20-cv-01376-RGA <br><br> **Jury Trial Demanded** <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs KURT MORALES II, BEN FABRIKANT, STEPHEN OST, BRANDON CALLIER, and NATHAN BYARS ("Plaintiffs") bring this First Amended Class Action Complaint against Defendants MATRIX FINANCIAL SERVICES, LLC ("Matrix"), SUNPATH LTD. ("Sunpath"), and NORTHCOAST WARRANTY SERVICES, INC. ("Northcoast") (collectively, "Defendants") to put a stop to their unlawful advertising and telemarketing of vehicle service contracts ("VSCs") using unsolicited automated calls, and to obtain redress for all persons injured by their conduct. Plaintiffs allege as follows upon personal knowledge as to their acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.  Defendants make unsolicited and unauthorized phone calls to consumers using false and misleading statements and artificial or prerecorded voice messages to sell VSCs.

2.      Defendants did not and do not obtain prior express written consent to make these advertising and telemarketing calls and, therefore, have violated and continue to violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and its implementing regulations, including 47 C.F.R. § 64.1200(a)(2).

3.      Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

4.      The TCPA targets unauthorized calls exactly like the ones Defendants made in this case, based on Defendants' use of technological equipment to spam consumers on a grand scale.

5.      Robocalls are "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020) (citing 137 Cong. Rec. 30821 (1991)).

6.      By causing the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiffs and the Classes.

7.      Plaintiffs, individually and on behalf of Classes of all others similarly situated, seek damages and an injunction requiring Defendants to stop their unlawful calling practices.

## PARTIES

8.      Kurt Morales ("Morales") is a natural person and citizen of Carrollton, Texas.

9.      Ben Fabrikant ("Fabrikant") is a natural person and citizen of Omaha, Nebraska.

10.     Brandon Callier ("Callier") is a natural person and citizen of El Paso, Texas.

11.     Stephen Ost ("Ost") is a natural person and citizen of Scottsdale, Arizona.

2

12.     Nathan Byars ("Byars") is a natural person and citizen of Austin, Texas.

13.     Matrix is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 3100 McKinnon Street, Suite 420, Dallas, Texas.

14.     Sunpath is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 50 Braintree Hill Park #310, Braintree, Massachusetts.

15.     Northcoast is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 800 Superior Ave. East, 21st Floor, Cleveland, Ohio.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because the case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Sunpath, Northcoast, and Matrix reside in this District.

## COMMON FACTUAL ALLEGATIONS

18.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

19.     Defendants and their agents and co-conspirators amassed lists of thousands of vehicle owners from public records, vehicle sales and registration records, and data aggregators and then sent phone calls using artificial or prerecorded voice messages *en masse* to market their VSCs.

20.     Plaintiffs and Class members answered their phones and heard the artificial or prerecorded voice message.

21.     The voice misinforms the listeners, falsely stating that their manufacturer's auto warranty is about to expire.

22.     After consumers responded to the automated voice, Defendants falsely solicited them to "extend" their manufacturer's auto warranty.

23.     Although the VSCs are expensive (approximately $4,000) and are financed over three to five years, they are not actually warranties, nor do they "extend" the manufacturer's warranty.

24.     Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

25.     Defendants' unlawful behavior alleged herein has a well-documented history.  On May 23, 2018, Defendants' authorized reseller, National Auto Protection Corp. ("NAPC") agreed to pay $10,000 to the Kansas Attorney General to settle claims that it violated the Kansas analog to the TCPA.

26.     On June 6, 2019, a class action lawsuit was filed by Catherine Shanahan against NAPC and Matrix alleging violations of the TCPA. During the lawsuit, NAPC dissolved and did not answer the complaint. The lawsuit is ongoing against Matrix. NAPC's dissolution document was signed on September 6, 2019, by its authorized representative Gustav Renny ("Renny").

27.     On March 18, 2020, a class action lawsuit was filed by Nathen Day against National Car Cure ("NCC") and Matrix alleging violations of the TCPA. During the lawsuit, NCC filed an answer, admitting it was an authorized sales agent of Matrix products.

28.     NCC and NAPC are controlled by Renny. When Renny dissolved NAPC, he transferred NAPC's business assets to NCC.  NCC used and continues to use accounts, assets (such as websites and lists of contact information), and employees of NAPC. One such asset is the website policy-hub.com, which contains a link to a Leadspedia account in the name of "National Auto," which was active and remains active after NAPC's dissolution.

29.     Affordable Car Cure, Inc. ("ACC") is another company owned and controlled by Renny.  Like NCC and NAPC, ACC also places unsolicited robocalls in violation of the TCPA on behalf, at the behest, and with the knowledge of Defendants.

30.     On October 12, 2019, a class action lawsuit was filed by Dennis Born against Celtic Marketing LLC ("Celtic"), Sunpath, and Northcoast alleging violations of the TCPA. During the lawsuit, Celtic filed an answer and admitted that it was authorized to sell VSCs of Sunpath and Northcoast.

31.     Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiffs but will be revealed through discovery to amplify what is shown below.

32.     In just the last several months, the BBB profile for Matrix has received[1] numerous reviews documenting its unlawful telemarketing practices. As of September 9, 2020, BBB's profile for Matrix indicates that Matrix received 47 ratings with an average of a 1 out of 5 stars rating.  A sample of consumer complaints is reproduced below.  Matrix responds to certain complaints, and therefore has knowledge of the complaints:

- Jen P, Aug. 18, 2020: For two months now I've been getting calls from random numbers that are disconnected when I call them back. And for two months, every "specialist" from "Matrix" tells me that they need $150 TODAY or I won't be able to get coverage. They are really sketchy when you ask about the company or ask for a phone number, and just keep saying "it's on your caller ID". Rude, pushy, and such SCAMMERS! Stop calling me and go get a real job!!! Seriously, STOP calling me!!!!!

- Bob H, Aug. 6, 2020: Illegal robo calls from out of service local phone numbers. I am on the do not call list. Matrix has a worthless warranty anyway and would not even provide warranty work if you were foolish enough to waste your money on this overpriced non service. Read consumers reports about vehicle warranties. A very profitable scammy company.

- Joeb1966, Aug. 5, 2020: Tons of robo calls from their "hired" telemarketers. I have hit "2" many times to be removed from their calling lists to no avail. Since it has been well over a month and they continue to call I am lodging a complaint. I have the proof they keep calling on my caller ID, which I will happily share. Since I am tired of this, spoofing local phone numbers and such, this time I played along with the call, once they thought they had a customer I got transferred to a "chevy" area to which I played along and got the name of the website which is related to this Matrix Warranty company. When I went through the sales pitch and told the gentleman there I would look it up, I asked for a number to call back, normal sales stuff about "only good for 24 hours", he claimed to be reachable at the number I was called on. I called that same number back, ##### and hit a very rude person who ultimately said she would need to transfer me to the Chevy area. Basically this sounds to me like indirect telemarketing. Matrix may claim that they have no awareness of this but if they are making money from this, it indeed is a relationship that should hold them liable. photos of there callings @ www.zeroless.***/matrix.html.

- Jeanne T, June 29, 2020: I'm a newbie here. The only comment I can make is that Matrix Warranty Solutions DOES make sales calls directly. I just got one.

---

- Alex M May 11, 2020: What can I say about the phone call. Like everyone else on here I been getting robocalls from them for the last few months. I would be encourage to press 1 and speak to the representative of the company. When I did get someone on line they would go into full sale mode trying to get you to say YES. When asked about the name of the company, they would try and twist conversation away from it. So I would just ask them to please stop calling me on my work phone. Every time they would just hang up on me. 3-4 days later I get calls again on my work phone. Its very frustrating as I have to answer the calls and lost other calls cause of it. this time I played the game to get the answer which company it is. Lo and behold its Matrix warranty solutions. The push to buy the warranty is non stop. $993 per year $3975 for four years but if I pay up front it would be $800 off. All the proper sales talk with chose your options. They put the urgency into the sale. To have you make the choice now. They also keep saying they have an A+ from BBB. What does it take to get an A+ with so many bad reviews ??? Please call the phone # listed on this site and let them feel what we feel. No good company will use Robocalls unless they plan to scam you. The answer they give on here is a lie cause we all know who pays for the robocalls.

- Jay D, Apr. 27, 2020: Robo-call from a spoofed local number. Answering the robo-dial and curious to know who was calling me even though I have been on the DNC list for many years, I was connected to an agent who attempted to obtain my vehicle information. After confirming some vehicle details, he forwarded me to another agent who started asking personal questions like my name. I then asked him which company was selling the policy and he replied Matrix. I told him just I wanted to know who was calling, then tried to ask a couple more questions and he hung up on me! When I called the number (***) ***- XXXX back I got a surprised gentleman who had no idea his number had even been spoofed. Matrix seems very disingenuous in repeatedly stating that they do not place cold calls. However, in reading the (many) complaints here it seems apparent that they hire telemarketers to do the dirty work for them and then have no resolve to actually take action on the complaints or rein in their third-party marketers. So, they don't kill anyone themselves, they just hire hitmen! Seems pretty obvious they don't investigate complaints and that this behavior has continued for a long time. I have no reason to report them other than they seem very disreputable based on my experience. I believe the cold calls are misleading, and deceptive (not to mention incredibly annoying) and that Matrix should in no way be entitled to a BBB A+ rating after viewing the dozens of similar complaints I have seen on here.

33.     BBB posts the following reviews from customers of Sunpath/Northcoast products, and Sunpath and Northcoast have knowledge of the complaints:

7

- STOP CALLING, Aug. 13, 2020: They call us about 2 times a day! We have repeatedly (for many months now) asked to be put on DO NOT CALL list however they never stop calling! They use fake phone numbers on caller ID and when you try to call that number back, it's been disconnected. At the top of their BBB page it says they use THIRD PARTY sellers of their products - so that is the way they are getting around the Do Not Call laws and how they can say "they" don't make unsolicited calls. Ever. "They" aren't making the unsolicited calls but the people they hire or pay commissions to are doing it on "their" behalf. So they are "hiring" people to harass consumers and break the Do Not Call laws. That in itself should be illegal. When we asked the lady who called today what the name of her company was, where she was located and where we could access company info online, she said Sunpath, Florida and gosunpath.com. Why didn't she give her third party company name??? She was a representive of Sunpath, period. I am going to encourage everyone to come to this BBB review site and post about this 'scheme' when they get the UNSOLICITED calls from Sunpath, Ltd.! Let's get this stopped!

- Anonymous, July 4, 2020: I, *****, am Power of Attorney for *****. I am filing this complaint on *****'s behalf. It's regarding Contract # *********. This company along with another company just like them have been charging *****'s account for a vehicle protection plan. I also plan to file a complaint against them too. The books look the same: "Ultimate Auto Protection". ***** is older and has ***********, does not drive anymore, thus no car on the road. Anyone who talks to her would realize in no time she is not of sound mind. Yet these people have managed to call her and trick her out of her card information for a warranty in which she doesn't need. Deceptive Practices. They started charging her account and have been charging $188.39 a month. ***** never signed a contract with them and never signed a credit card direct pay authorization form with them. They have no right to be charging her. In order to enter into a contract a person has to be of sound mind, right? That's law 101. As I said before anyone who talks with her for any length of time would see she has memory problems. They have taken advantage and its an expensive advantage. I would think this would also fall as Elder Abuse. These sales people just continue to badger you with phone calls. Note: I tried to call Sunpath Funding at *********** and it puts me on hold with hold music for 30 seconds and then disconnects. Even that is suspicious.

- John TG, June 15, 2020: I have been getting unsolicited calls regarding car warranties every 2-3 days for several months now in spite of constantly asking to be removed from their list. I finally agreed to talk to an agent to see where this harassment was coming from. I ended up speaking with someone who said they were with *** ****** and they quoted me a warranty from SunPath. I see no evidence that a *** ****** exists, so I'm putting this on SunPath. SunPath - you either knowingly or negligently sell your products using criminal third parties. This is your problem and your responsibility to fix.

- Anonymous, June 9, 2020: Robocalling me a lot.

- Alec B, June 3, 2020: They use a call forwarding service to call you from numbers that are in your area code. They then pass you off and threaten to close your account if you don't purchase today. Ultimately hanging up on you if you don't pass (sic).

- Anonymous, April 6, 2020: SunPath Ltd has contacted my cellphone for marketing purposes. My phone has been on the national Do Not Call registry for many years and this company should not have contacted me.

34.    Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants.

35.    Defendants employ the use of *numerous* third parties to assist them in making the robocalls at issue, in addition to Celtic Marketing and Renny's entities. In fact, Defendants have submitted declarations in court that state "[v]arious telemarketing companies have sought permission by contract to market the policies that Sunpath administers." *See, e.g., Born v. Celtic Marketing LLC*, No. 8:19-cv-01950-JLS-ADS, ECF Nos. 49-2, 49-3; *Shanahan v. Nat'l Auto Protection Corp.*, No. 1:19-cv-03788, ECF No. 55 (referring to many companies, including NAPC, that are non-exclusive sellers of warranty service products). And, in response to BBB complaints, Defendants repeatedly refer to *numerous* "third party independent contract vendors." https://www.bbb.org/us/ma/braintree/profile/auto-warranty-plans/sunpath-ltd-0021-133715/complaints.

### *Plaintiff Kurt Morales II*

36.    Morales received dozens of phone calls using an artificial or prerecorded voice advertising extended auto warranties between January 2017 and March 2020, which necessarily included two or more calls within a twelve-month period.

37.    On March 4, 2020, at 4:06 PM, Morales was called on his cell phone number ending in 2227 from the phone number displayed as 702-351-3030.

9

38.     When Morales answered the phone, he heard an artificial or prerecorded voice message.

39.     The voice said: "We have an important update about your vehicle. Your car's extended warranty is set to expire.  We have tried to reach you by mail about this issue, and since we have not heard from you, we are giving you one final courtesy call before we close your file. At this time your car would be without coverage and you would be responsible for all repairs on your vehicle. If you wish to decline coverage and be added to our do not call list, press 2 now, or press 1 if you would like to extend or reinstate your car's warranty."

40.     Morales pressed one and was connected with a live agent identifying herself as "Jasmine" who solicited him for a VSC.

41.     Jasmine stated that Morales would receive "Diamond Coverage."

42.     "Diamond Coverage" is a trademark used by Sunpath.

43.     Morales purchased a VSC from NCC, Sunpath and Northcoast.

44.     Morales' cell phone number ending in 2227 has been on the National Do Not Call Registry since December 15, 2008.

### Plaintiff Ben Fabrikant

45.     On September 9, 2020, Plaintiff Ben Fabrikant received a call on his cell phone from (504) 384-6929.

46.     Fabrikant answered and heard an artificial or prerecorded voice message advertising vehicle service contracts.

47.     The artificial or prerecorded voice said that "your car warranty is about to expire" and "press one to speak to a representative."

48.     Fabrikant "pressed one" and was transferred to a live representative.

49. Fabrikant was solicited for a VSC from ACC, and Sunpath and Northcoast.

50. Fabrikant purchased and received a VSC from Sunpath and Northcoast.

### *Plaintiff Brandon Callier*

51. From November 2019 to January 2020, Callier received at least ten phone calls to his cell phone number ending in 4604 that played an artificial or prerecorded voice message advertising auto warranties.

52. Callier received the following calls:

| Date | Time | From |
|---|---|---|
| November 19, 2019 | 10:25 AM | 915-383-5556 |
| November 21, 2019 | 12:46 PM | 915-383-1254 |
| December 11, 2019 | 3:47 PM | 915-383-2503 |
| December 16, 2019 | 2:28 PM | 915-383-4610 |
| December 18, 2019 | 11:14 AM | 915-383-1861 |
| December 18, 2019 | 8:33 AM | 915-383-4742 |
| December 19, 2019 | 1:11 PM | 915-383-5469 |
| December 21, 2019 | 3:50 PM | 317-527-9965 |
| January 6, 2020 | 10:52 AM | 407-272-8548 |
| January 21, 2020 | 12:59 PM | 915-383-5130 |

53. The calls from the (915) area code were spoofed and from falsified area codes in order to trick Callier into answering more frequently because people are more likely to answer a phone call from a number that appears to be local rather than one from an unrecognizable area code.

11

54.    On December 21, 2019, Callier answered his phone and heard an artificial or prerecorded voice advertising auto warranties.

55.    Callier responded to the voice prompts and was solicited for a vehicle service contract from NCC, Sunpath and Northcoast.

56.    There was only a short reprieve from robocalling before Callier began receiving robocalls from a sales agent of Sunpath and Northcoast.

57.    In February 2020, Callier received at least twelve (12) phone calls to his cell phone number ending in 4604 that played artificial or prerecorded voice messages advertising auto warranties.

58.    Callier received the following calls from the same number:

| Date | Time | From |
|---|---|---|
| February 3, 2020 | 12:47 PM | 203-303-9394 |
| February 6, 2020 | 2:17 PM | 203-303-9394 |
| February 7, 2020 | 9:13 AM | 203-303-9394 |
| February 7, 2020 | 10:05 AM | 203-303-9394 |
| February 7, 2020 | 12:22 PM | 203-303-9394 |
| February 11, 2020 | 9:54 AM | 203-303-9394 |
| February 12, 2020 | 12:41 PM | 203-303-9394 |
| February 12, 2020 | 1:27 PM | 203-303-9394 |
| February 13, 2020 | 9:34 AM | 203-303-9394 |
| February 13, 2020 | 11:31 AM | 203-303-9394 |
| February 13, 2020 | 1:11 PM | 203-303-9394 |

59.     On February 20, 2020, Callier received a phone call that played an artificial or prerecorded voice message. Callier listened to the message and purchased a VSC from the caller, resulting in a VSC with Sunpath and Northcoast.

### Plaintiff Stephen Ost

60.     On May 27, 2020, Ost received a call from (352) 600-3503 on his cell phone number ending in 6707.

61.     The call used an artificial or prerecorded voice message and Ost listened to it.

62.     The voice said: "Hi, this is Brandon from dealer processing.  I'm reaching out because the factory warranty on your vehicle is set to lapse which means you'll be responsible for any expensive repair bills that come up. This is your final courtesy call before I have to close the file. So, please give me a call back at 888-252-5761 when you have a couple of minutes to talk, and I'll get your coverage reinstated. I tried reaching out last week, and I hadn't heard back yet. So I'll do my best to keep this open until you call back. I'm here at the office 8 a.m. to 6 p.m. Pacific Time Monday through Friday. Again, that number is 888-252-5761. And you can ask for Brandon."

63.     On June 1, 2020, Ost called 888-252-5761.

64.     Brandon Michaels answered and solicited Ost for a VSC.

65.     Ost was sold Matrix's Element Powertrain Plus Coverage Plan for $3,129.90.

### Plaintiff Nathan Byars

66.     On November 8, 2019, Byars received a phone call from (915) 800-8866 on his cell phone number ending in 1696.

67.     When Byars answered, he heard an artificial or prerecorded voice message asking questions about auto warranties.

68.     The voice said "Hi, this is Allison, I am calling because we sent you several notifications about extending coverage on your car warranty, but I didn't hear back, and this is one last courtesy call to let you know that you can still keep your vehicle under coverage. Would you like to hear more about your options?"

69.     Byars responded to the automated voice and was transferred to a live agent.

70.     The live agent solicited Plaintiff for a VSC.

71.     The live agent said to go to the elementprotectionplans.com, a website operated by Matrix, to look at their "Customer First" plan.

72.     On December 20, 2019, Byars received an unsolicited call on his cell phone from a number identifying itself as (314) 696-5987 selling Matrix VSCs.

73.     On December 26, 2019, Byars received an unsolicited call on his cell phone from a number identifying itself as (636) 228-5011 selling Matrix VSCs.

74.     Byars' cell phone number has been listed on the National Do Not Call Registry since August 13, 2003.

**FACTS COMMON TO ALL PLAINTIFFS**

75.     Plaintiffs never consented to receive the calls alleged herein. Plaintiffs had no relationship with Defendants prior to the calls alleged herein.

76.     Defendants advertised their products by falsely informing the consumer that their warranty had expired and that Defendants' product would "extend" the original auto manufacturer's warranty coverage. The VSCs are not auto warranty extensions and do not provide auto warranty coverage. The VSCs are also with parties other than the original manufacturer of the vehicle and warrantors.

14

77.     The calls conveyed a false association with the dealerships that sold Plaintiffs their vehicles. For example, the callers' artificial or prerecorded voice messages stated that they were with the warranty department or dealer processing. In reality, Defendants are not employees of the dealerships or affiliated with the dealerships that sold Plaintiffs their vehicles.

78.     Defendants falsely convey or imply that there is a prior relationship with Plaintiffs; falsely claiming that Plaintiffs were called or sent mail previously by Defendants when they were not.

79.     Defendants' calls violated Plaintiffs' and the Class members' statutory rights and caused actual damages, annoyance, intrusion on privacy and seclusion, and the waste of Plaintiffs' time and money in listening to the artificial or prerecorded voice messages and being forced to stay on the phone and purchase the VSCs for which they were solicited in order to identify the persons responsible for the robocalling.

80.     In addition to incurring damages, Defendants have not ceased their unlawful conduct alleged herein, and it continues unabated.

## CLASS ALLEGATIONS

81.     **Class Definitions**: Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiffs and the Classes defined as follows:

> **Matrix Monetary Relief Class**. All persons in the United States who: (1) from October 9, 2016 to the present; (2) were sent at least one telephone call; (3) on their cellular or residential telephone; (4) that used an artificial or prerecorded voice message; (5) promoting Matrix's vehicle service contracts.

> **Sunpath Monetary Relief Class**. All persons in the United States who: (1) from October 9, 2016 to the present; (2) were sent at least one telephone call; (3) on their cellular or residential telephone; (4) that used an artificial or prerecorded voice message; (5) promoting Sunpath's vehicle service contracts.

**Northcoast Monetary Relief Class.** All persons in the United States who: (1) from October 9, 2016 to the present; (2) were sent at least one telephone call; (3) on their cellular or residential telephone; (4) that used an artificial or prerecorded voice message; (5) promoting Northcoast's vehicle service contracts.

**Matrix Injunctive Relief Class.** All persons who did not give express written consent prior to receiving calls advertising Matrix's vehicle service contracts on their cellular or residential telephone numbers.

**Sunpath Injunctive Relief Class.** All persons who did not give express written consent prior to receiving calls advertising Sunpath's vehicle service contracts on their cellular or residential telephone numbers.

**Northcoast Injunctive Relief Class.** All persons who did not give express written consent prior to receiving calls advertising Northcoast's vehicle service contracts on their cellular or residential telephone numbers.

**Matrix Do Not Call Class.** All persons in the United States who: (1) from October 9, 2016 to the present; (2) were called two or more times within a twelve month period by a person authorized to sell Matrix vehicle service contracts without prior express written consent; (3) while their number was registered on the National Do Not Call Registry.

**Sunpath/Northcoast Do Not Call Class.** All persons in the United States who: (1) from October 9, 2016 to the present; (2) were called two or more times within a twelve month period by a person authorized to sell Sunpath or Northcoast vehicle service contracts without prior express written consent; (3) while their number was registered on the National Do Not Call Registry.

82.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

83.    **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiffs, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Classes. For example, Defendants' agent, Renny and his entities, place thousands of unsolicited robocalls in violation of the TCPA on Defendants' behalf, and there are numerous BBB complaints against Defendants and their agents for unlawful robocalling. Members of the Classes can be identified through Defendants' records.

84.    **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls. All of the claims arise from the same course of conduct: the use of an artificial or prerecorded voice message to call cellular and residential telephones without having obtained prior express written consent.  Plaintiffs' claims under the TCPA arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury as the Class's claims.

85.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiffs' claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiffs have no interests antagonistic to the interests of the other members of the Classes and are subject to no unique defenses. Plaintiffs have retained competent counsel to prosecute the case on behalf of Plaintiffs and the Classes.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so.

86.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to

the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinge on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

87. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

- Whether Defendants are liable under the TCPA;

- Whether the calls were made using artificial or prerecorded voice messages;

- Whether there was prior express written consent to make the calls;

- The measure of damages if Defendants are found to be liable;

- Whether Plaintiffs and members of the Classes are entitled to treble damages based on the knowledge or willfulness of Defendants' conduct.

The common claims of Plaintiffs and the Class members that arise from this same course of conduct generate several common questions of fact and law, including whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) and (B) by placing calls using an artificial or prerecorded voice message to cellular or residential telephone numbers without possessing records of prior express written consent. The phone logs of the calls placed to Plaintiffs and Class members will serve as

common proof in the same manner for each of the Plaintiffs and Class members. These common legal and factual issues are capable of proof through common evidence.

88.   **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### COUNT I
**Violation of Telephone Consumer Protection Act, 47 U.S.C. § 227(b)**
***(On behalf of All Monetary Relief Classes and Injunctive Relief Classes and Against All Defendants)***

89.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90.   Defendants caused telephone calls to be placed to Plaintiffs' and the Class members' cellular and residential telephones without prior express written consent.

91.   Defendants' calls were made for purposes of advertising and marketing Defendants' VSCs.

92.     The calls were made using an artificial or prerecorded voice message to cellular and residential phones of Plaintiffs and the Class members in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

93.     As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs and the Classes, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

94.     Defendants made the unlawful calls to Plaintiffs and other Class members "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

95.     If the Court finds that Defendants *willfully* and/or *knowingly* violated this subsection of the TCPA, the Court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

96.     Plaintiffs and the Class members also seek permanent injunctions prohibiting Defendants and their agents from making telemarketing solicitations to residential and wireless telephone numbers using artificial or prerecorded voice messages without prior express written consent in violation of the TCPA.

### COUNT II
**Violation of Telephone Consumer Protection Act, 47 U.S.C. § 227(c)**
(***On behalf of Do Not Call Classes Against All Defendants***)

97.     Plaintiffs Kurt Morales and Nathan Byars incorporate the foregoing allegations as if fully set forth herein.

98.     The telephone numbers of Kurt Morales, Nathan Byars, and the Do Not Call Class are and have been for the relevant time period registered on the Do Not Call Registry.

99.     Morales registered his phone number ending in 2022 on the National Do Not Call Registry on January 31, 2008.

100.    Byars registered his phone number on the National Do Not Call Registry on August 13, 2003.

101.    Defendants and/or their agents acting with Defendants' knowledge and on their behalf, placed telephone calls to Morales's, Byars', and the Do Not Call Class members' Do Not Call-registered telephone numbers without having their prior express written consent to do so.

102.    The foregoing acts and omissions of Defendants and/or their agents constitute violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

103.    Defendants' calls were made for a commercial purpose.

104.    Morales, Byars, and Do Not Call Class members are entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

105.    Morales, Byars, and the Do Not Call Class members are entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

106.    Morales, Byars, and the Do Not Call Class members also seek a permanent injunction prohibiting Defendants and their agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the National Do Not Call Registry.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs KURT MORALES II, BEN FABRIKANT, BRANDON CALLIER, STEPHEN OST, and NATHAN BYARS, individually, and on behalf of the Classes, pray for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiffs as the Class representatives, and appointing their counsel as Class counsel;

B.      An order declaring that Defendants' actions, as set out above, violate the TCPA;

C.      An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D.      An order enjoining Defendants from placing calls to cellular or residential telephone numbers using an artificial or prerecorded voice message for the purpose of advertising, promoting, or soliciting the sale of Defendants' VSCs or any other property, goods, or services, unless they maintain documentation evidencing the prior express written consent of the person subscribed to the telephone number to which they place the call, and otherwise protecting the interests of the Classes;

E.      An order requiring Defendants to serve a copy of any injunction entered in this case on their authorized sales agents and direct them to cease making telephone calls to cellular and residential telephone numbers using artificial or prerecorded voice messages for the purpose of advertising, promoting, or soliciting the sale of Defendants' VSCs, unless they maintain documentation evidencing the prior express written consent of the person subscribed to the telephone number to which they place the call;

F.      An order enjoining Defendants and their authorized sales agents from placing calls to telephone numbers listed on the National Do Not Call Registry for the purpose of advertising, promoting, or soliciting the sale of Defendants' VSCs, unless they maintain documentation evidencing the prior express written consent of the person subscribed to the telephone number to whom they place the call;

G.      An award of actual and/or statutory damages and penalties;

H.  An award of costs and attorney's fees; and

I.  Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

KURT MORALES II, BEN FABRIKANT,
BRANDON CALLIER, STEPHEN OST, and
NATHAN BYARS, individually, and on behalf of
all others similarly situated,

By: /s/ Ian Connor Bifferato                    .
Ian Connor Bifferato (#3273)
THE BIFFERATO FIRM, P.A.
1007 N. Orange Street, 4 th Floor
Wilmington, DE 19801
Telephone: (302) 225-7600
Facsimile: (302) 298-0688
E-mail: cbifferato@tbf.legal

Thomas A. Zimmerman, Jr. (IL #6231944)*
*tom@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
www.attorneyzim.com

Mark L. Javitch (California SBN 323729)*
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorneys for Plaintiffs and the Putative Classes*
*Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

 I, Ian Connor Bifferato, hereby certify that on this 17th day of November, 2020, a copy of the foregoing *First Amended Class Action Complaint* was caused to be served on all counsel of record via CM/ECF.

*/s/ Ian Connor Bifferato*

Ian Connor Bifferato (#3273)
