## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KURT MORALES II, BRANDON CALLIER, :
and LUCAS HORTON, individually, and on :
behalf of all others similarly situated, :
                                        :
              Plaintiffs,               :
                                        :
v.                                      :    C.A. NO. 1:20-cv-01376-RGA-MPT
                                        :
SUNPATH LTD., a Delaware corporation, :
NORTHCOAST WARRANTY SERVICES, :
INC., Delaware corporation,             :
                                        :
              Defendants.               :

## REPORT AND RECOMMENDATION

Presently before the court is defendants' Motion to Dismiss Plaintiffs' Third

Amended Class Action Complaint with Prejudice under FEDERAL RULES OF CIVIL

PROCEDURE 12(b)(1) and 12(b)(6) ("Motion").[1]

For the reasons set forth below, the court recommends the Motion be denied.

### I.     BACKGROUND

Plaintiffs initiated this action on October 9, 2020, alleging violation of the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and its implementing

regulations, including 47 C.F.R. § 64.1200(a)(2).[2] The original complaint was amended

three times.[3]

On June 3, 2021, Kurt Morales II, Brandon Callier, and Lucas Horton

---

[1] D.I. 59. Briefing is found at D.I. 60 (defendants' opening brief); D.I. 61 (plaintiffs' answering brief); and D.I. 63 (defendants' reply brief). The Motion was referred to this judge on August 16, 2021. See D.I. 64.

[2] D.I. 1.

[3] See D.I. 12 (First Amended Class Action Complaint); D.I. 46 (Second Amended Class Action Complaint); and D.I. 58 (Third Amended Class Action Complaint).

(collectively, "plaintiffs") filed the two-count Third Amended Class Action Complaint ("TAC") alleging violations of the TCPA, 47 U.S.C. §§ 227(b) and 227(c) by Sunpath Ltd. and Northcoast Warranty Services, Inc. (collectively, "defendants").[4] Defendants filed the Motion on June 23, 2021.[5]

Defendants allegedly violated the TCPA by making unsolicited and unauthorized phone calls using artificial or prerecorded voice messages, without written consent, to sell vehicle service contracts ("VSCs").[6]

The TCPA was enacted to restrict the use of sophisticated telemarketing equipment that could make calls to millions of consumers *en masse*; exactly like those allegedly made by defendants.[7] Defendants allegedly create lists of thousands of vehicle owners from various public records and employ aggressive and illegal sales techniques using artificial or prerecorded voice messages to market their VSCs.[8] The messages solicit warranty extensions by purportedly relaying false information concerning the imminent expiration of manufacturers' auto warranties.[9] In fact, the VSCs are neither actual warranties, nor "extensions" of manufacturers' warranties.[10] Defendants' allegedly unlawful behavior is documented in numerous prior legal actions and consumer complaints to the Better Business Bureau.[11]

Plaintiffs, individually and behalf of Classes of all others similarly situated, seek

---

[4] D.I. 58.
[5] D.I. 59.
[6] D.I. 58 ¶¶ 1-2.
[7] *Id.* ¶¶ 3-4.
[8] *Id.* ¶¶ 15-16.
[9] *Id.* ¶¶ 18-19.
[10] *Id.* ¶ 20.
[11] *See, e.g., id.* ¶¶ 22-24, 26-29.

damages and an injunction that requires defendants stop their purportedly unlawful
calling practices.[12]

## II.    LEGAL STANDARDS

### A.    12(b)(1)

A court must grant a motion to dismiss pursuant to Rule 12(b)(1) if it lacks
subject matter jurisdiction to hear a claim.[13] Subject matter jurisdiction must be
affirmatively shown in the record before considering the merits of any case.[14] The party
asserting federal subject matter jurisdiction bears the burden of proving its existence.[15]
"In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant
presents a facial or factual attack."[16] "In reviewing a facial challenge, which contests
the sufficiency of the pleadings, the court must only consider the allegations of the
complaint and documents referenced therein and attached thereto, in the light most
favorable to the plaintiff."[17] Where a statute has been ruled unconstitutional, the court
lacks subject matter jurisdiction to consider claims arising from the statute.[18] Pursuant

---

[12] *Id.* ¶ 7.

[13] *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d
235, 243 (3d Cir. 2012).

[14] *See AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 168 (3d
Cir. 2001).

[15] *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009).

[16] *In re Schering*, 678 F.3d at 243.

[17] *Id.*

[18] *Ex parte Siebold*, 100 U.S. 371, 377 (1879); *see also Reynoldsville Casket Co.
v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) ("[W]hat a court does with
regard to an unconstitutional law is simply to *ignore* it. It decides the case '*disregarding
the [unconstitutional] law*,' because a law repugnant to the Constitution 'is void, and is
as no law.'" (alteration and emphases original) (citations omitted)); *U.S. v. Baucum*, 80
F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared
unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations
(since there is no valid 'law of the United States' to enforce)[.]")).

3

to Rule 12(h)(3), dismissal is required if the court determines at any time that it lacks subject matter jurisdiction.[19] Here, defendants present a "facial attack" because the calls alleged to violate the TCPA occurred at a time when the TCPA was unconstitutional.[20]

"In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion. . . ."[21] That standard is set forth below. "With respect to 12(b)(1) motions in particular, [however,] '[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.'"[22]

**B.    12(b)(6)**

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the complaint's factual allegations as true.[23] Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[24] The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements.[25] Moreover, there must

---

[19] *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); FED. R. CIV. P. 12(h)(3).

[20] *See* D.I. 60 at 7-14.

[21] *In re Schering*, 678 F.3d at, 243; *see also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.") (citation omitted).

[22] *In re Schering*, 678 F.3d at 244 (citation omitted) (second alteration in original).

[23] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[24] *Id.* at 555.

[25] *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

4

be sufficient factual matter to state a facially plausible claim to relief.[26] The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]

## III. DISCUSSION

The parties' dispute centers on the interpretation of the United States Supreme Court's decision in *Barr v. American Association of Political Consultants, Inc.* ("*AAPC*").[28] The Supreme Court there considered whether a government-debt exception to the TCPA violated the First Amendment, and the severability of that exception.[29]

In 1991, the TCPA was enacted to "generally prohibit[] robocalls to cell phones and home phones."[30] In 2015 the TCPA was amended to "allow[] robocalls that are made to collect debts owed to or guaranteed by the Federal Government" ("the 2015 government-debt exception").[31] The plaintiffs in *AAPC*, "political and nonprofit organizations that want to make political robocalls to cell phones," argued "the 2015 government-debt exception unconstitutionally favors debt-collection speech over political and other speech" in violation of the First Amendment, and sought invalidation of "the entire 1991 robocall restriction, rather than simply invalidating the 2015

---

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[27] *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted).
[28] 140 S. Ct. 2335 (2020).
[29] *Id.* at 2343 (plurality opinion).
[30] *Id.*
[31] *Id.*

5

government-debt exception."[32]  The Court held "the 2015 government-debt exception added an unconstitutional exception to the law.  We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute."[33]

Defendants argue the court lacks subject matter jurisdiction over plaintiffs' claims because as a result of finding the 2015 government-debt exception unconstitutional, liability cannot attach to calls made between 2015 and the *AAPC* decision.[34]  They maintain the TCPA cannot be applied retroactively, and that retroactive application of the TCPA violates principles of due process.[35]  Even if the court determines it has subject matter jurisdiction, plaintiffs fail to state a claim because they do not allege defendants used an automatic telephone dialing system ("auto dialer" or "ATDS") with the capacity to use a random or sequential number generator to either store or produce phone numbers to be called.[36]

Plaintiffs argue defendants' constitutional challenge to the TCPA robocall

---

[32] *Id.*

[33] *Id.* at 2356.  Six Members of the Court concluded the government-debt exception added to the TCPA violated of the First Amendment.  *Id.* at 2343 (citing *id.* at 2345-47 (plurality opinion); 2356-57 (Sotomayor, J., concurring in judgment); 2363, 2364 (Gorsuch, J., concurring in judgment in part and dissenting in part)).  "Applying traditional severability principles, seven Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute."  *Id.* at 2343-44 (citing *id.* 2348-56 (plurality opinion); 2357 (Sotomayor, J., concurring in judgment); 2362-63 (Breyer, J., concurring in judgment with respect to severability and dissenting in part)).

[34] D.I. 60 at 3, 7-8.
[35] *Id.* at 10-15.
[36] *Id.* at 3-4.

6

restriction is barred by laches.[37] Separately, they insist subject matter jurisdiction exists because the TCPA's general robocall restriction remains enforceable after the unconstitutional government-debt exception was severed, and retroactive enforcement of that restriction does not violate due process.[38] Plaintiffs also maintain the TAC adequately pleads violations of the TCPA's robocall restriction based of defendants' use of an artificial or prerecorded voice, and calls to phone numbers on the National Do Not Call Registry ("DNC Registry").[39]

## A. Laches

Laches is "generally defined as an unreasonable delay" resulting in "material prejudice" to the other party.[40] Laches arises where: "(1) the plaintiff delayed in filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the defendant suffered material prejudice or injury as a result of the plaintiff's delay."[41]

Plaintiffs argue the government-debt exception amendment to the TCPA was enacted in 2015, yet defendants delayed until 2020 to assert their constitutional challenge to that exception "for the sole purpose of avoiding liability for placing telemarketing calls to Plaintiffs in violation of the TCPA."[42] Plaintiffs assert that delay was unreasonable and materially prejudicial to them.[43]

---

[37] D.I. 61 at 5-6.

[38] *Id.* at 6-17.

[39] *Id.* at 17-18 (citing D.I. 58 ¶¶ 70-88).

[40] *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009).

[41] *McKesson Info. Sols. LLC v. Trizetto Grp., Inc.*, 426 F. Supp. 2d 203, 208 (D. Del. 2006) (citation omitted).

[42] D.I. 61 at 5.

[43] *Id.*

7

Defendants maintain plaintiffs' argument would require them to seek an impermissible advisory opinion because prior to being sued by plaintiffs they had no avenue to raise their constitutional challenge.[44] Defendants also note Justice Gorsuch's statement suggesting it is questionable whether similarly situated parties would have standing to challenge the constitutionality of the government-debt exception.[45]

The court determines defendants' argument is not barred by laches. Defendants raised their laches defense in a motion to dismiss the original complaint[46] and aver diligence in asserting their defenses through three amendments to that original complaint.[47] Plaintiffs assertions of unreasonable delay and material prejudice have not been demonstrated and are thus rejected.

## B.     Impact of *AAPC* on the Court's Jurisdiction

The FEDERAL RULES OF CIVIL PROCEDURE require a court dismiss the action if it determines at any time it lacks subject matter jurisdiction.[48] Where a statute has been ruled unconstitutional, the court lacks subject matter jurisdiction to consider claims arising from the statute.[49] Defendants argue *AAPC* determined the 2015 government-debt exception to the TCPA was unconstitutional and severed that exception on a

---

[44] D.I. 63 at 7.

[45] *Id.* (citing *AAPC*, 140 S. Ct. at 2366 ("The plaintiffs point to the government-debt exception only to show that the government lacks a compelling interest in restricting their speech. It isn't even clear the plaintiffs would have standing to challenge the government-debt exception.") (Gorsuch, J. concurring in part, dissenting in part)).

[46] *See* D.I. 31.

[47] D.I. 63 at 7.

[48] FED. R. CIV. P. 12(h)(3).

[49] *See, e.g.*, *Ex parte Siebold*, 100 U.S. at 377; *Baucum*, 80 F.3d at 540-41.

prospective basis.[50] They contend the TCPA cannot be applied retroactively and that retroactive application would violate principles of due process.[51] Thus, no liability can arise under the act for defendants' purported violations between 2015 and the issuance of the *AAPC* decision in 2020.[52] Because all calls plaintiffs complain of were made during that time period, defendants insist the TAC should be dismissed with prejudice.[53] They also argue retrospective application of the TCPA would violate principles of due process.[54] The court disagrees with both arguments.

The TCPA was amended in 2015 to carve out an exception for calls related to government debt.[55] *AAPC* held that exception violated the First Amendment because it discriminated speech based on its content.[56] The Court then considered "whether to invalidate the entire 1991 robocall restriction, or instead to invalidate and sever the 2015 government-debt exception."[57] The Court first rejected the argument that the entire 1991 robocall restriction was unconstitutional.[58] Applying "ordinary severability principles" the Court held the 2015 government-debt exception severable from the remainder of the TCPA.[59] The Court determined:

---

[50] D.I. 60 at 8.

[51] *Id.* at 8-15.

[52] *Id.* at 7-12.

[53] *Id.* at 10.

[54] *Id.* at 12-15.

[55] *AAPC,* 140 S. Ct. at 2345 (plurality opinion).

[56] *Id.* at 2345-47 (plurality opinion); 2356-57 (Sotomayor, J., concurring in judgment); 2363, 2364 (Gorsuch, J., concurring in judgment in part and dissenting in part)).

[57] *Id.* at 2348 (plurality opinion).

[58] *Id.* at 2348-49 (plurality opinion).

[59] *Id.* at 2348-56 (plurality opinion); 2357 (Sotomayor, J., concurring in judgment); 2362-63 (Breyer, J., concurring in judgment with respect to severability and dissenting in part)).

9

With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law. Indeed, the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015.[60]

Analyzing precedent, the Court stated it:

has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law. In those cases, the Court has treated the original, pre-amendment statute as the "valid expression of the legislative intent." The Court has severed the "exception introduced by amendment," so that "the original law stands without the amendatory exception."[61]

"[T]he Court in *Frost* explained that an *unconstitutional statutory amendment 'is a nullity'*

and *'void' when enacted*, and for that reason has *no effect on the original statute*."[62]

Writing for three justices in the plurality, Justice Kavanaugh stated in footnote 12 that:

although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception . . . *our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction*.[63]

_____

[60] *Id.* at 2353 (plurality opinion).

[61] *Id.* (quoting *Frost v. Corporation Commc'n of Okla.*, 278 U.S. 515, 526–27 (1929) and *Truax v. Corrigan*, 257 U.S. 312, 342 (1921), respectively).

[62] *Id.* (emphasis added) (quoting *Frost*, 278 U.S. at 526-27).

[63] *Id.* at 2355 n.12 (emphasis added). Although footnote 12 is dicta, the Third Circuit has stated: "[W]e should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. 'Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.'" *Off. Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003) (alterations in original) (quoting *In re McDonald*, 205 F.3d 606, 612–13 (3d Cir.2000)); *see also F.E.B. Corp. v. United States*, 818 F.3d 681, 690 (11th Cir. 2016) ("'[T]here is dicta . . . and then there is Supreme Court dicta.' We have consistently recognized that 'dicta from the Supreme Court is not something to be lightly

10

Despite the apparent clarity of the Court's statements, there was not initial

unanimity among the lower courts regarding the retroactive effect of severing the 2015

government-debt exception from the TCPA. In briefing, the parties cite cases making

contradictory determinations on that question.[64] Only a minority are consistent with

defendants' position that calls made while the exception was in place are not subject to

liability. Defendants rely primarily on *Cunningham v. Matrix Fin. Serv.*[65] and *Creasy v.*

---

cast aside,' but rather is of 'considerable persuasive value[.]'")( citations omitted); *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) ("[W]e are generally bound by Supreme Court dicta, especially when it is 'recent and detailed.'") (citation omitted); *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1125 (10th Cir. 2015) ("[W]e are 'bound by Supreme Court dicta almost as firmly as by the Courts' outright holdings, particularly when the dicta is recent and not enfeebled by later statements.'") (citation omitted); *Cuevas v. United States*, 778 F.3d 267, 272–73 (1st Cir. 2015) (same).

The cases relied upon by defendants declined to follow Justice Kavanaugh's footnote 12 dicta. *See Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F. Supp. 3d 1242, 1244 (M.D. Fla. 2020) (noting the defendants' argument "that footnote 12 is not binding on this Court because it was only joined by 3 justices and is *dicta*"); *Cunningham v. Matrix Fin. Servs., LLC*, 531 F. Supp. 3d 1164, 1176 (E.D. Tex. 2021) (stating "footnote twelve is, by definition, dictum . . . [but] the Court simply cannot oblige [the defendant's] request for the Court to give effect to footnote twelve without contravening *AAPC*'s holding . . . [and despite the court acknowledging] it is 'generally bound by Supreme Court dicta, especially when [such dictum] is 'recent and detailed'[, *Hollis*, 827 F.3d at 448,] . . . the Court concludes that footnote twelve is unpersuasive") (fourth alteration in original); *Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 506 n.4 (E.D. La. 2020) ("This footnote is merely persuasive, as opposed to mandatory, because it appears in an opinion commanding the votes of only three Justices, and because, as [the defendant] astutely observes, it constitutes mere 'obiter dictum.'"); *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290, 298 (N.D. Ohio 2020) ("Although *dicta*, the plurality noted in footnote 12 that 'no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment [in this case] . . . .' This statement would make no sense if the term 'void' meant 'void *ab initio*,' because, in essence, footnote 12 indicates the statute as amended should be enforced with respect to government-debt collector robocalls made during this period.") (alteration in original).

[64] *See* D.I. 60 at 8-10; D.I. 61 at 8-15.

[65] 531 F. Supp. 3d 1164 (E.D. Tex. 2021).

*Charter Commc'n, Inc.*[66]

Since briefing was completed, courts considering the issue have coalesced in

agreement that severance of the government-debt exception applied retroactively, the

most significant of which is the Sixth Circuit's decision in *Lindenbaum v. Realgy, LLC.*[67]

The district court determined "severability is a *remedy* that operates only prospectively,

so the robocall restriction was unconstitutional and therefore 'void' for the period the

exception was on the books" and granted defendant's Rule 12(b)(1) motion to

dismiss."[68] Conducting a *de novo* review, the Sixth Circuit restated defendant's

argument that "severability is a remedy that fixes an unconstitutional statute, such that it

can only apply prospectively" and "[a]s a fallback, it argues that if it can be held liable

for the period from 2015 to 2020, but government-debt collectors who lacked fair notice

---

[66] 489 F. Supp. 3d 499 (E.D. La. 2020). Defendants also cite *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290 (N.D. Ohio 2020) and *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F. Supp. 3d 1242 (M.D. Fla. 2020). With respect to *Lindenbaum*, as discussed below, the Sixth Circuit reversed the district court's opinion. The district court in *Hussain* dismissed a suit for lack of subject matter jurisdiction in a case similar to the matter at bar. Agreeing, at that time, with *Lindenbaum* and *Creasy*, that court held "federal courts lack subject matter jurisdiction over alleged violations from the enactment of the 2015 amendment to the July 6, 2020 decision in *AAPC*." *Hussain*, 506 F. Supp. at 1245. Three months later, however, the same district court judge expressly repudiated his *Hussain* decision when he decided *Boisvert v. Carnival Corp.*, C.A. No. 8:20-cv-2076-30SPF, 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021). The *Boisvert* defendant largely relied on the *Hussain* decision. *Id.* The court denied the motion to dismiss: "[u]pon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-*AAPC*." *Id.* (citing cases).

[67] 13 F.4th 524 (6th Cir 2021); *see also Marshall v. Grubhub*, C.A. No. 19-cv-3718, 2021 WL 4401496 (N.D. Ill. Sept. 27, 2021). Prior to the Sixth Circuit's *Lindenbaum* decision, no other circuit court had addressed the retroactive impact of *AAPC*. The court is unaware of any other circuit court decision addressing this issue.

[68] *Lindenbaum*, 13 F.4th at 527 (emphasis added) (citing *Lindenbaum*, 497 F. Supp. 3d at 298-99).

12

of the unlawfulness of their actions cannot, it would create the same First Amendment violation the Court recognized in *AAPC*."[69] The Sixth Circuit found "[n]either argument has merit."[70]

The appeals court described the defendant's argument that severance is a remedy as "misconstru[ing] the nature of remedies. Remedies consist of 'an injunction, declaration, or damages.'"[71] "[T]hat '[t]he relief the complaining party requests does not circumscribe' the severability inquiry also demonstrates that it cannot be a remedy."[72] The *Lindenbaum* court observed that "[i]n *AAPC*, the Court severed the exception in a way that gave AAPC none of the relief it sought. That cannot have been a remedy."[73]

The Sixth Circuit found the *Lindenbaum* district court erred in concluding *AAPC* "offered 'a remedy in the form of eliminating the content-based restriction' from the TCPA."[74] It held the *AAPC* decision "recognized only that the Constitution had 'automatically displace[d]' the government-debt-collector exception from the start, then interpreted what the statute has always meant in its absence. That legal determination applies retroactively."[75]

This court likewise rejects defendants' subject matter jurisdiction argument that no liability can attach to calls they made between the date of amendment in 2015 and

---

[69] *Id.* at 529.

[70] *Id.*

[71] *Id.* (citing *AAPC*, 140 S. Ct. 2351 n.8 (plurality opinion)).

[72] *Id.* (quoting *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 427(2010)).

[73] *Id.* (citing, *AAPC*, 140 S. Ct. at 2344 (plurality opinion); *id.* at 2365–66 (Gorsuch, J., concurring in part and dissenting in part) (criticizing that outcome)).

[74] *Id.* at 530 (quoting *Lindenbaum*, 497 F. Supp. 3d at 297).

[75] *Id.* (citations omitted).

the date of the decisions of the *AAPC* in July of 2020.[76]

Here, defendants make the same arguments that were successful in *Creasy* and

*Cunningham*.[77] Each, along *Hussain* and the *Lindenbaum* district court opinion cited by

defendants, have been roundly rejected by courts throughout the country.[78]

---

[76] D.I. 60 at 7.

[77] *Creasy* held district courts lacked authority to adjudicate violations of the TCPA ban that consumers alleged to have occurred before the Supreme Court restored the constitutionality of the act by severing the government-debt exception. *Creasy*, 489 F. Supp. 3d at 503. *Cunningham* likewise held "§ 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the government-debt exception until the Supreme Court handed down its decision in *AAPC*. In other words, during that stretch of time, § 227(b)(1)(A)(iii) had no legal effect." Because the alleged violations occurred during the period, the court held it "must dismiss this case for lack of subject matter jurisdiction." *Cunningham*, 531 F. Supp. 3d at 1180-81 (citations omitted).

[78] *See, e.g.*, *Lindenbaum*, 13 F.4th at 529 (criticizing *Cunningham*); *Pers. v. Tech. Educ. Servs., Inc.*, 542 F. Supp. 3d 1355, 1361 (N.D. Ga. 2021) (disagreeing with the reasoning of *Cunningham*, *Creasy*, and the *Lindenbaum* district court opinion because each "relied on a dissenting opinion in *AAPC* to create a distinction that, in this Court's view, was unintended by the plurality opinion"); *Horton v. Multiplan, Inc.*, C.A. No. 3:21-cv-1542-S-BK, 2021 WL 5868328, at *3 (N.D. Tex. Nov. 24, 2021) (noting the *Cunningham* decision was contrary to the holdings of district judges in the Southern and Western Districts of Texas (citations omitted)); *Marshall v. Grubhub Inc.*, C.A. No. 19-cv-3718, 2021 WL 4401496, at *3 (N.D. Ill. Sept. 27, 2021) (relying on the Sixth Circuit's *Lindenbaum* opinion and describing *Cunningham*, *Creasy*, *Hussain*, and the *Lindenbaum* district court opinions the "handful" of courts that did not uphold the robocall restriction as constitutional despite the government-debt exception being held unconstitutional); *Roeder v. Collection Bureau of the Hudson Valley, Inc.*, C.A. No. 20-cv-6200(JCM), 2021 WL 3888127, at *7-8 (S.D.N.Y. Aug. 31, 2021) (declining to follow *Hussain*, *Creasy*, and the *Lindenbaum* district court opinion, for failing to acknowledge *AAPC*'s "express intent to preserve the non-severed portions of the robocall restrictions"); *Buell v. Credit.com, Inc.*, C.A. No. 4:21-cv-01055-KAW, 2021 WL 3271127, at *4 (N.D. Cal. July 30, 2021) (explaining disagreement with the reasoning of *Creasy* and *Hussain*, and rejection the *Lindenbaum* district court opinion as relying on those cases); *Van Connor v. One Life Am., Inc.*, C.A. No. 6:19-cv-03283-DCC, 2021 WL 2667063, at *3 (D.S.C. June 29, 2021) (declining to follow *Creasy*, *Cunningham*, and the *Lindenbaum* district court opinion, i.e., the "minority of federal district courts [that] found . . . it is unconstitutional to enforce the unamended statute but not the exception during the interim period"), *motion to certify appeal denied*, C.A. No. 6:19-cv-03283-DCC, 2021 WL 4272614 (D.S.C. Sept. 21, 2021).

14

Based on the reasoning expressed the Sixth Circuit's *Lindenbaum* decision, and the overwhelming agreement among district courts before and after that decision,[79] the court rejects defendants' argument and holds it has subject matter jurisdiction to reach the merits of this matter.

Defendants also argue that retroactive application of the TCPA against them violates due process because "similarly situated litigants should not be treated differently."[80]  Plaintiffs contend due process is not implicated here because defendants are not government-debt collectors and, thus, could not have relied on the severed amendment when placing unlawful calls to sell VSCs.[81]  The court agrees with plaintiffs.

This court recently rejected a similar argument by the TCPA defendant in *Franklin v. Navient, Inc.*[82]  There, Third Circuit Judge Bibas, sitting by designation, stated "[w]hen a court merely recognizes that a civil duty has existed the whole time, the due-process objection is even weaker [than in a criminal context].  Claims of reliance are thus 'insufficient to deny retroactive application of a new' judicial interpretation."[83]

---

[79] *See, e.g., Canady v. Bridgecrest Acceptance Corp.*, C.A. No. cv-19-04738-PHX-DWL, 2022 WL 194526, at *9 (D. Ariz. Jan. 21, 2022) ("This issue requires little discussion.  Dozens of district courts and at least one Circuit court have issued opinions rejecting [the defendants'] contention that nobody can be held liable under the TCPA for robocalls placed between the enactment of the government-debt exception in 2015 and the issuance of [*AAPC*] in July 2020.").

[80] D.I. 60 at 13 (citing *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993)).

[81] D.I. 61 at 15.

[82] 534 F. Supp. 3d 341 (D. Del. 2021), *reconsideration denied sub nom. Ricky R. Franklin, Plaintiff, v. Navient, Inc Student Assistance, Inc., Defendants. Ricky R. Franklin, Stockbridge, Georgia. Plaintiff. Joelle Eileen Polesky, Stradley Ronon Stevens & Young, LLP, Wilmington, Delaware. Couns. for Defendants.*, C.A. No. 1:17-cv-1640-SB, 2021 WL 2117177 (D. Del. May 25, 2021), *and amended on reconsideration*, C.A. No. 1:17-cv-1640-SB, 2021 WL 2915033 (D. Del. July 12, 2021)).

[83] *Id.* at 346 (quoting *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 753 (1995)).

15

"Due process does not bar retroactive civil decisions."[84]

Defendants criticize *Franklin* for not substantively considering precedent holding

statutes in violation of the First Amendment's prohibition on content-based restrictions

should not be applied retroactively.[85]  The court notes the *Grayned* opinion cited by

defendants, and a companion case the reasoning of which *Grayned* adopted, were

criminal cases not involving a civil statutes like the TCPA.[86]  Moreover, the Sixth Circuit

addressed the First Amendment issue in *Lindenbaum* and determined that severability

did not warrant dismissal.[87]  The court reasoned:

> Whether a debt collector had fair notice that it faced punishment for
> making robocalls turns on whether it reasonably believed that the statute
> expressly permitted its conduct.  That, in turn, will likely depend in part on
> whether the debt collector used robocalls to collect government debt or
> non-government debt.  But applying the speech-neutral fair-notice
> defense in the speech context does not transform it into a speech
> restriction.[88]

Other courts have likewise determined application of the TCPA to defendants

---

[84] *Id.*

[85] D.I. 60 at 13 (citing *Grayned v. City of Rockford*, 408 U.S. 104 (1972)).

[86] *Id.* (citing *Grayned*, 408 U.S. at 107 (citing *Police Dep. of Chicago v. Mosley*, 408 U.S. 92 (1972)).  *Bilek v. Nat'l Congress of Employers, Inc.*, citing, *inter alia*, *Franklin*, noted the distinction between criminal and civil cases for due process analysis:  "Sure, *Bouie v. City of Columbia* holds that due process forbids retroactive application of an 'unforeseeable judicial enlargement of a *criminal statute*' because doing so 'operates precisely like an ex post facto law' that the Constitution forbids.  But the Supreme Court 'has not extended *Bouie* beyond criminal cases,' even if '[t]here is some logic in treating civil speech restrictions like criminal laws under *Bouie*[.]'"  C.A. No. 1:18-cv-03083, 2021 WL 4027512, at *3 (June 28, 2021) (emphasis in original) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) and *Franklin*, 534 F. Supp. 3d at 347, respectively).  As is equally applicable here, the *Bilek* court held: "Defendants are not government debt collectors and thus have no interest in asserting the due process rights of government debt collectors."  *Id.*

[87] *Lindenbaum*, 13 F.4th at 530.

[88] *Id.*

16

like those before this court are not barred by First Amendment concerns. For instance,

the District of Connecticut cogently explained in *Pavelka v. Charter Commc'ns, Inc.*:

> [T]he *AAPC* plurality opinion and longstanding Supreme Court precedent
> indicate that the robocall provision may be constitutionally applied against
> [the defendant] for calls placed after the government-debt exception was
> added but before the *AAPC* decision was handed down. . . . [T]he
> statutory severance clause makes clear that this type of surgical
> correction that leaves unaffected the operation of other provisions of the
> statute is what Congress wanted. And the equities, including First
> Amendment free speech values, do not command a contrary result.
> Refusing to dismiss the TCPA claim in this case treats [the defendant] no
> differently–and suppresses no more speech–than if Congress had not
> crossed a constitutional line by enacting the government-debt exception in
> the first place; in either event, the same speech by [the defendant]–its
> robocalls–would be prohibited. By contrast, dismissing the TCPA claim
> would flout Congress's intent in enacting the TCPA in 1991 and bestow a
> windfall on [the defendant]–a set of penalty-free, annoying robocalls
> touting its services to thousands of Americans–simply because of
> Congress's misstep in adding in 2015 an unconstitutional provision to the
> TCPA that never applied to [the defendant].[89]

The court determines, therefore, that application of plaintiffs' TCPA claims to

defendants does not violate their due process rights.

Thus, the court recommends defendants' motion to dismiss based on Rule

12(b)(1) be dismissed.

## C. Alleged Failure to State a Claim under the TCPA

Defendants argue even if dismissal is not required under Rule 12(b)(1), the

Motion must nevertheless be dismissed pursuant to Rule 12(b)(6) for failure to state a

claim under the TCPA.[90]

"To survive a motion to dismiss, a complaint must contain sufficient factual

---

[89] C.A. No. 3:20-cv-01557 (MPS), 2021 WL 5566390, at *7 (D. Conn. Nov. 29, 2021).

[90] D.I. 60 at 15.

17

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[91]

The TCPA robocall provision makes it unlawful:

to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice[.][92]

Pursuant to section 227(a)(1):

(1) The term "automatic telephone dialing system" means equipment which has the capacity—

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.[93]

The TAC alleges, *inter alia*, that:

Defendants and their agents and co-conspirators amassed lists of thousands of vehicle owners from public records, vehicle sales and registration records, and data aggregators and then sent phone calls using artificial or prerecorded voice messages *en masse* to market their VSCs.[94]

Defendants argue the Supreme Court's *Facebook, Inc. v. Duguid* opinion

demonstrates the TAC fails to state a claim because it does not allege defendants used

an auto dialer employing "a random or sequential number generator either to store or

produce phone numbers to be called."[95]  In *Facebook*, the Court stated that "[t]o qualify

as an 'automatic telephone dialing system,' [within the meaning of the TCPA, 47 U.S.C.

§ 227 (a)(1)(A),] a device must have the capacity either to store a telephone number

---

[91] *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[92] 47 U.S.C. § 227(b)(1)(A).

[93] 47 U.S.C. § 227(a)(1).

[94] D.I. 58 ¶ 16.

[95] D.I. 60 at 16 (citing *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021)).

18

using a random or sequential generator or to produce a telephone number using a random or sequential number generator."[96]

Plaintiffs assert *Facebook* demonstrates dismissal pursuant to Rule 12(b)(6) is *not* warranted because the TAC adequately pleads violations of the TCPA based on defendants' use of an artificial or prerecorded voice and calls to phone numbers on the DNC Registry.[97]

Defendants acknowledge "at best, only Plaintiffs' claims related to an automated voice could plausibly state a claim for relief under Rule 12(b)(6)" but argue that "[t]o the extent Plaintiffs claim that Defendants used an autodialer, Plaintiffs offer nothing in rebuttal for why such claims should not be dismissed under . . . *Facebook*."[98]

The court finds *Facebook* supports plaintiffs' argument.  There, the Supreme Court made clear "[t]he statute *separately prohibits* calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones, unless an exception applies.  *Our decision does not affect that prohibition*."[99]

Relying on *Facebook*, the Northern District of Illinois reached a similar conclusion in *Marshall v. Grubhub Inc.*[100]  That case arose from a series of calls allegedly from robotic or pre-recorded voices.[101]  The defendant moved to dismiss, based on, *inter alia*, failure to state a claim.  The court held that for an allegation to

---

[96] *Facebook,* 141 S. Ct. at 1167.

[97] D.I. 61 at 17 (citing D.I. 58 ¶¶ 70-88), 17-18 (citing *Facebook*, 141 S. Ct. at 1173).

[98] D.I. 63 at 2.

[99] *Facebook*, 141 S. Ct. at 1173 (quoting 47 U.S.C. §§ 227(b)(1)(A) and (B)) (emphasis added).

[100] C.A. No. 19-cv-3718, 2021 WL 4401496 (N.D. Ill. Sept. 27, 2021).

[101] *Id.* at *1.

move from speculative to plausible in this context, a plaintiff may allege facts such as a "'description of a robotic sound of the voice on the other line, a lack of human response when he attempted to have a conversation with the caller,' or a 'distinctive "click and pause" after having answered the call.'"[102] The *Grubhub* court rejected the argument that the plaintiff only made a conclusory allegation that calls "included a robotic or prerecorded voice" because additional elements of the complaint shed light of the nature of the calls and "push[ed] the allegation from speculative to plausible[.]"[103]

Here, defendants' reply brief appears to concede the use of an "artificial or prerecorded voice" is plausibly alleged.[104] The court also separately determines the TAC contains additional elements that plausibly allege the complained-of-calls were from automated or prerecorded voices, rather than human callers.[105]

Defendants separately argue plaintiffs' claim for injunctive relief under Section 227(c) must be dismissed to the extent the use of an autodialer is alleged. The parties in *Grubhub* also disputed whether use of an ATDS was plausibility alleged. That court determined the disagreement was not dispositive because it found the alleged use of a

---

[102] *Id.* at *4.

[103] *Id.* (specifically noting screenshots of voicemail transcripts indicating a prerecorded caller, rather than a human caller, as wells as messages that would not have been left if a human made the call).

[104] *See* D.I. 63 at 2.

[105] *See, e.g.*, D.I. 58 ¶ 32-39 (alleging dozens of automated calls including the transcription of a call stating plaintiff's car warranty was expiring and instructing him to press 2 to extend the warranty; when plaintiff pressed 2, he was connected to a live agent); *id.* ¶¶ 41-50 (listing the date and time of multiple calls from various phone numbers, and that when plaintiff responded to voice prompts he received VSC solicitations from defendants); *id.* ¶¶ 51-55 (listing date and time of multiple calls from various phone number stating his auto policy was set to expire and instructing plaintiff to press 1).

prerecorded or automated voice sufficient to state a claim under the TCPA's robocall provision.[106] "Use of an ATDS is an alternative basis for liability, not a necessary element."[107] *Grubhub* noted *Facebook* "left the TCPA's separate prohibition on calls using artificial or prerecorded voices untouched" and, therefore, determined "there is no need to delve into whether [the plaintiff] has sufficiently alleged [the defendant] called her using an ATDS."[108] The court reiterated that the plaintiff's allegation "regarding the ATDS constitutes an alternative legal theory–one that she may or may not be able to substantiate with the benefit of discovery[,]"[109] and concluded "[t]he ATDS inquiry is therefore best deferred following discovery."[110]

Here, plaintiffs similarly "reserve the right to argue that Defendants used an automatic telephone dialing system to place the calls to Plaintiffs and the Class members should facts uncovered in discovery support that argument."[111]

Thus, the court recommends denying defendants' request to dismiss pursuant to Rule 12(b)(6).

## IV. RECOMMENDED DISPOSITION

Consistent with the findings above,

**IT IS RECOMMENDED** that defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint with Prejudice under FEDERAL RULES OF CIVIL

---

[106] *Grubhub*, 2021 WL 4401496, at *5.

[107] *Id.*

[108] *Id.*

[109] *Id.* (citing *Weekly v. Fifth Third Bank*, C.A. No. 20-cv-01786, 2020 WL 7626737, at *3 (N.D. Ill. Dec. 22, 2020) ("[I]t would be impossible for any plaintiff to know about a system's capacity prior to discovery[.]")).

[110] *Id.*

[111] D.I. 61 at 18 n.2.

21

PROCEDURE 12(b)(1) and 12(b)(6) (D.I. 59) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same. Any response shall be limited to ten (10) pages and filed within fourteen (14) days thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.)

February 1, 2022

_____/s/  Mary Pat Thynge_____
CHIEF U.S. MAGISTRATE JUDGE