## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| KURT MORALES II, BRANDON CALLIER, LUCAS HORTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNPATH LTD., a Delaware corporation, NORTHCOAST WARRANTY SERVICES, INC., a Delaware corporation, AMTRUST NORTH AMERICA, INC., a Delaware corporation, SING FOR SERVICE, LLC, a Delaware limited liability company, and PELICAN INVESTMENT HOLDINGS GROUP LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.:  20-cv-01376-RGA<br><br>**Jury Trial Demanded**<br><br>**[PROPOSED] FOURTH AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs KURT MORALES II, BRANDON CALLIER, and LUCAS HORTON ("Plaintiffs") bring this Fourth Amended Class Action Complaint against Defendants SUNPATH LTD. ("Sunpath"), NORTHCOAST WARRANTY SERVICES, INC. ("Northcoast"), AMTRUST NORTH AMERICA, INC. ("Amtrust"), SING FOR SERVICE, LLC ("Mepco"), and PELICAN INVESTMENT HOLDINGS GROUP LLC ("AAP") (collectively, "Defendants") to put a stop to their unlawful advertising and telemarketing of vehicle service contracts ("VSCs") using unsolicited automated calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and its regulations, 47 C.F.R § 64.1200, *et seq.*, and Texas statutes regulating telephone marketing, and to obtain redress for all persons injured by Defendants' conduct. Plaintiffs allege as follows upon personal knowledge as to their acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.     Defendants make unsolicited and unauthorized phone calls to consumers using false and misleading statements and artificial or prerecorded voice messages to sell VSCs.

2.     Defendants did not and do not obtain prior express written consent to make these advertising and telemarketing calls and, therefore, have violated and continue to violate the TCPA, and its regulations, prohibiting phone calls using artificial or prerecorded voices, and phone calls to numbers listed on the Do-Not-Call registry.

3.     Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2–3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

4.     The TCPA targets unauthorized calls exactly like the ones Defendants made in this case, based on Defendants' use of technological equipment to spam consumers on a grand scale.

5.     Robocalls are "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020) (citing 137 Cong. Rec. 30821 (1991)).

6.     By causing the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiffs and Class members.

7.     Plaintiffs, individually and on behalf of Classes of all others similarly situated, seek damages and an injunction requiring Defendants to stop their unlawful calling practices.

## PARTIES

8.     Kurt Morales ("Morales") is a natural person and citizen of Carrollton, Texas.

9.     Brandon Callier ("Callier") is a natural person and citizen of El Paso, Texas.

10.    Lucas Horton ("Horton") is a natural person and citizen of Richardson, Texas.

11.    Sunpath is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 50 Braintree Hill Park #310, Braintree, Massachusetts.

12.    Northcoast is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 800 Superior Ave. East, 21st Floor, Cleveland, Ohio.

13.    Amtrust is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 59 Maiden Lane, New York, New York.

14.    Mepco is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business at 205 N. Michigan Avenue, Chicago, Illinois.

15.    AAP is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business at 1300 North Congress Avenue, West Palm Beach, Florida.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because the case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because each Defendant resides in this District.

3

## COMMON FACTUAL ALLEGATIONS

18.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer protection statutes.

19.     Defendants and their agents and co-conspirators amassed lists of thousands of vehicle owners from public records, vehicle sales and registration records, and data aggregators and then sent phone calls using artificial or prerecorded voice messages *en masse* to market their VSCs, in violation of the TCPA.

20.     Plaintiffs and Class members received phone calls or answered their phones and heard the artificial or prerecorded voice message.

21.     The artificial or prerecorded voice misinforms the listeners, falsely stating that their manufacturer's auto warranty is about to expire.

22.     After consumers responded to the automated voice, Defendants falsely solicited them to "extend" their manufacturer's auto warranty.

23.     Although VSCs are expensive (approximately $4,000) and can be financed over three to five years, they are not actually warranties, nor do they "extend" the manufacturer's warranty.

24.     Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engaged in the false and misleading sales practices and unlawful robocalling.

25.     Defendants' unlawful behavior alleged herein has a well-documented history. As the Attorney General of Ohio has recently alleged in a case brought against numerous auto

4

warranty robocallers, which Plaintiffs believe may be connected to Defendants, Defendants "engage[] in a complex robocall lead generation scheme designed to conceal both who is responsible for the generation of hundreds of millions of robocalls, as well as how money flows." Introduction to Compl. *Ohio ex rel. Yost v. Jones, et al.*, Case No. 2:22-cv-2700 (S.D. Ohio, filed July 7, 2022) (ECF No. 1). Mr. Gustav Renny ("Renny") adds to the confusion by falsely associating with other companies, such as Carguard, and using fictitious names, such as "AAP," in connection with numerous legal entities. *See Carguard Admin. Inc. v. Nat'l Admin. Serv. Co., LLC*, Case No. 2:21-cv-01037-SMB (D. Ariz., filed June 14, 2021).

26.     AAP is one iteration of Renny's vast and enduring unlawful robocalling operation. AAP has many predecessors, affiliates, and entities in which assets, operations, and liabilities are intermingled, and Renny has a long history of abusing state corporation laws and business organization laws to avoid liability, conceal the breadth and scope of the conduct at issue, and continue the TCPA violations. All of AAP's predecessors were controlled and operated by Renny.

27.     On May 23, 2018, Defendants' authorized reseller, National Auto Protection Corp. ("NAPC"), a Renny entity, agreed to pay $10,000 to the Kansas Attorney General to settle claims that it violated the Kansas analog to the TCPA.

28.     On June 6, 2019, a class action lawsuit was filed by Catherine Shanahan against NAPC alleging violations of the TCPA. During the lawsuit, NAPC dissolved and did not answer the complaint. NAPC's dissolution document was signed by Renny on September 6, 2019.

29.     On March 18, 2020, a class action lawsuit was filed by Nathen Day against National Car Cure ("NCC") alleging violations of the TCPA. During the lawsuit, NCC filed an answer, admitting it was an authorized sales agent of Matrix, another VSC administrator and former defendant in this case.

30.     NCC and NAPC are controlled by Renny. When Renny dissolved NAPC, he transferred NAPC's business assets to NCC.  NCC used and continues to use accounts, assets (such as websites and lists of contact information), and employees of NAPC. One such asset is the website policy-hub.com, which contains a link to a Leadspedia account in the name of "National Auto," which was active and remained active after NAPC's dissolution.

31.     Affordable Car Cure, Inc. ("ACC") is another company owned and controlled by Renny.  Like NCC and NAPC, ACC and AAP also place unsolicited robocalls in violation of the TCPA on behalf, at the behest, and with the knowledge of Defendants.

32.     Renny formed Affordable Auto Protection LLC either to run interference for the true entity doing business as AAP—Pelican Investment Holdings Group LLC—or to share the use of AAP as a fictitious name. Renny's signature appears on a Florida Application for Registration of Fictitious Name for AAP owned by Pelican Investment Holdings Group, LLC, with a listed address of 1300 N. Congress Avenue, West Palm Beach, Florida. This same building holds offices for NCC, ACC, and AAP, as well as entities named Renny Insurance Group LLC, GR Investment Group LLC, National Payment Protection Corp., and Affordable Care Cure, Inc.

33.     On October 12, 2019, a class action lawsuit was filed by Dennis Born against Celtic Marketing LLC ("Celtic"), Sunpath, and Northcoast alleging violations of the TCPA. During the lawsuit, Celtic filed an answer and admitted that it was authorized to sell VSCs of Sunpath and Northcoast.

34.     Since the initiation of this lawsuit, substantially more lawsuits and complaints have been lodged and filed against Defendants, Renny, and Renny's companies. *See, e.g.*, *Auto Armor Specialist, et al. v Pelican Investment Holdings, LLC*, Case No. 9:21-cv-81993-RS (S.D. Fla. Filed Oct. 28, 2021); *Pavelka, et al. v. Pelican Investment Holdings Group, LLC, et al.*, Case No. 3:22-

6

cv-74-B (N.D. Tex. Filed Apr. 16, 2022); *Auguston v. Nat'l Admin. Serv. Co., LLC, et al.*, Case

No. 4:21-cv-00819-ALM-KPJ (E.D. Tex. Filed Apr. 14, 2022); *Salaiz v. Pelican Investment*

*Holdings Grp. LLC*, Case No. 3:22-cv-00029-FM (W.D. Tex. Filed Apr. 6, 2022); *Carguard*

*Admin. Inc. v. Nat'l Admin. Serv. Co., LLC*, Case No. 2:21-cv-01037-SMB (D. Ariz. Filed June

14, 2021); *Cano v. Assured Auto Grp.*, Case No. 3:20-cv-03501-G (N.D. Tex. Filed June 29, 2022).

35.     Defendants have knowledge of and have adopted and maintained TCPA violations

as a sales strategy. This is amply supported by the complaints Defendants receive that are available

from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants received

is not currently available to Plaintiffs but will be revealed through discovery to amplify what is

shown below.

36.     For example, BBB posts the following reviews from customers of

Sunpath/Northcoast products, and Sunpath and Northcoast have knowledge of the complaints:

- STOP CALLING, Aug. 13, 2020: They call us about 2 times a day! We have repeatedly (for many months now) asked to be put on DO NOT CALL list however they never stop calling! They use fake phone numbers on caller ID and when you try to call that number back, it's been disconnected. At the top of their BBB page it says they use THIRD PARTY sellers of their products - so that is the way they are getting around the Do Not Call laws and how they can say "they" don't make unsolicited calls. Ever. "They" aren't making the unsolicited calls but the people they hire or pay commissions to are doing it on "their" behalf. So they are "hiring" people to harass consumers and break the Do Not Call laws. That in itself should be illegal. When we asked the lady who called today what the name of her company was, where she was located and where we could access company info online, she said Sunpath, Florida and gosunpath.com. Why didn't she give her third party company name??? She was a representative of Sunpath, period. I am going to encourage everyone to come to this BBB review site and post about this 'scheme' when they get the UNSOLICITED calls from Sunpath, Ltd.! Let's get this stopped!

- Anonymous, July 4, 2020: I, *****, am Power of Attorney for *****. I am filing this complaint on *****'s behalf. It's regarding Contract # *********. This company along with another company just like them have been charging *****'s account for a vehicle protection plan. I also plan to file a complaint against them too. The books look the same: "Ultimate Auto Protection". *****

is older and has **********, does not drive anymore, thus no car on the road. Anyone who talks to her would realize in no time she is not of sound mind. Yet these people have managed to call her and trick her out of her card information for a warranty in which she doesn't need. Deceptive Practices. They started charging her account and have been charging $188.39 a month. ***** never signed a contract with them and never signed a credit card direct pay authorization form with them. They have no right to be charging her. In order to enter into a contract a person has to be of sound mind, right? That's law 101. As I said before anyone who talks with her for any length of time would see she has memory problems. They have taken advantage and its an expensive advantage. I would think this would also fall as Elder Abuse. These sales people just continue to badger you with phone calls. Note: I tried to call Sunpath Funding at *********** and it puts me on hold with hold music for 30 seconds and then disconnects. Even that is suspicious.

- John TG, June 15, 2020: I have been getting unsolicited calls regarding car warranties every 2-3 days for several months now in spite of constantly asking to be removed from their list. I finally agreed to talk to an agent to see where this harassment was coming from. I ended up speaking with someone who said they were with *** ****** and they quoted me a warranty from SunPath. I see no evidence that a *** ****** exists, so I'm putting this on SunPath. SunPath - you either knowingly or negligently sell your products using criminal third parties. This is your problem and your responsibility to fix.

- Anonymous, June 9, 2020: Robocalling me a lot.

- Alec B, June 3, 2020: They use a call forwarding service to call you from numbers that are in your area code. They then pass you off and threaten to close your account if you don't purchase today. Ultimately hanging up on you if you don't pass (sic).

- Anonymous, April 6, 2020: SunPath Ltd has contacted my cellphone for marketing purposes. My phone has been on the national Do Not Call registry for many years and this company should not have contacted me.

37.    Despite receiving a significant number of consumer complaints and lawsuits, and despite having knowledge of facts that led other VSC administrators to refuse to do business with Renny based on an understanding that Renny was engaged in robocalling (*see, e.g., Carguard* Second Am. Compl. ¶ 48, Case No. 2:21-cv-01037-SMB (ECF No. 46 Sept. 15, 2021)), Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants.

38.     Defendants employ the use of *numerous* third parties to assist them in making the robocalls at issue, in addition to Celtic Marketing and Renny's entities. In fact, Defendants have submitted declarations in court that state "[v]arious telemarketing companies have sought permission by contract to market the policies that Sunpath administers." *See, e.g., Born v. Celtic Marketing LLC*, No. 8:19-cv-01950-JLS-ADS, ECF Nos. 49-2, 49-3. And, in response to BBB complaints, Defendants repeatedly refer to *numerous* "third party independent contract vendors." https://www.bbb.org/us/ma/braintree/profile/auto-warranty-plans/sunpath-ltd-0021-133715/complaints.

39.     Amtrust and its wholly owned subsidiary, Northcoast, appointed Sunpath as an administrator of its VSCs. Sunpath is designated by Amtrust and Northcoast to procure the services of VSC sellers to sell the VSCs subject to guidelines directed by Amtrust. Mepco provides financing for VSCs purchased by consumers under installment plans.

40.     Defendants signed contracts and agreed to enter into relationships with each other and with call placement vendors, expressly or impliedly authorizing, instructing, and permitting the call placement vendors to promote their VSCs in accordance with specifications and practices largely designed, dictated, and overseen by Sunpath, Amtrust, Northcoast, and Mepco, including the use of sales practices that violate the TCPA and state laws regulating telemarketers and their practices.

41.     Defendants had control over the list of persons to call, the timing, frequency, and manner of calls, and the contents of the calls, including the terms for VSC sales. Defendants reviewed and oversaw the activities of their call placement vendors, such as AAP and the other persons who called Plaintiffs and Class members, and provided interim feedback and instructions throughout the course of their relationship to increase sales of VSCs and retention of VSC

9

purchasers, and also to settle accounts and distribute the proceeds from the unlawful calling practices.

42.     In addition, Sunpath, Northcoast, Amtrust, and Mepco directed and controlled the conduct of the call placement vendors and VSC sellers, including AAP, and established and enforced guidelines and specifications for their activities and conduct on Sunpath's, Northcoast's, Amtrust's, and Mepco's behalf.

43.     Sunpath, Northcoast, Amtrust, and Mepco retained rights to give interim instructions, modify, amend, or withdraw the authority of the call placement vendors, and compensated the call placement vendors for their unlawful phone calls, all while knowing that the call placement vendors engaged in conduct that violated the TCPA and state law.

44.     The integration of Defendants' operations was seamless and complete. The call placement vendors offered VSCs to Plaintiffs and Class members while exchanging and receiving data in real time with Sunpath, Northcoast, Amtrust, and Mepco regarding vehicle information, VSC pricing, and coverage options, among other things. Purchasers agreeing to installment payment plans (called "Payment Plan Agreements") paid down payment money to Mepco, who advanced the full purchase price to VSC sellers, like AAP, who then compensated the call placement vendors and Sunpath, Northcoast, and Amtrust. Defendants shared information in real time, processed purchases of VSCs in coordination with one another, and sent money to and from each other in batches using systems that they shared. Defendants allowed the call placement vendors to use their trademarks, names, proprietary databases, and contract forms during the phone calls to Plaintiffs and Class members and in follow up communications with purchasers.

45.     Mepco contracts with VSC sellers, such as AAP, to handle payment collection and to fund the purchase and coverage of VSCs. Pursuant to "Dealer Agreements" with VSC sellers,

Mepco funds the full price of a VSC to the VSC seller and funds the VSC administrator for the coverage cost of the VSC.[1] Mepco deals directly with the purchasers under the Payment Plan Agreements, and handles payment disputes, collections, and cancelation requests.

46.     Defendants knowingly and actively accepted the volume of contacts and business that was generated by their call placement vendors through unlawful practices, thereby ratifying the callers' conduct.

47.     Defendants have received numerous complaints and other information regarding the unlawful conduct of the persons who place phone calls on their behalf, but Defendants refuse to take action to curb their rampant violations of the law. Instead, Defendants accept and retain the benefits of the callers' unlawful conduct while knowing the facts or willfully turning a blind eye to facts that would cause an ordinarily prudent person to inquire as to whether the callers were violating the TCPA.

### *Plaintiff Kurt Morales II*

48.     Morales received dozens of phone calls using an artificial or prerecorded voice advertising extended auto warranties between January 2017 and March 2020, which necessarily included two or more calls within a twelve-month period.

49.     On March 4, 2020, at 4:06 PM, Morales was called on his cell phone number ending in 2227 from the phone number displayed as 702-351-3030.

50.     When Morales answered the phone, he heard an artificial or prerecorded voice message.

---

[1] Plaintiffs' allegations regarding the relationship between Mepco, Sunpath, and VSC sellers is based on information and belief, and the allegations in the amended complaint in *18W Holdings, Inc. v. Sing for Service, LLC d/b/a/ Mepco*, Case No. 2:20-cv-15007 (D.N.J. 2022).

51.     The voice said: "We have an important update about your vehicle. Your car's extended warranty is set to expire.  We have tried to reach you by mail about this issue, and since we have not heard from you, we are giving you one final courtesy call before we close your file. At this time your car would be without coverage and you would be responsible for all repairs on your vehicle. If you wish to decline coverage and be added to our do not call list, press 2 now, or press 1 if you would like to extend or reinstate your car's warranty."

52.     The artificial or prerecorded message received by Morales was substantially similar to the message set forth in paragraph 44 of a recently-filed case in Ohio against numerous call placement vendors (s*ee Yost ex rel. Ohio v. Jones, et al.,* Case No. 2:22-cv-2700 (S.D. Ohio, filed July 7, 2022) (ECF No. 1)), which stated:

> This is an urgent message for the vehicle owner. We have been trying to reach you about your car's extended warranty. You should have received something in the mail about your car's extended warranty. Since we have not gotten a response, we are giving you a final courtesy call before we close out your file. Press two to be removed and be placed on our do not call list, press one to speak with someone about possibly extending or reinstating your car's warranty. Press one to speak with a warranty specialist.

53.     Morales pressed one and was connected with a live agent identifying herself as "Jasmine" who solicited him for a VSC.

54.     Jasmine stated that Morales would receive "Diamond Coverage."

55.     "Diamond Coverage" is a trademark used by Sunpath.

56.     Morales purchased a VSC from NCC, Sunpath and Northcoast.

57.     Morales' cell phone number ending in 2227 has been on the National Do Not Call Registry since December 15, 2008.

*Plaintiff Brandon Callier*

58.     From November 2019 to June 2022, Callier received at least ten phone calls to his cell phone number ending in 4604 that played an artificial or prerecorded voice message advertising auto warranties.

59.     Callier received at least the following calls:

| Date | Time | From |
|------|------|------|
| November 19, 2019 | 10:25 AM | 915-383-5556 |
| November 21, 2019 | 12:46 PM | 915-383-1254 |
| December 11, 2019 | 3:47 PM | 915-383-2503 |
| December 16, 2019 | 2:28 PM | 915-383-4610 |
| December 18, 2019 | 11:14 AM | 915-383-1861 |
| December 18, 2019 | 8:33 AM | 915-383-4742 |
| December 19, 2019 | 1:11 PM | 915-383-5469 |
| December 21, 2019 | 3:50 PM | 317-527-9965 |
| January 6, 2020 | 10:52 AM | 407-272-8548 |
| January 21, 2020 | 12:59 PM | 915-383-5130 |

60.     The calls from the (915) area code were spoofed and from falsified area codes in order to trick Callier into answering more frequently because people are more likely to answer a phone call from a number that appears to be local rather than one from an unrecognizable area code.

61.     On December 21, 2019, Callier answered his phone and heard an artificial or prerecorded voice advertising auto warranties.

13

62.     Callier responded to the voice prompts and was solicited for a vehicle service contract from NCC, Sunpath, and Northcoast.

63.     There was only a short reprieve from robocalling before Callier began receiving robocalls from a sales agent of Sunpath and Northcoast.

64.     In February 2020, Callier received at least twelve (12) phone calls to his cell phone number ending in 4604 that played artificial or prerecorded voice messages advertising auto warranties.

65.     Callier received the following calls from the same number:

| Date | Time | From |
|------|------|------|
| February 3, 2020 | 12:47 PM | 203-303-9394 |
| February 6, 2020 | 2:17 PM | 203-303-9394 |
| February 7, 2020 | 9:13 AM | 203-303-9394 |
| February 7, 2020 | 10:05 AM | 203-303-9394 |
| February 7, 2020 | 12:22 PM | 203-303-9394 |
| February 11, 2020 | 9:54 AM | 203-303-9394 |
| February 12, 2020 | 12:41 PM | 203-303-9394 |
| February 12, 2020 | 1:27 PM | 203-303-9394 |
| February 13, 2020 | 9:34 AM | 203-303-9394 |
| February 13, 2020 | 11:31 AM | 203-303-9394 |
| February 13, 2020 | 1:11 PM | 203-303-9394 |

66.     On February 20, 2020, Callier received a phone call that played an artificial or prerecorded voice message. Callier listened to the message and purchased a VSC from the caller, resulting in a VSC with Sunpath and Northcoast.

14

67.     In October 2021, Callier received at least three (3) phone calls that played an artificial or prerecorded voice message saying "your auto warranty has expired. Press one to speak with someone about renewing your auto warranty."

68.     On October 5, 2021, Callier received a phone call that played an artificial or prerecorded voice message. Callier listened to the message and purchased a VSC from the caller, resulting in a VSC with AAP, Sunpath, and Mepco.

69.     Callier's cell phone number ending in 4604 has been registered on the National Do Not Call Registry since December 13, 2007.

### *Plaintiff Lucas Horton*

70.     Horton received at least six (6) phone calls to his cell phone number ending in 3341 that played artificial or prerecorded voice messages advertising auto warranties, despite being registered on the federal do not call list.

71.     When he answered the calls, the artificial or prerecorded voice messages told him that his auto warranty was about to expire and to "press 1."

72.     Horton received at least the following calls:

| Date | From |
|---|---|
| February 10, 2020 | 214-909-7485 |
| April 6, 2020 | 214-909-4406 |
| April 11, 2020 | 214-909-9289 |
| April 29, 2020 | 214-909-6654 |
| April 30, 2020 | 214-909-5125 |
| May 11, 2020 | 214-909-7902 |

73.    On April 29, 2020, Horton received a phone call that played an artificial or prerecorded voice message. Horton listened to the message and purchased a Sunpath Horizon Diamond New 60 Month Plan from the caller, resulting in a VSC with VAD d/b/a Celtic Marketing LLC, Sunpath and Northcoast.

74.    Horton's cell phone number ending in 3341 has been registered on the National Do Not Call Registry since December 13, 2011.

## FACTS COMMON TO ALL PLAINTIFFS

75.    Plaintiffs never consented to receive the calls alleged herein. Plaintiffs had no relationship with Defendants prior to the calls alleged herein.

76.    Defendants advertised their products by falsely informing the consumer that their warranty had expired and that Defendants' product would "extend" the original auto manufacturer's warranty coverage. The VSCs are not auto warranty extensions and do not provide auto warranty coverage. The VSCs are also with parties other than the original manufacturer of the vehicle and warrantors.

77.    The calls conveyed a false association with the dealerships that sold Plaintiffs their vehicles. For example, the callers' artificial or prerecorded voice messages stated that they were with the warranty department or dealer processing. In reality, Defendants are not employees of the dealerships or affiliated with the dealerships that sold Plaintiffs their vehicles.

78.    Defendants falsely convey or imply that there is a prior relationship with Plaintiffs; falsely claiming that Plaintiffs were called or sent mail previously by Defendants when they were not.

79.    Defendants failed to identify themselves as the callers and the person on whose behalf the calls were placed.

80.     Defendants' calls violated Plaintiffs' and the Class members' statutory rights and
caused actual damages, annoyance, intrusion on privacy and seclusion, and the waste of Plaintiffs'
and Class members' time and money in listening to the artificial or prerecorded voice messages
and being forced to stay on the phone and purchase the VSCs for which they were solicited in
order to identify the persons responsible for the robocalling.

81.     In addition to incurring damages, Defendants have not ceased their unlawful
conduct alleged herein, and it continues unabated.

## CLASS ALLEGATIONS

82.     **Class Definitions**: Plaintiffs bring this action pursuant to Federal Rule of Civil
Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiffs and the Classes defined as follows:

> **Sunpath Monetary Relief Class**.  All persons in the United States who: (1)
> from October 9, 2016 to the present; (2) were sent at least one telephone
> call; (3) on their cellular or residential telephone; (4) that used an artificial
> or prerecorded voice message; (5) promoting Sunpath's vehicle service
> contracts.

> **Northcoast/Amtrust Monetary Relief Class.** All persons in the United
> States who: (1) from October 9, 2016 to the present; (2) were sent at least
> one telephone call; (3) on their cellular or residential telephone; (4) that used
> an artificial or prerecorded voice message; (5) promoting
> Northcoast's/Amtrust's vehicle service contracts.

> **Mepco Monetary Relief Class.** All persons in the United States who: (1)
> from July 14, 2018 to the present; (2) were sent at least one telephone call;
> (3) on their cellular or residential telephone; (4) that used an artificial or
> prerecorded voice message; (5) promoting Mepco's vehicle service
> contracts.

> **AAP Monetary Relief Class.** All persons in the United States who: (1)
> from July 14, 2018 to the present; (2) were sent at least one telephone call;
> (3) on their cellular or residential telephone; (4) that used an artificial or
> prerecorded voice message; (5) promoting AAP's vehicle service contracts.

> **Sunpath Injunctive Relief Class.** All persons who did not give express
> written consent prior to receiving calls advertising Sunpath's vehicle
> service contracts on their cellular or residential telephone numbers.

**Northcoast/Amtrust Injunctive Relief Class.** All persons who did not give express written consent prior to receiving calls advertising Northcoast's/Amtrust's vehicle service contracts on their cellular or residential telephone numbers.

**Mepco Injunctive Relief Class.** All persons who did not give express written consent prior to receiving calls advertising Mepco's vehicle service contracts on their cellular or residential telephone numbers.

**AAP Injunctive Relief Class.** All persons who did not give express written consent prior to receiving calls advertising AAP's vehicle service contracts on their cellular or residential telephone numbers.

**Sunpath Do Not Call Class.** All persons in the United States who: (1) from October 9, 2016 to the present; (2) were called two or more times within a twelve month period by a person authorized to sell Sunpath vehicle service contracts without prior express written consent; (3) while their number was registered on the National Do Not Call Registry.

**Northcoast/Amtrust Do Not Call Class.** All persons in the United States who: (1) from October 9, 2016 to the present; (2) were called two or more times within a twelve month period by a person authorized to sell Northcoast/Amtrust vehicle service contracts without prior express written consent; (3) while their number was registered on the National Do Not Call Registry.

**Mepco Do Not Call Class.** All persons in the United States who: (1) from July 14, 2018 to the present; (2) were called two or more times within a twelve month period by a person authorized to sell Mepco vehicle service contracts without prior express written consent; (3) while their number was registered on the National Do Not Call Registry.

**AAP Do Not Call Class.** All persons in the United States who: (1) from July 14, 2018 to the present; (2) were called two or more times within a twelve month period by a person authorized to sell AAP vehicle service contracts without prior express written consent; (3) while their number was registered on the National Do Not Call Registry.

**Sunpath Texas Subclass.** All persons in Texas who: (1) from October 9, 2016 to the present; (2) were called by a person authorized to sell Sunpath vehicle service contracts.

**Northcoast/Amtrust Texas Subclass.** All persons in Texas who: (1) from October 9, 2016 to the present; (2) were called by a person authorized to sell Northcoast/Amtrust vehicle service contracts.

18

**Mepco Texas Subclass.** All persons in Texas who: (1) from July 14, 2018 to the present; (2) were called by a person authorized to sell Mepco vehicle service contracts.

**AAP Texas Subclass.** All persons in Texas who: (1) from July 14, 2018 to the present; (2) were called by AAP; and (3) the purpose of the call was to sell a VSC.

83.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from a respective Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

84.     **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiffs, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Classes. For example, Defendants' agent, Renny and his entities, place thousands of unsolicited robocalls in violation of the TCPA on Defendants' behalf, and there are numerous BBB complaints against Defendants and their agents for unlawful robocalling. Members of the Classes can be identified through Defendants' records.

85.     **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls. All of the claims arise from the same course of conduct: the use of an artificial or prerecorded voice message to call cellular and

residential telephones without having obtained prior express written consent.  Plaintiffs' claims under the TCPA arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury as the Class's claims.

86.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiffs' claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiffs have no interests antagonistic to the interests of the other members of the Classes and are subject to no unique defenses. Plaintiffs have retained competent counsel to prosecute the case on behalf of Plaintiffs and the Classes.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so.

87.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinge on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

88.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

- Whether Defendants are liable under the TCPA;

- Whether the calls were made using artificial or prerecorded voice messages;

- Whether Defendants violated the Do-Not-Call prohibition of the TCPA;

- Whether Defendants violated the requirement that they train personnel with regard to the existence of the Do-Not-Call list, 47 C.F.R.§ 64.1200(d)(2);

- Whether Defendants violated the identification requirements of 47 C.F.R. § 64.1200(d)(4);

- Whether Defendants violated Texas Business and Commerce Code § 302.101 by placing unauthorized telemarketer calls to Texans without obtaining necessary certifications;

- Whether Defendants violated Texas Business and Commerce Code § 305.053 by engaging in conduct prohibited by the TCPA;

- The measure of damages if Defendants are found to be liable;

- Whether Plaintiffs and members of the Classes are entitled to treble damages based on the knowledge or willfulness of Defendants' conduct.

The common claims of Plaintiffs and the Class members that arise from this same course of conduct generate several common questions of fact and law, including whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) and (B) by placing calls using an artificial or prerecorded voice message to cellular or residential telephone numbers without possessing records of prior express written consent. The phone logs of the calls placed to Plaintiffs and Class members will serve as common proof in the same manner for each of the Plaintiffs and Class members. These common legal and factual issues are capable of proof through common evidence.

89.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

<u>**COUNT I**</u>
**Violation of Telephone Consumer Protection Act, 47 U.S.C. § 227(b)**
***(On Behalf of All Monetary Relief Classes and All Injunctive Relief Classes***
***and Against All Defendants)***

90.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

91.     Defendants caused telephone calls to be placed to Plaintiffs' and the Class members' cellular and residential telephones without prior express written consent.

92.     Defendants' calls were made for purposes of advertising and marketing Defendants' VSCs.

93.     The calls were made using an artificial or prerecorded voice message to cellular and residential phones of Plaintiffs and the Class members in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

22

94.     As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs and the Classes, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

95.     Defendants made the unlawful calls to Plaintiffs and Class members "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

96.     If the Court finds that Defendants *willfully* and/or *knowingly* violated this subsection of the TCPA, the Court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

97.     Plaintiffs, Monetary Relief Class members, and Injunctive Relief Class members also seek a permanent injunction prohibiting Defendants and their agents from making telemarketing solicitations to residential and wireless telephone numbers using artificial or prerecorded voice messages without prior express written consent in violation of the TCPA.

**COUNT II**
**Violation of Telephone Consumer Protection Act, 47 U.S.C. § 227(c)**
**(*On Behalf of All Do Not Call Classes and Against All Defendants*)**

98.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

99.     The telephone numbers of Plaintiffs and the Do Not Call Class members are registered on the Do Not Call Registry and had been for 31 days or more before the Defendants placed one or more calls to their Do Not Call-registered phone numbers.

100.    Morales registered his phone number ending in 2227 on the National Do Not Call Registry on December 15, 2008.

101.    Callier registered his phone number ending in 4604 on the National Do Not Call Registry on December 13, 2007.

102.    Horton registered his phone number ending in 3341 on the National Do Not Call Registry on December 13, 2011.

103.    Defendants and/or their agents acting with Defendants' knowledge and on their behalf, placed telephone calls to Plaintiffs' and the Do Not Call Class members' Do Not Call-registered telephone numbers without having their prior express written consent to do so.

104.    Defendants and/or their agents acting with Defendants' knowledge and on their behalf, placed telephone calls to Plaintiffs' and the Do Not Call Class members' Do Not Call-registered telephone numbers that failed to identify Defendants and/or their agents.

105.    The foregoing acts and omissions of Defendants and/or their agents constitute violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

106.    The foregoing acts and omissions of Defendants and/or their agents constitute violations of the TCPA, 47 U.S.C. § 227(c), by failing to train personnel engaged in telemarketing on the written policies and the existence of the Do Not Call list, in violation of 47 C.F.R. § 64,1200(d)(2).

107.    The foregoing acts and omissions of Defendants and/or their agents constitute violations of the TCPA, 47 U.S.C. § 227(c), by failing to provide Plaintiffs and Do Not Call Class members with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number and address at which the person or entity may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4).

108.    Defendants' calls were made for a commercial purpose.

109.     Plaintiffs and Do Not Call Class members are entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

110.     Defendants made the unlawful calls to Plaintiffs and Class members "*willfully*" and/or "*knowingly,*" and Plaintiffs and Do Not Call Class members are entitled to an award of up to $1,500 in damages for each such *knowing* or *willful* violation. 47 U.S.C. § 227(c)(5).

111.     Plaintiffs and Do Not Call Class members also seek a permanent injunction prohibiting Defendants and their agents from engaging in the foregoing unlawful conduct.

**COUNT III**
**Violation of Texas Business and Commerce Code § 302.101**
**Texas State TCPA Law**
(***On Behalf of All Texas Subclasses and Against All Defendants***)

112.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

113.     Texas Business and Commerce Code § 302.101 requires telemarketers to obtain a registration certificate for the business location from which the solicitation is made.

114.     Texas Business and Commerce Code § 302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Comm. Code § 302.101(a).

115.     Defendants failed to register to place telemarketing calls or have their products sold via telemarketing calls in Texas, yet they placed telemarketing solicitation telephone calls to Plaintiffs and Texas Subclass members in violation of Texas registration requirements.

116.     Plaintiffs and Texas Subclass members seek an award of $5,000 per violation pursuant to Tex. Bus. & Comm. Code § 302.302(a), as well as their damages for injuries incurred as a result of Defendants' violations of Tex. Bus. & Comm. Code § 302.101(a).

117.    Plaintiffs and Texas Subclass members also seek a permanent injunction requiring Defendants to cease placing telemarketing calls to residents of Texas.

**COUNT IV**
**Violation of Texas Business and Commerce Code § 305.053**
**Texas State TCPA Law**
(*On Behalf of All Texas Subclasses and Against All Defendants*)

118.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

119.    Texas Bus. & Comm. Code § 305.053 creates a right of action for "a person who receives a communication that violates [the TCPA as codified at] 47 U.S.C. Section 227 [or] a regulation adopted under that provision . . . against the person who originates the communication." Tex. Bus. & Comm. Code § 305.053(a).

120.    Defendants' conduct alleged herein constitutes violations of the TCPA and its regulations, including 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B), 47 U.S.C. § 227(c), and 47 C.F.R. §§ 64.1200(d)(1), (d)(2), (d)(4).

121.    Plaintiffs are entitled to awards of at least $500 in damages for each such violation, pursuant to Tex. Bus. & Comm. Code § 305.053(b)(1).

122.    Defendants made the unlawful calls to Plaintiffs and Class members "*willfully*" and/or "*knowingly,*" and Plaintiffs also request that the Court award treble damages based on Defendants' *knowing* or *willful* violations, pursuant to Tex. Bus. & Comm. Code § 305.053(c).

123.    Plaintiffs and Texas Subclass also seek a permanent injunction requiring Defendants to cease placing telemarketing calls in violation of the TCPA, its regulations, and Texas law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs KURT MORALES II, BRANDON CALLIER, and LUCAS HORTON, individually, and on behalf of the Classes, pray for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiffs as the Class Representatives, and appointing their counsel as Class counsel;

B.      An order declaring that Defendants' actions, as set out above, violate the TCPA, its regulations, and Texas law;

C.      An order declaring that Defendants' actions, as set out above, violate the TCPA, its regulations, and Texas law *willfully* and *knowingly*;

D.      An award of actual and/or statutory damages, including enhanced damages and penalties for Defendants' violations committed willfully and knowingly;

E.      An order enjoining Defendants from placing calls to cellular or residential telephone numbers using an artificial or prerecorded voice message for the purpose of advertising, promoting, or soliciting the sale of Defendants' VSCs or any other property, goods, or services, unless they maintain documentation evidencing the prior express written consent of the person subscribed to the telephone number to which they place the call, and otherwise protecting the interests of the Classes;

F.      An order enjoining Defendants and their authorized sales agents from placing calls to telephone numbers listed on the National Do Not Call Registry for the purpose of advertising, promoting, or soliciting the sale of Defendants' VSCs, unless they maintain documentation evidencing the prior express written consent of the person subscribed to the telephone number to whom they place the call;

G.      An order enjoining Defendants and their authorized sales agents from placing telemarketing calls to residents of Texas;

H.      An order requiring Defendants to serve a copy of any injunction entered in this case on their authorized sales agents and direct them to cease making telephone calls to cellular and

residential telephone numbers using artificial or prerecorded voice messages for the purpose of advertising, promoting, or soliciting the sale of Defendants' VSCs, unless they maintain documentation evidencing the prior express written consent of the person subscribed to the telephone number to which they place the call;

I.      An award of costs and attorney's fees; and

J.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

> KURT MORALES II, BRANDON CALLIER, and LUCAS HORTON individually, and on behalf of all others similarly situated,
>
> By: /s/ Ian Connor Bifferato                 .
> Ian Connor Bifferato (#3273)
> THE BIFFERATO FIRM, P.A.
> 1007 N. Orange Street, 4th Floor
> Wilmington, DE 19801
> Telephone: (302) 225-7600
> Facsimile: (302) 298-0688
> E-mail: cbifferato@tbf.legal
>
> Thomas A. Zimmerman, Jr. (IL #6231944)*
> *tom@attorneyzim.com*
> ZIMMERMAN LAW OFFICES, P.C.
> 77 W. Washington Street, Suite 1220
> Chicago, Illinois 60602
> Telephone: (312) 440-0020
> Facsimile: (312) 440-4180
>
> Mark L. Javitch (California SBN 323729)*
> JAVITCH LAW OFFICE
> 480 S. Ellsworth Avenue
> San Mateo CA 94401
> Telephone: (650) 781-8000
> Facsimile: (650) 648-0705
>
> *Attorneys for Plaintiffs and the Putative Classes*
> *Admitted Pro Hac Vice

<u>**CERTIFICATE OF SERVICE**</u>

I, Ian Connor Bifferato, hereby certify that on this 15th day of August, 2022, a copy of the foregoing *Fourth Amended Class Action Complaint* was caused to be served on all counsel of record via CM/ECF.

*/s/ Ian Connor Bifferato*

Ian Connor Bifferato (#3273)