## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KURT MORALES II, BRANDON CALLIER, and LUCAS HORTON, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>SUNPATH LTD., a Delaware corporation, NORTHCOAST WARRANTY SERVICES, INC., a Delaware corporation, AMTRUST NORTH AMERICA, INC., a Delaware corporation, SING FOR SERVICE, LLC, a Delaware limited liability company, PELICAN INVESTMENT HOLDINGS LLC, a Delaware limited liability company, and AFFORDABLE AUTO SHIELD, INC., a Delaware limited liability company,<br><br>      Defendants. | Case No.:  20-cv-01376-RGA<br><br>**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT PELICAN INVESTMENT HOLDINGS GROUP, LLC'S MOTION TO DISMISS**<br><br>**Filed: August 25, 2023** |

# TABLE OF CONTENTS

I.      Introduction...............................................................................................................1

II.     Factual Background Relevant to AAP's Motion to Dismiss ................................................1

III.    Legal Standard ................................................................................................2

IV.     Argument ................................................................................................3

        A.      Plaintiffs Adequately Plead AAP's Direct Liability for Violating the Restriction
                on Artificial or Prerecorded Voices ................................................3

        B.      Plaintiffs Adequately Plead AAP's Direct Liability for Disregarding the National
                Do Not Call Registry ................................................................6

        C.      Plaintiffs Adequately Plead AAP's Direct Liability for Violating 47 C.F.R. §
                64.1200(d) ................................................................8

        D.      Plaintiffs Adequately Plead Claims Under Texas Law ................................9

        E.      Plaintiffs Adequately Allege that AAP Is Liable as the Alter Ego of Renny's
                Other Shell Companies ................................................10

        F.      The 5AC Is Not a Shotgun Pleading; AAP Has Ample Notice of Plaintiffs'
                Claims ................................................................12

        G.      The 5AC Is Not Too Long ................................................15

        H.      Plaintiffs Have Standing ................................................16

V.      CONCLUSION................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>*Cases*</u>

*Abante Rooter and Plumbing, Inc. v. Creditors Relief, LLC*,
   Civ. No. 20-3272 (SDW) (LDW), 2020 WL 9397554 (D.N.J. Dec. 10, 2020)........................16

*Abramson v. AP Gas & Elec. (PA) LLC*,
   No. 22-cv-1299, 2023 WL 1782728 (W.D. Pa. Feb. 6, 2023)......................................................6

*Auguston v. Nat'l Admin. Serv. Co., LLC*,
   No. 4:23-cv-819-ALM-KPJ, 2023 WL 1810397 (E.D. Tex Jan. 11, 2023) ...............................6

*Bower v. National Admin. Serv. Co., LLC*,
   No. 4:21-CV-00998, 2022 WL 821166 (M.D. Pa. Mar. 17, 2022) .....................................12, 13

*In re Burlington Coat Factory Sec. Litig*,
   114 F.3d 1410 (3rd Cir. 1997) ...................................................................................................3

*Charvat v. NMP, LLC*,
   656 F.3d 440 (6th Cir. 2011) .....................................................................................................9

*Chennette v. Porch.com, Inc.*,
   50 F.4th 1217 (9th Cir. 2022) ...................................................................................................7

*Cordoba v. DirecTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019) .................................................................................................9

*Cunningham v. Rapid Response Monitoring Servs.*,
   251 F. Supp. 3d 1187 (M.D. Tenn 2017)...............................................................................9, 16

*In re DVI, Inc.*,
   326 B.R. 301 (D. Del. Bankr. 2005) ........................................................................................13

*Fischman v. Mediastratx, LLC*,
   2:20-CV-83-D, 2021 WL 3559639 (E.D.N.C. Aug. 10, 2021) ..................................................9

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)...................................................................................................5, 8

*Higgs v. Golden Title Loans, LLC*,
   No. 2:20-cv-2559-SHL-atc, 2021 WL 6332357 (W.D. Tenn. Oct. 27, 2021).............................6

*Hirsch v. Ensurety Ventures, LLC*,
   805 F. App'x 987 (11th Cir. 2020) ..........................................................................................14

**_Cases (continued)_**

_Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc._,
  831 F.2d 1309 (7th Cir. 1987) ..................................................................................11

_Johnson v. City of Shelby_,
  135 S. Ct. 346 (2014) ...............................................................................................3

_Kemen v. Cincinnati Bell Tel. Co. LLC_,
  1:22-CV-152, 2023 WL 361136 (S.D. Ohio Jan. 23, 2023) .......................................7

_Kertesz v. Korn_,
  698 F.3d 89 (2d Cir. 2012) .......................................................................................11

_M.B. v. Schuylkill County_,
  375 F. Supp. 3d 574 (E.D. Pa. 2019) ......................................................................13

_Mabon, Nugent & Co. v. Texas Am. Energy Corp._,
  CIV. A. 8578, 1990 WL 44267 (Del. Ch. Apr. 12, 1990) ........................................11

_Maio v. Aetna, Inc._,
  221 F.3d 472 (3rd Cir. 2000) .....................................................................................3

_Manopla v. Sansone Jr.'s 66 Automall_,
  2020 WL 1975834 (D.N.J. Jan. 10, 2020) .................................................................5

_Mantha v. QuoteWizard.com, LLC_,
  CV 19-12235-LTS, 2022 WL 325722 (D. Mass. Feb. 3, 2022) .................................8

_Martin v. D.B. Martin Co._,
  88 A. 612 (Del. Ch. 1913) .......................................................................................11

_Marnavi S.p.A. v. Keehan_,
  900 F. Supp. 2d 377 (D. Del. 2012) ........................................................................11

_Mata v. Veros Credit, LLC_,
  SA CV 16-8-DOC (JCGx), 2017 WL 2644633 (C.D. Cal. Jan. 20, 2-017) ...............5

_Moore v. Healthcare Sols. Inc._,
  21-CV-4919, 2022 WL 17487823 (N.D. Ill. Dec. 7, 2022).......................................7

_In re NJ Affordable Homes Corp._,
  05-60442 (DHS), 2013 WL 6048836 (Bankr. D.N.J. Nov. 8, 2013)....................12, 14

_N.L.R.B. v. Al Bryant, Inc._,
  711 F.2d 543 (3d Cir. 1983)......................................................................................11

## *Cases (continued)*

*Ohio v. Jones*,
    No. 2:22-cv-2700 (S.D. Ohio July 7, 2022)................................................................16

*Pastore v. GT Mktg. Grp. USA Inc.*,
    No. 6:21-cv-1483-PGB-DCI, 2022 WL 409414 (M.D. Fla. Feb. 10, 2022) ..............6

*Raso v. Pegasus & Sons Masonry Co, Inc.*,
    110 F. Supp. 3d 284 (D. Mass. 2015) .......................................................................11

*Rosenberg v. LoanDepot LLC*,
    435 F. Supp. 3d 308 (D. Mass. 2020) .........................................................................9

*Spruill v. Gillis*,
    372 F.3d 218 (3rd Cir. 2004) .......................................................................................2

*United States v. N. Tr. Co.*,
    372 F.3d 886 (7th Cir. 2004) .......................................................................................8

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3rd Cir. 2007) .......................................................................................3

*Wagner v. CLC Resorts & Devs., Inc.*,
    32 F. Supp. 3d 1193 (M.D. Fla. 2014) ........................................................................9

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
    C.A. No. 13-1353-LPS, 2018 WL 4502178 (D. Del. Sept. 20, 2018).........................3

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)........................................................................................14

## *Statutes, Regulations, and Rules*

28 U.S.C. § 1367....................................................................................................................10

47 U.S.C. § 227.............................................................................................................1, 6, 9, 10

Fed. R. Civ. P. 12(b)(6)......................................................................................................2, 15

Fed. R. Civ. P. 12(e) .......................................................................................................12, 15

Fed. R. Civ. P. 12(h)(3)..........................................................................................................16

### *Statutes, Regulations, and Rules (continued)*

Texas Business and Commerce Code § 302.101 ........................................................................1, 10

Texas Business and Commerce Code § 302.102-103 ....................................................................10

Texas Business and Commerce Code § 305.053 ...............................................................1, 9, 10

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (F.C.C. 2003) ........................................................................................................7

## I.     INTRODUCTION

Of all the Defendants named in the Fifth Amended Complaint ("5AC"), the case against Defendant Pelican Investment Holdings, LLC ("AAP") is the most direct. AAP placed at least three phone calls in October 2021 phone calls to Plaintiff Brandon Callier, using an artificial or prerecorded voice without prior express written consent, while Callier's phone number was registered on the National Do Not Call List, which violates 47 U.S.C. § 227(b), 47 U.S.C. § 227(c), Texas Business & Commerce Code § 302.101, and Texas Business & Commerce Code § 305.053.

The Court can reject each and every argument advanced in AAP's 29-page Brief ("Def.'s Br.) in support of its motion to dismiss ("Motion") by considering 4 (four) well-pled factual allegations in the 5AC concerning AAP's unlawful phone calls to Callier.

> 139.    Defendant AAP, and other Renny-affiliated companies, directly initiated the unlawful robocalls to Plaintiffs and the other Class members and are directly liable for violating the TCPA.

> 206.   In October 2021, Callier received at least three (3) phone calls that played an artificial or prerecorded voice message saying "your auto warranty has expired. Press one to speak with someone about renewing your auto warranty."

> 207.    On October 5, 2021, Callier received a phone call that played an artificial or prerecorded voice message. Callier listened to the message and purchased a VSC from the caller, resulting in a [vehicle service contract] with AAP, Sunpath, and Mepco.

> 208.   Callier's cell phone number ending in 4604 has been registered on the National Do Not Call Registry since December 13, 2007.

None of AAP's arguments addresses these well-pled facts. For this reason, and the others set out in more detail below, AAP's Motion should be denied.

## II.    FACTUAL BACKGROUND RELEVANT TO AAP'S MOTION TO DISMISS

AAP is a call center that places outbound telemarketing phone calls to sell vehicle service contracts ("VSCs") of the other Defendants. 5AC ¶ 42. As Sunpath, Northcoast, and Amtrust's

duly authorized "Call Center Marketer" (5AC ¶ 42) and Mepco's "Direct Marketer" (Exhibit 6 to 5AC ), AAP directly places the outbound phone calls to consumers, including Plaintiff and Class members. 5AC ¶¶ 138–140. In doing so, AAP engages in the unlawful use of artificial or prerecorded messages to place phone calls to wireless phone numbers without obtaining prior express written consent from the call recipient. *Id.*

Although they need not be considered in denying AAP's Motion, it bears mentioning that *according to AAP's own responses to discovery* state that "[n]o calls are transferred to Pelican insofar as it is the entity that is initiating the call at issue." *See* Am. Response to Interrog. No.9, attached as Exhibit 1. Such calls included at the very least, a phone call to October 4, 2021 to Callier. *See* Amended Response to Interrog. No. 7. AAP claims that it had prior express written consent to place calls to Callier's phone number and produced a document purporting to document the obtainment of that consent.[1]

AAP's conduct is facilitated, enabled, authorized, and ratified by the other Defendants, and the 5AC devotes considerable detailed allegations to show that these Defendants are also indirectly, vicariously, and joint and severally liable, for the calls placed by AAP on their behalf. For the instant Motion, however, those factual allegations can largely be set to the side.

## III.   LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts accept as true all well-pled factual allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail

---

[1] Plaintiffs request that the Court not consider AAP's discovery resposes in connection with the Motion, except insofar as one or more Defendants may raise an issue at any hearing or in a reply brief as to which party, if any, is vexatiously or otherwise needlessly multiplying these proceedings.

but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). The Court may grant a motion to dismiss only if, after accepting all well-pled allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, the plaintiff is not entitled to relief. *Maio v. Aetna, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000) (internal quotation marks omitted).

To withstand a motion to dismiss, the plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint survives a motion to dismiss where the allegations raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact). *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, C.A. No. 13-1353-LPS, 2018 WL 4502178 (D. Del. Sept. 20, 2018).

## IV.    ARGUMENT

### A.    Plaintiffs Adequately Plead AAP's Direct Liability for Violating the Restriction on Artificial or Prerecorded Voices

AAP's arguments that the 5AC fails to plead direct liability are frivolous. They defy AAP's own admissions and statements in response to Plaintiffs' written discovery requests.

AAP's argument (Section V.a of its Brief) that the Plaintiffs fail to allege that Pelican made any calls to the Plaintiffs is contradicted by AAP's prior inconsistent assertion in sworn responses to Plaintiffs' Interrogatories that "Pelican placed phone calls to Callier with respect to selling a VSC." Am. Response to Interrog. No. 6; *see also* No. 7 ("On October 4, 2021, Pelican received a

lead for Plaintiff Callier . . .”). AAP's own statements suffice to fully reject this argument as a basis for dismissal.

That aside, the 5AC amply pleads the same. In the second paragraph, it is expressly alleged that "[t]ogether Defendants Amtrust, Sunpath, Mepco, and Northcoast hire, delegate, and cooperate with VSC sales agents, such as AAP and AAS, to directly market and sell their VSCs and related services to consumers using telemarketing. 5AC ¶ 2; *see also* 5AC ¶ 3 (explaining that Renny is a VSC seller who forms numerous shell corporate entities, including AAP and AAS, to sell VSCs through unlawful robocalling and evade detection and enforcement); 5AC ¶ 42 (describing the "Call Center Marketing Agreements" that authorized AAP and AAS to conduct telemarketing of Defendants' VSCs); 5AC ¶ 46 (alleging that Defendants agreed that Renny would engage in robocalling and use shell corporations, LLCs, and contractual provisions to attempt to shield themselves from liability); 5AC ¶ 63 (AAP is one iteration of Renny's vast and enduring unlawful robocalling operation used to sell VSCs directly to consumers using unsolicited telemarketing to call the phone numbers of consumers); 5AC ¶ 119 (AAP and other call placement vendors called Plaintiffs and Class members); 5AC ¶ 120 (identifying AAP as a call placement vendor and VSC seller); 5AC ¶ 139 ("Defendant AAP, and other Renny-affiliated companies, directly initiated the unlawful robocalls to Plaintiffs and the other Class members and are directly liability for violating the TCPA); 5AC ¶ 229 (alleging that Renny and his entities (of which AAP is one) place thousands of unsolicited robocalls in violation of the TCPA on Defendants' behalf).

Unlike the cases cited by AAP, Plaintiffs have receipts. The VSCs they purchased during the unlawful prerecorded phone call identify the VSC sellers as National Car Cure and AAP. *See* 5AC ¶¶ 201, 207. Because Defendants lie about who they are during the phone call, refuse to

identify who they are, and fail to disclose on whose behalf they are calling, Plaintiffs must buy a VSC and wait to receive the policy documentation to identify the culprits. 5AC ¶¶ 221–224.

Plaintiffs also sufficiently plead that Defendants used a prerecorded or artificial voice to make the calls that form the basis of their lawsuit. That the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion, so alleging the use of an "'artificial or prerecorded voice' from the TCPA statute does not render factual allegations, inadequate." *Mata v. Veros Credit, LLC*, SA CV 16-8-DOC (JCGx), 2017 WL 2644633, at *4 (C.D. Cal. Jan. 20, 2-017). Nevertheless, some district courts have incorrectly required further factual allegations showing that the alleged artificial or prerecorded message *sounded like it* was artificial or prerecorded. AAP cites some of these cases on pages 14–15 of its Brief. *See, e.g.*, *Manopla v. Sansone Jr.'s 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020); *but see Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) ("Even post-*Twombly,* it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element'").

Whether or not the additional element applies, the 5AC meets this requirement, were it to be applied to the 5AC. Kurt Morales heard a prerecorded message telling him to "press one to speak with a warranty specialist." 5AC ¶ 191. Morales pressed one and was transferred to a live agent that pitched a VSC from NCC, Sunpath, and Northcoast. 5AC ¶ 195. Brandon Callier heard an artificial or prerecorded message that ended with "press one to speak with someone about renewing your auto warranty." 5AC ¶ 206. Lucas Horton alleged that "when he answered the calls, the artificial or prerecorded voice messages told him that his auto warranty was about to expire and to 'press 1.'" 5AC ¶ 210. Automated voices, not live operators, ask consumers to "press 1."

Courts have concluded that calls placed by companies associated with Renny, including calls involving requests to press one, adequately plead a prerecorded or artificial voice. *See Auguston v. Nat'l Admin. Serv. Co., LLC*, No. 4:23-cv-819-ALM-KPJ, 2023 WL 1810397, at *7 (E.D. Tex Jan. 11, 2023). Allegations that the prerecorded message ended with the request to "press one" sufficiently alleged the use of a prerecorded message. *Abramson v. AP Gas & Elec. (PA), LLC*, No. 22-1299, 2023 WL 1782728, at *3 (W.D. Pa. Feb. 6, 2023); *Pastore v. GT Mktg. Grp. USA Inc.*, No. 6:21-cv-1483-PGB-DCI, 2022 WL 409414, at *2 (M.D. Fla. Feb. 10, 2022); *Higgs v. Golden Title Loans, LLC*, No. 2:20-cv-2559-SHL-atc, 2021 WL 6332357, at *2 n.2 (W.D. Tenn. Oct. 27, 2021).

Moreover, the myriad consumer complaints referenced in the 5AC also support Plaintiffs' allegations of receiving artificial or prerecorded messages. *See, e.g.*, 5AC, Exhibit 16 4/6/2021 ("Susie the robot called"); 5/13/2021 ("I hear a new robo call prompt"); 5/27/2021 ("I received a robocall telling me that the warranty on my vehicle has expired"); 10/7/2021 ("This began as a robocall regarding a vehicle warranty"); 10/12/2021 (This company called PELICAN call me . . .thru a robot call").

Because Plaintiffs have adequately alleged that AAP is directly liable for placing prerecorded or artificial phone calls directly to Plaintiffs and Class members, their claim under § 227(b) should survive AAP's Motion.

**B.     Plaintiffs Adequately Plead AAP's Direct Liability for Disregarding the National Do Not Call Registry**

AAP's argument that "[a]s a threshold matter, Plaintiffs fail to allege that they personally registered their telephone numbers on the National Do Not Call Registry" simply misses 5AC ¶¶

245–247. Each Plaintiff enrolled in the DNC registry for the phone number that Defendants called more than 30 days prior to receiving Defendants' calls.[2]

AAP's other argument with respect to the DNC claim is that Plaintiffs have not adequately pled AAP made the phone calls. Def.'s Bt. at 16. However, as argued above, Plaintiffs have adequately pled that AAP placed the phone calls to Plaintiffs. *See supra* § IV.A.

Plaintiffs have adequately alleged that their cell phone numbers are residential. AAP raises a factual dispute regarding whether Plaintiffs' DNC-registered cellular phone numbers are "residential."[3] "[T]he FCC has concluded that a cell phone is presumptively residential. We also know, as discussed above, that the FCC has concluded that a phone—whether a landline or a cell phone—can be residential even when used for both personal and business purposes." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). "[W]ireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (F.C.C. 2003). "[T]he inquiry to determine whether a phone number qualifies as a 'residential telephone

---

[2] "It does not matter who registered the phone number on the Do Not Call Registry. But even if it mattered, the complaint would survive." *Moore v. Healthcare Sols. Inc.*, 21-CV-4919, 2022 WL 17487823, at *5 (N.D. Ill. Dec. 7, 2022).

[3] AAP's Motion is the first to raise this argument challenging whether Plaintiffs were called on their "residential telephone numbers." In the event the Court is inclined to agree with AAP's argument, Plaintiffs request that it do so without prejudice and permit leave to file an amended complaint to cure any perceived deficiency. *See Kemen v. Cincinnati Bell Tel. Co. LLC*, 1:22-CV-152, 2023 WL 361136, at *6 (S.D. Ohio Jan. 23, 2023).

subscriber' focuses on whether the subscriber has and uses the phone for residential purposes, regardless of if the subscriber also uses the phone for other purposes. Not only is this the necessary conclusion stemming from the ordinary meaning of 'residential telephone subscriber' in 1991, it is also the sensible approach in conformity with the language and purpose of the statute." *Mantha v. QuoteWizard.com, LLC*, CV 19-12235-LTS, 2022 WL 325722, at \*5 (D. Mass. Feb. 3, 2022).

Because "complaints need not anticipate and attempt to plead around defenses," resolution of this dispute is better suited for a later stage of the proceedings. *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). As discussed above, Plaintiffs have alleged that they registered their cell phone numbers on the DNC registry. Therefore, the presumption that their phone numbers are residential applies, which should withstand the motion to dismiss because Defendants have the burden to rebut the presumption. And, the Federal Rules do not require Plaintiffs to plead specific facts for every element of their claims in any event. *See Fowler*, 578 F.3d at 213. Additional allegations that Plaintiffs use their phone numbers for residential uses would not render their claims any more plausible than they already are. Plaintiffs were called numerous times on their cell phone numbers that they personally registered on the National Do Not Call Registry, and during the phone calls at issue in this very litigation, they purchased VSCs on their personal vehicles using payment cards in their names. 5AC ¶¶ 195, 205, 207, 212, 225; *see also* Exhibits 13 and 14 to 5AC. AAP's arguments are improper for a motion to dismiss and seek to introduce materials outside of the 5AC in support of its contentions that Plaintiffs' phone numbers are not "residential." Further, AAP's argument fails to account for the law that phone numbers can qualify as residential, regardless of whether the subscriber also uses the phone for other purposes.

**C.      Plaintiffs Adequately Plead AAP's Direct Liability for Violating 47 C.F.R. § 64.1200(d))**

AAP has two arguments that apply to Plaintiffs' claims that AAP violated the TCPA  47 C.F.R. § 64.1200(d), when it falsely identified itself in the prerecorded messages and during the phone conversations with Plaintiffs and Class members. First, AAP argues that Plaintiffs' cell phone numbers are not residential. For the reasons above, the Court should decline to dismiss on this improper basis because it requires resolution of factual issues.

AAP also argues that there is no private right of action for consumers to enforce violations of the regulations set out in 47 C.F.R. § 64.1200(d)(1)–(4). The 5AC ¶¶ 251–253 alleges that Defendants violated these regulations. Numerous courts have held that consumers may pursue private actions for violations of 47 C.F.R. 64.1200(d) under 47 U.S.C. § 227(c)(5), because the "procedures correspond with section 227(c)'s plain text, which provides for the creation of rules designed to 'implement [ ] methods and procedures[,]' such as 'electronic databases ... company-specific 'do-not-call' systems, and any other alternatives,' that protect residential telephone subscribers' privacy right.'" *Fischman v. Mediastratx, LLC*, 2:20-CV-83-D, 2021 WL 3559639, at *4 (E.D.N.C. Aug. 10, 2021); *see also Cordoba v. DirecTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019); *Charvat v. NMP, LLC*, 656 F.3d 440, 443–44 (6th Cir. 2011); *Rosenberg v. LoanDepot LLC*, 435 F. Supp. 3d 308, 324–25 (D. Mass. 2020); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014).

Even if AAP were correct about the absence of a federal right of action, Plaintiffs would still have their right of action to pursue violations of these regulations under Tex. Bus. & Comm. Code § 305.053, which expressly provides a state law right of action for violations of 47 C.F.R. §64.1200(d).

### D.      Plaintiffs Adequately Plead Claims Under Texas Law

Plaintiffs allege Defendants violated Texas Bus. & Comm. Code §§302.101, which states that a person may not make a telephone solicitation from a location in Texas or to a purchaser located in Texas, unless the person holds a registration certificate for the business location from which the telephone solicitation is made.  Tex. Bus. & Comm. Code § 302.101(a). The 5AC also asserts a claim under Tex. Bus. & Comm. Code § 305.053, which provides a state law right of action for violations of 47 U.S.C. § 227, *et seq*. laws and regulations.

AAP's claim that its registration in Florida as a foreign LLC meets the telephone solicitation registration requirements of Texas law is specious and unsupported. It cites no case supporting the contention. The Texas law requires a specific registration certificate from a proper authority to be a "seller" that conducts "telephone solicitations." *See* Tex. Bus. & Comm. Code § 302.102–103.

AAP also argues that it did not make the phone calls. However, as shown above, Plaintiffs have indeed alleged that AAP is directly liable for the phone calls, and have also shown that AAP's own discovery responses support those well-pled allegations.

AAP lastly argues that Plaintiffs' claims are only justiciable in a Texas state court. The idea that state legislatures could enact laws that federal courts cannot enforce ignores the U.S. Constitution and is fundamentally unsound. AAP does not challenge that the Court has subject matter jurisdiction over the supplemental state law claims under federal law, 28 U.S.C. § 1367. Moreover, this Court has already addressed and rejected this argument. *See* D.I. 92 at 5, n.2 ("Unless I saw some persuasive reason why a state would create a cause of action that could only be brought in that state, I would only so limit the statute based on clearer language than is at issue here.").

10

**E.      Plaintiffs Adequately Allege that AAP Is Liable as the Alter Ego of Renny's Other Shell Companies**

The alter ego doctrine can be applied to cases where a successor company is disguised as a continuance of the old one. *See Raso v. Pegasus & Sons Masonry Co, Inc.*, 110 F. Supp. 3d 284, 286–87 (D. Mass. 2015). The Third Circuit has explained that, in the context of a dispute before the National Labor Relations Board, "the focus of the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operations." *N.L.R.B. v. Al Bryant, Inc.*, 711 F.2d 543, 553 (3d Cir. 1983).

Where a corporation's owners abuse the corporation's legally limited liability to effect injustice, the corporation may be "considered as an agency, adjunct or instrumentality of" its owner, *Martin v. D.B. Martin Co.*, 88 A. 612, 615 (Del. Ch. 1913), and a court may exercise its equitable power to disregard the legal privilege of the corporate form to reach the owner's assets. *Kertesz v. Korn*, 698 F.3d 89, 91 (2d Cir. 2012). The corporate veil may be pierced where a subsidiary is in fact a mere instrumentality or alter ego of its parent. *Mabon, Nugent & Co. v. Texas Am. Energy Corp.*, CIV. A. 8578, 1990 WL 44267, at *5 (Del. Ch. Apr. 12, 1990) (corporate veil may be pierced where there is fraud). To prevail on a theory of alter ego liability, the plaintiff must show that the successor "was created or used to justify a wrong, protect a fraud, or defend a crime." *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 397 (D. Del. 2012).

Here, the 5AC describes how Renny dissolved entities to avoid significant liability under the TCPA (and in effect dissolved the company to try and avoid facing a large and imminent legal liability), and formed a new company to continue his unlawful robocalling operation out from under the threat of the lawsuit. *See Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1314 (7th Cir. 1987) ("Particularly damning is the letter

11

quoted above, which basically stated that the defendants were dissolving Centor to avoid their obligations to the Union"). Rather than defend Shanahan lawsuit, Renny dissolved National Auto Protection Corp in September 2019. 5AC ¶¶ 69–70. He did the same thing with Assured Auto Protection in March 2020. 5AC ¶¶ 77–79. Next, it was Zander Collins in May of 2020. Now it is AAP, which was incorporated immediately after NCC was "suspended" from selling on behalf of Sunpath in response to this lawsuit. 5AC ¶ 91. Based on the timing, Defendants devised a plan to wind down NCC and continue business as usual as AAP. 5AC ¶¶ 95–96. It further appears that Defendants may be attempting to move to a new name "AAS." 5AC ¶ 98. Plaintiffs named AAS as a defendant to put a stop to Defendants' evasive conduct.

The 5AC contains considerable allegations that NAPC, Assured, Affordable, ZCS, NCC, AAP and AAS, are mere continuances of the same entity engaged in robocalling, including common ownership, assets, offices, accounts, websites, and employees. 5AC ¶¶ 94–100, 102–104. Therefore, the 5AC contains the necessary allegations of a continuance of the old entity and a scheme to defraud those with claims against them, including Plaintiff and Class members.

**F.     The 5AC Is Not A Shotgun Pleading; AAP Has Ample Notice of Plaintiffs' Claims**

AAP's argument that it lacks notice regarding Plaintiffs' claims is more in the vein of a motion for a more definite statement than a motion to dismiss. *See* Fed. R. Civ P. 12(e); *In re NJ Affordable Homes Corp.*, 05-60442 (DHS), 2013 WL 6048836, at *53 (Bankr. D.N.J. Nov. 8, 2013) ("motions for a more definite statement are also an appropriate vehicle to pare down 'shotgun' pleadings"). AAP argues that it is entitled to more detail about its alleged conduct that forms the basis of Plaintiffs' claims, feigning ignorance as to "which Defendant did what allegedly wrongful conduct." *See* Def.'s Br. p. 24. AAP is incorrect.

12

Notably, Defendants Sunpath, Northcoast, and Amtrust have filed answers to the 5AC. *See*

D.I. 174, 180. And allegations similar to those contained in the 5AC sufficed in *Bower v. National*

*Admin. Serv. Co., LLC*, No. 4:21-CV-00998, 2022 WL 821166, at *3 (M.D. Pa. Mar. 17, 2022).

In *Bower*, the court rejected AAP's prior attempt at this argument reasoning that:

> The Companies' attempt to hide behind its corporate structure are similarly
> unavailing. Far from a threadbare recital of the elements of the cause of
> action, Mr. Bower's complaint details when he joined the state and federal
> do-not-call lists. It lists the numbers that he got calls from, the dates he
> received those calls, and describes the calls' contents. And finally, it
> identifies Pelican Holdings Group as the seller of the policy, National
> Administrative Service as the administrator, and further alleges, given their
> business arrangement, that they should be held jointly and severally liable
> for violations.

> *Id*.

Here, the 5AC contains allegations specifying at least three phone calls placed by AAP to

Callier that constituted unwanted robocalls that led to him buying a VSC with AAP, Sunpath, and

Mepco. 5AC ¶¶ 206–207. Plaintiffs' theory regarding AAP's direct liability (*see, e.g.*, ¶ 139), alter

ego liability (*see, e.g.*, ¶¶ 63–132, 141–145), and co-conspirator liability (*see, e.g.*, ¶¶ 170–184)

are clearly articulated and the facts upon which the theories rely are set forth in detail.

Plaintiffs' adoption of certain allegations into each Count is not improper and does not

detract from these specific factual allegations. In *M.B. v. Schuylkill County*, 375 F. Supp. 3d 574,

587 (E.D. Pa. 2019), the district court relied upon the "significant detail" and "specific allegations

against the respective defendants" contained in the complaint's "Factual Background" section to

reject the defendants' arguments that the pleading was defective for adopting preceding allegations

into the counts and failing to identify the role of each particular defendant in each particular cause

of action. And, in *In re DVI, Inc.*, 326 B.R. 301, 309 (D. Del. Bankr. 2005), the court declined to

dismiss a complaint that incorporated into its fraudulent conveyance count allegations pertaining

to irrelevant funds transfers, concluding that "Rule 8's liberal pleading principles do not permit dismissal for failure in a complaint to cite a statute or to cite the correct one. . . . Factual allegations alone are what matters.'" *Id*. at 309 (quoting *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004)).

AAP cannot rely on its own purposeful actions to conceal its identity and to establish a byzantine web of relationships with the other Defendants to win a premature dismissal of the lawsuit. *See In re NJ Affordable Homes Corp.*, 2013 WL 6048836, at *53 (allegations in a complaint detailing numerous parties' involvement in a fraudulent Ponzi scheme "render[ed] the notion of limiting paragraphs [in the complaint] to a single, non-compound sentence, virtually impossible and certainly impracticable."). Here, AAP does not identify itself or on whose behalf it is making the robocalls, falsely implies that is authorized by the car dealership from whom the vehicle was bought, identifies itself only as "AAP" on the VSC itself, employs the tactic of local phone number spoofing to thwart caller ID, and abuses business organization laws to avoid liability for its unlawful robocalling activities. Defendants cannot be heard to complain about any ambiguity that they are responsible for creating.

This case is in no way similar to *Hirsch v. Ensurety Ventures, LLC*, 805 F. App'x 987 (11th Cir. 2020). In *Hirsch*, the complaint failed to explain which defendant was responsible for placing the calls. *Id*. at 991. Here, the 5AC explains in detail that AAP is a VSC seller that placed outbound telemarketing calls for itself and on behalf of the other Defendants, was responsible for calls to Callier (5AC ¶¶ 63, 139), and specifies which theories and facts support Plaintiffs' claims that AAP is liable for prior and subsequent calls as the alter ego of other identified companies. 5AC ¶¶ 64, 141–145. The 5AC contains substantial specific allegations about the business structures of the Defendants, their interrelationships, and their roles in the alleged TCPA conspiracy.

Lastly, when a complaint is a shotgun pleading, it is right to grant leave to amend. AAP opposes leave to amend in this case because this is Plaintiffs' fifth amended complaint. But no prior version of the complaint has been dismissed. Rather, the amendments were made to add parties and claims because Defendants' unlawful conduct continues unabated. The Court has not held that any prior pleading contained defects. *See* Recommendation and Adoption of Opinion Denying Motion to Dismiss Third Amended Complaint D.I. 67–68. It would be unjust to deny leave to amend in the event the Court finds that the 5AC falls short of Rule 8 (which it does not). The better course, as provided by Rule 12(e), is to require Plaintiffs to provide a more definite statement, especially since other Defendants have already filed their answer and affirmative defenses to the 5AC. In any event, the 5AC contains the requisite factual content and plausibility. AAP's arguments to the contrary should be rejected.

### G.      The 5AC Is Not Too Long

AAP complains that the 5AC is not a short and plain statement of the facts supporting Plaintiffs' claims. AAP cites to no case that was decided in the last ten years, some of which were decided before *Twombly*. And AAP fails to identify anything other than its length that would "fail to state a claim upon which relief can be granted," the ostensible basis for AAP's Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The 5AC was amended in response to assertions from certain Defendants that the 4AC did not adequately describe their actions, and that Plaintiffs' claims were factually unsupported and meritless. Certain parties who previously stridently objected to their inclusion as a defendant in the 4AC have since answered the 5AC, indicating some utility in the most recent amendment. *See* D.I. 180. The 5AC also included exhibits to respond to or obviate anticipated objections from Defendants with documentary evidence that supported Plaintiffs' factual allegations.

15

The basis for liability against some Defendants requires explanation and background about the VSC industry, the history of Renny's unlawful conduct to establish knowledge and ratification, and descriptions of contracts and relationships between the defendants to establish plausibility to the claims of vicarious liability. The 5AC explains each of these aspects of the case succinctly, clearly, and as concise as prudence allows. Notably, an analogous case brought by the Attorney General of Ohio, *Ohio v. Jones*, No. 2:22-cv-2700 (S.D. Ohio July 7, 2022)), against numerous VSC robocallers had 200 paragraphs of allegations that spanned 52 pages. *See* ECF No. 1. Here, there are three named plaintiffs, six named defendants, numerous class definitions, and federal and state law claims. Given all of this, while Plaintiffs believe that there is more than enough factual detail to survive a motion to dismiss, the 5AC contains a short and plain statement of the facts showing that Plaintiffs are entitled to relief against each Defendant.

## H.    Plaintiffs Have Standing

AAP suggests that Plaintiffs lack standing because, as AAP sees it, "Plaintiffs are frequent TCPA litigants who doubtfully suffered an injury in fact." Def.'s Br. p. 11 n.1.[4] AAP has it backwards. "[P]laintiffs [are] vigorously enforcing their rights under the TCPA *because of* the aggravation, nuisance, and invasion of privacy they experience with each unsolicited call." *Abante Rooter and Plumbing, Inc. v. Creditors Relief, LLC*, Civ. No. 20-3272 (SDW) (LDW), 2020 WL 9397554, at *3 (D.N.J. Dec. 10, 2020) (emphasis in original). As one court put it:

> It may be that [plaintiff] was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

---

[4] Although normally an argument like this in a footnote is waived, Plaintiffs respond because a court may dismiss for lack of subject matter jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3).

*Cunningham v. Rapid Response*, 251 F. Supp. 3d at 1196.

Plaintiffs' history of enforcing their privacy rights under the TCPA is as probative of their standing to sue in this lawsuit as a copyright owner's prosecuting copyright infringers. No one would take from Prince's or Disney's vigorous defense of their intellectual property rights that they invite infringement, or that they lack an element of their claim because those claims have succeeded in the past. The same goes here. If AAP has evidence or an argument that Plaintiffs gave their prior express consent to be called, that is a question for another day, and a question that is not raised in AAP's Motion in any event. Plaintiffs' history of enforcement of their privacy rights simply has no bearing in this case.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs request that AAP's Motion be denied, or alternatively, for leave to amend the 5AC, and for such other relief as the Court deems appropriate.

KURT MORALES II, BRANDON CALLIER, and LUCAS HORTON, individually, and on behalf of all others similarly situated,

By:/s/ Ian Connor Bifferato
    Ian Connor Bifferato (#3273)
    THE BIFFERATO FIRM, P.A.
    1007 N. Orange Street, 4th Floor
    Wilmington, DE 19801
    Telephone: (302) 225-7600
    Facsimile: (302) 298-0688
    Email: cbifferato@tbf.legal

    Thomas A. Zimmerman, Jr. (IL #6231944)*
    ZIMMERMAN LAW OFFICES, P.C.
    77 W. Washington Street, Suite 1220
    Chicago, Illinois 60602
    Telephone: (312) 440-0020

Facsimile: (312) 440-4180
Email: tom@attorneyzim.com
www.attorneyzim.com

Mark L. Javitch (California SBN 323729)*
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
Email: mark@javitchlawoffice.com

*Attorneys for Plaintiffs and the Putative Classes*
*Admitted Pro Hac Vice

18