

April 4, 2024

**VIA E-FILING**
The Honorable Sherry R. Fallon
United States District Court
District of Delaware
844 North King Street
Wilmington, DE 19801

    RE:    *Morales, et al v. Sunpath Ltd., et. al.*, C.A. No. 20-cv-1376-JLH-SRF

Dear Judge Fallon,

Plaintiffs Kurt Morales II, Brandon Callier, and Lucas Horton ("Plaintiffs") respectfully submit this letter, with a proposed form of order attached as Ex. 1, in advance of the motion hearing scheduled for April 9, 2024 at 2:00 p.m, concerning Plaintiffs' discovery issued to defaulted Defendant Sunpath Ltd. ("Sunpath") and a subpoena to Sunpath's e-discovery vendor, Everest Discovery, LLC ("Everest").

## FACTUAL BACKGROUND

Sunpath defaulted to avoid producing relevant documents. After extensive negotiations on ESI parameters throughout early 2023, on July 27, 2023, counsel for Sunpath stated that it agreed to produce non-privileged responsive documents that hit on search terms included in Plaintiffs' June 8 email. Exhibit 2, p. 5. Sunpath then delayed, refused to allow its own attorneys to access the discovery, and then fired them. They withdrew representation. Sunpath failed to obtain substitute counsel, violated Court orders, and the Clerk entered a default against Sunpath. D.I. 232.

Plaintiffs—faced with no other recourse—served a subpoena for documents to Everest, whom Sunpath's lawyers had identified as the third party in possession of the promised documents. *See* D.I. 220, also attached as Exhibit 3. Plaintiffs filed a notice of service of subpoena on December 15, 2023, with a due date of January 15, 2024. No Defendant made an objection or moved for a protective order or to quash under Fed. R. Civ. P. 45(d)(3). In fact, at the discovery conference on December 21, Sunpath's counsel represented to the Court in support of its motion to withdraw that it had told Plaintiffs that Everest had the requested documents and that it did not object to the subpoena to Everest. Hearing Tr. of Dec. 21, 2023, 4:15–5:13, Exhibit 4. Thus, Sunpath, through counsel, not only knowingly relinquished any objections to the subpoena on December 21, they facilitated the subpoena by identifying Everest as a party in possession of the requested materials.

Initially, counsel for Everest, Gabriel Montemuro, indicated that Everest would be complying with the subpoena, assuming Sunpath did not file a motion to quash, stating:

> Thank you for your phone call on 1/2/24, during which you offered to confirm that an Everest production containing the raw data provided to it by Sunpath for discovery purposes would fully comply with the scope of the

> Subpoena. In other words, I am seeking confirmation that Plaintiffs are not expecting Everest to sift through its own email database and isolate and produce all messages associated with the Sunpath project. Assuming that is the case – and assuming Sunpath does not file a Motion to Quash – I believe Everest will be in a position to make its production on a timely basis on the 1/15/24 deadline.

*See* Exhibit 5. On January 10, Mr. Montemuro stated that "Everest plans to proceed with making a production on 1/15 consistent with my message below with the understanding that Plaintiffs will accept such production as satisfying the scope of the Subpoena." *Id*.

As the talks with Everest's lawyers progressed, however, Everest began to walk back its agreement to produce. On January 11, Mr. Montemuro began expressing "concerns" regarding the production of Sunpath's "raw data." *Id*. On January 15, 2024, with the appearance of new counsel for Everest, Jennifer Cree, Everest's new position became: "Everest requires a Court order to produce any data or documents in response to the subpoena." Exhibit 6. At Plaintiffs' inquiry, Everest conceded that "Sunpath had not objected to the subpoena." This included notification to Sunpath's counsel of record and to Sunpath's in-house counsel, Paul Sporn. *See* Exhibit 7.

Plaintiffs and Everest eventually agreed to resolve the subpoena dispute by filing a motion for a discovery teleconference in this Court. *See* Exhibit 7. In response to Plaintiffs' request, Everest provided four objections in writing for purposes of allowing Plaintiffs to bring such a motion. They are: (1) certain unidentified files might be subject to a claim of privilege by Sunpath; (2) unspecified contract provisions prohibit Everest from disclosing some or all of the files; (3) certain unidentified files might contain personally identifiable information ("PII"); and (4) producing the requested files would be unduly burdensome. *See* Exhibit 7. Everest has not reviewed any of the contents of the responsive material. At no point did Everest assert any privilege, protection, or privacy on its own account, or claim that a document in fact *was* subject to such a claim by anyone. On February 15, 2024, Plaintiffs circulated a draft of the motion for a discovery teleconference to Everest, incorporating counsel's comments and suggestions, including removing the reference to a "joint motion," and stated that they intended to file it the next day. *See* Exhibit 8.

## ARGUMENT

1. Sunpath should be ordered to produce documents responsive to Plaintiffs' discovery requests, many of which Sunpath's former counsel agreed to produce prior to withdrawing but never did. *See* Sunpath emails, Exhibit 2 p. 5; Sunpath's Responses to Discovery, RFPs 11, 12–27, Exhibit 10. Sunpath, through its counsel, agreed to produce discovery. Sunpath (or another Defendant or non-party) apparently became unhappy with that agreement and embarked on an effort to make sure Plaintiffs never received the documents, even at the cost of having default entered against Sunpath. Sunpath defaulted (just as Gus Renny's entities have done in the past when facing TCPA liability) *in order to frustrate* Plaintiffs' pursuit of justice and to protect the other Defendants.

The discovery from Sunpath is relevant and proportional even though Sunpath has defaulted. Sunpath dealt extensively with Renny and other VSC sellers, was Amtrust's authorized agent for marketing purposes, and is going to possess the vast majority of relevant documents Plaintiffs will

2

use to prove their case. By defaulting, Sunpath hopes to avoid having to produce those documents. Plaintiffs request that Sunpath be compelled to produce the documents identified in Plaintiffs' Exhibit 3 June 8 email and the document responsive to Requests No. 11, 21–27. *See* Exhibits 2, 10.

2. Sunpath's e-discovery vendor, Everest, who holds the documents promised to Plaintiffs, should be ordered to comply with the subpoena. *See* Exhibit 3.

Everest lacks standing to assert Sunpath's privileges. An objecting party "lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena." *Doe v. Town of Greenwich*, No. 3:18-cv-01322 (KAD), 2020 WL 2374990, at *3 (D. Conn. Apr. 21, 2020). The attorney-client privilege "can be asserted only by the client (or one authorized to do so on the client's behalf)." *United States v. Martoma*, 962 F. Supp. 2d 602, 604 (S.D.N.Y. 2013). Rule 45 provides parties to the litigation a means to move to quash or for a protective order where personal rights of privilege or protection from disclosure are implicated. Sunpath had ample time and opportunity to make the claim, and knowingly chose not to. In fact, Sunpath's general counsel, Paul Sporn, instructed another of its vendors, Stone Eagle, not to comply with Plaintiffs' subpoena as of December 14, 2023. *See* Exhibit 9. Sunpath's representatives ignored notices from Plaintiffs and Everest. In addition, a party withholding information based on a privilege must comply with Fed. R. Civ. P. 26(b)(5)(A) and set forth sufficient details to allow Plaintiffs to assess the merits of a privilege claim. *See Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995).

Everest's objection that its contract with Sunpath prevents it from complying with the subpoena should be overruled.[1] As a general matter, any contractual obligation of further performance would be excused by Sunpath's material breach of the contract when it refused to pay Everest for overdue bills. *See In re Weinstein Co. Holdings LLC*, 997 F.3d 497, 506 (3d Cir. 2021) (explaining that if a breach of contract is material, performance by the other party is excused). Furthermore, Everest has not identified any provision of the contract that prevents it from complying with a lawfully issued subpoena that no party has challenged. Everest claims that "all work performed by Everest and any communications it receives from Client or the Attorney Contacts, or at their direction, are to be treated as confidential." That provision is inapplicable because the subpoena is not requesting Everest's work or communications it has received from Sunpath. The other provision Everest attempts to rely on pertains only to "personal information." As explained below, Everest's privacy concerns are speculative, unsupported, and would not provide a basis for withholding the documents from Plaintiffs. A stipulated protective order governs production of confidential information here. D.I. 86. Sunpath could not refuse to produce documents to Plaintiffs on this basis. *See Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 170 (D. Del. 2010). It stands to reason that Everest could not either. Sunpath provided the requested material to Everest for the express purpose of producing the documents to Plaintiffs *in this lawsuit*. Other provisions of the

---

[1] Everest produced its contract with Sunpath late April 2 and made a blanket designation of the document as confidential. For that reason, Plaintiffs will rely on Everest to file a redacted version of the contract in its response letter. Plaintiffs have permission from Everest's counsel to include certain language in Plaintiffs' publicly filed letter pursuant to a meet and confer on April 3.

contract support Plaintiffs. In fact, the *only* reference to a subpoena in the contract states that "In the event that an Everest representative is requested in pursuant to subpoena [sic], court order, or other legal process to produce any documents or provide testimony related to the performance of the services outlined in this Agreement, [Sunpath] shall pay Everest . . . ." This means Everest should comply with the subpoena and seek reimbursement from Sunpath. If the parties had agreed that Everest would not respond to subpoenas at all, then this provision would be pointless.

The third objection regarding third-party privacy concerns is speculative and can be addressed by the stipulated protective order that is already in place, or another one to ensure the presumptive confidential nature of any documents containing personal information of uninterested third parties. D.I. 86. Despite assertions of privacy concerns, however, Everest has no basis to speculate that third parties' privacy interests are at stake, their identities, or the nature of the supposed private information. It cannot be very private if Sunpath has it. Sunpath is a VSC marketer and claims administrator. The nature of its business does not include very sensitive information. And Plaintiffs have already obtained VSC customer data from third parties and some Defendants. Sunpath failed to move for a protective order or move to quash on this basis.

The only non-speculative objection Everest has standing to assert is that pertaining to burden. Everest asserts that Plaintiffs can more easily obtain the documents from another party, but Plaintiffs have already exhausted this avenue. Sunpath fired its attorneys and defaulted rather than produce the documents. Only Everest has Sunpath's emails and other ESI. Everest was hired to assist Sunpath to produce documents to Plaintiffs in this very litigation, so Everest cannot get very far by arguing that doing what it was hired to do is in any way burdensome. Further, its asserted burden cannot be squared with Mr. Montemuro's initial promises to provide the production by the due date, as well as Ms. Cree's representations that the requested data was migrated to a hard drive. Everest does not argue that turning over the hard drive would be burdensome. Rather, Everest references costs associated with migrating, hosting, and reviewing the data. However, none of this is warranted. Everest can comply with the subpoena by simply producing the hard drive. When taking into account the extensive efforts and the unnecessary costs Everest has voluntarily incurred in resisting a production no one else has objected to, Everest's burden objection fails.

E-discovery vendors should not ordinarily be discovery targets. But these extraordinary circumstances warrant the requested relief. Plaintiffs regret that they must seek the production from Everest, but it is the undesirable result occasioned by the parties' obfuscation, delay, and unreasonable conduct. The parties had every opportunity to object. They did not. The alternative would require Plaintiffs to serve and enforce myriad subpoenas on individual Sunpath employees and officers, which would entail a wild goose chase with little chance of success and significant costs, piecemeal enforcement, and delay. Plaintiffs would not know about Everest were it not for Sunpath's withdrawing counsel. A balance can be struck that protects e-discovery vendors from being targets of subpoenas going forward while doing justice to Plaintiffs and potential Class members in this case.

                                                        Respectfully submitted,

                                                        /s/ Michael J. Farnan

                                                        Michael J. Farnan

cc: Counsel of Record (Via E-Filing)
Counsel for Everest Discovery, LLC (Via E-Filing)
Sunpath Ltd. (Via Hand Delivery at Registered Agent)