## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KURT MORALES II, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1376-JLH-SRF |
| | ) | |
| SUNPATH LTD., *et al.*, | ) | **UNDER SEAL** |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION[1]

Presently before the court in this civil action for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, its regulations, 47 C.F.R. § 64.1200, *et seq.*, and Texas telephone marketing statutes is the motion for class certification pursuant to Federal Rule of Civil Procedure 23, filed by plaintiffs Kurt Morales II, Brandon Callier, and Lucas Horton, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"). (D.I. 326)[2] For the following reasons, I recommend that the court DENY Plaintiffs' motion for class certification.

---

[1] Pursuant to 28 U.S.C. § 636, the court issues its decision as a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(A) ("[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss or to permit maintenance of a class action"); *see also* 28 U.S.C. § 636(b)(1)(B) ("a judge may also designate a magistrate judge ... to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)").

[2] The briefing and filings associated with the pending motion for class certification are found at D.I. 327, D.I. 328, D.I. 333, D.I. 349, D.I. 350, D.I. 351, D.I. 352, D.I. 353, D.I. 367, and D.I. 368.

## I.    BACKGROUND

On October 9, 2020, Plaintiffs brought this action against Sunpath Ltd. ("Sunpath"), Northcoast Warranty Services, Inc. ("Northcoast"), and Matrix Financial Services, LLC, alleging that they engaged in unlawful advertising and telemarketing of vehicle service contracts ("VSCs"). Plaintiffs filed their fifth amended class action complaint ("FAC") on July 14, 2023, naming as defendants Sunpath, Northcoast, Amtrust North America, Inc. ("Amtrust"), Sing for Service, LLC ("Mepco"), Pelican Investment Holdings LLC ("Pelican"), and Affordable Auto Shield, Inc. ("AAS;" collectively, "Defendants"). (D.I. 152) The FAC alleges that Defendants are associated with each other and Plaintiffs under the terms of several agreements.

Amtrust contracts with Sunpath to sell its VSCs under the terms of an Administration Agreement executed on April 15, 2013. The Administration Agreement authorizes Sunpath, as the administrator, to engage third-party VSC sellers ("Dealers") for purposes of marketing and selling VSCs on behalf of Amtrust. (D.I. 152 at ¶¶ 34-36; D.I. 328, Ex. 5) These relationships are governed by Call Center Marketing Agreements ("CCMAs"). (D.I. 328, Ex. 7) Sunpath is also party to an Administrator Agreement with Mepco, which processes payment plans for consumers who pay for their VSCs in installments pursuant to Payment Plan Agreements ("PPAs"). (*Id.*, Ex. 9) Mepco also enters into Dealer Agreements with each Dealer to ensure that each customer who purchases a VSC is given the option of paying in installments. (*Id.*, Ex. 8) The VSCs provide that Amtrust's subsidiary, Northcoast, is the party responsible to consumers for paying benefits under the VSCs. (D.I. 152 at ¶ 35; D.I. 328, Ex. 11) Each Defendant's role in the alleged TCPA violations is outlined in the chart below:



In accordance with the terms of the Administration Agreement, Sunpath executed CCMAs with the following Dealers:  Pelican, AAS, National Auto Protection Corp. ("NAPC"), Assured Auto Group, Inc. ("AAG"), and National Car Cure, LLC ("NCC"), Celtic Marketing LLC ("VAD") and ROI Network LLC ("Auto Defender").  Most of these Dealers (Pelican, AAS, NAPC, AAG, and NCC; collectively, the "Renny Entities") were founded by Gustav Renny. (D.I. 152 at ¶¶ 3, 41-42)

The Renny Entities have a history of being sued for TCPA violations.  (D.I. 152 at ¶¶ 63-100)  In the instant case, Morales, Callier, and Horton allege that they received unsolicited phone calls from the Renny Entities playing a prerecorded voice message to advertise the sale of VSCs. (D.I. 328, Exs. 19-21)  They each pressed "one" to connect with a sales agent and identify the caller and subsequently brought this case for violations of the TCPA.  (*Id.*)  The FAC alleges that Renny formed the Renny Entities as shell companies, dissolving one Dealer entity to avoid liability for using robocalling practices and forming another one in its stead to assume the same operations.  (D.I. 152 at ¶¶ 63-100)  Despite receiving complaints about the robocalling practices of the Renny Entities, the FAC alleges that Sunpath, Amtrust, Northcoast, and Mepco continued to authorize new Renny Entities to sell VSCs and offer installment payment plans.  (*Id.* at ¶¶ 104-07, 114)

Plaintiffs move to certify three classes and multiple subclasses within those classes.  (D.I. 328, Ex. 3)  The proposed classes range in size from 3,223 members to 57,982 members, and the proposed subclasses range from 57 members 28,478 members.  (*Id.*)  Below is a chart setting for the definitions and sizes of the proposed classes and subclasses:

| CLASS | DEFINITION | SUBCLASSES |
|---|---|---|
| *Renny Entities Class* (57,982 members) | All persons who were sold over the phone a VSC contained in the StoneEagle File, for whom the Dealer is Pelican, AAS, Affordable Car Cure, AAG, NAPC, or NCC. | *Renny Entities Texas Subclass* (5,888 members): All persons in Texas who qualify for membership in the Renny Entities Class. |
| | | *Renny-Mepco Class* (28,478 members): All persons who qualify for membership in the Renny Entities Class for whom the lienholder is Mepco or Paid Off—Mepco. |
| | | *Renny-Mepco Texas Subclass* (361 members): All persons in Texas who qualify for membership in the Renny-Mepco Class. |
| *VAD Class* (3,223 members) | All persons who were sold over the phone a VSC contained in the StoneEagle File, for whom the dealer is VAD. | *VAD Texas Subclass* (2,709 members): All persons in Texas who qualify for membership in the VAD Class. |
| | | *VAD-Mepco Class* (481 members): All persons who qualify for membership in the VAD Class for whom the lienholder is Mepco or Paid Off—Mepco. |
| | | *VAD-Mepco Texas Subclass* (57 members): All persons in Texas who qualify for membership in the VAD-Mepco Class. |
| *Texas Registration Class* (7,432 members) | All persons in Texas who were sold over the phone a VSC contained in the StoneEagle File, for whom the dealer is Pelican, AAS, Affordable Car Cure, AAG, Auto Defender, NAPC, NCC, or VAD. | *Texas Registration Mepco Subclass* (3,796 members): All persons who qualify for membership in the Texas Registration Class for whom the lienholder is Mepco or Paid Off—Mepco. |

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) sets forth four threshold requirements for class

certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

Fed. R. Civ. P. 23(a).  "The parties seeking class certification bear the burden of establishing by

a preponderance of the evidence that the requirements of Rule 23(a) have been met." *In re Cmty.*

*Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 391 (3d Cir. 2015).  Once the

requirements of Rule 23(a) are satisfied, the court considers whether the class meets the

requirements of one of three class action categories in Rule 23(b).  *See In re Nat'l Football*

*League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016).

Plaintiffs move to certify classes under Rules 23(b)(2) and (b)(3) in the instant case.

(*See, e.g.*, D.I. 367 at 20)  In a class action brought under Rule 23(b)(2), the plaintiffs must show

that the defendant "has acted or refused to act on grounds that apply generally to the class, so

that final injunctive relief . . . is appropriate respecting the class as a whole." *Sullivan v. DB*

*Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011).  Under Rule 23(b)(3), courts consider

whether "(1) common questions predominate over any questions affecting only individual class

members (predominance) and (2) class resolution is superior to other available methods to decide

the controversy (superiority)." *In re Nat'l Football League*, 821 F.3d at 426.  In the Third

Circuit, the class members must also be "currently and readily ascertainable based on objective

criteria" and a court should not need to resort to "mini trials" to identify whether an individual is

included in the class. *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 129, 138 (3d Cir. 2023)

(quoting *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020)).

The district court must conduct a "rigorous analysis" to determine whether the

requirements of Rule 23 have been met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161

(1982). Because the Rule 23 requirements "are not mere pleading rules," the court may make a "preliminary inquiry into the merits of a suit[.]" *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316-17 (3d Cir. 2008) (internal citation and quotation marks omitted). "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Id.* at 316.

## III.    DISCUSSION

Because Plaintiffs bear the burden of proof by a preponderance of the evidence on a motion for class certification, the court addresses each of the class action requirements under Rule 23(a) and Rule 23(b)(3). However, the focus of the court's analysis is on the class action requirements challenged by Defendants, as set forth in the chart below:

|  | Rule 23(a) | Rule 23(b)(3) | Other |
|---|---|---|---|
| **Mepco** | Adequacy | Predominance | Ascertainability |
| **Amtrust / Northcoast** | Typicality Adequacy | Predominance | Ascertainability |
| **AAS** | Typicality Adequacy |  | Rule 23(b)(2) Standing[3] Vicarious liability |

---

[3] AAS challenges the named Plaintiffs' standing to litigate this case as a class action, arguing that standing is a threshold issue to be established before proceeding to the class certification requirements. (D.I. 352 at 7); *see Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 366-67 (3d Cir. 2015) (addressing the standing of class representatives "[b]efore even getting to the point of class certification"). However, AAS's standing arguments are unique to AAS and/or do not apply to Mepco, Amtrust, or Northcoast. (D.I. 352 at 8-9) (arguing that Plaintiffs fail to identify a customer who was called by AAS and/or do not name other Renny Entities as defendants). AAS raised the same substantive argument in support of its motion to dismiss, although not in the context of a challenge to standing. (D.I. 178 at 6) ("Plaintiffs fail to allege that AAS made any of the Subject Calls in question[.]"). AAS's motion to dismiss was subsequently denied. (D.I. 286) In this Report and Recommendation, the court first addresses arguments common to all Defendants opposing the motion for class certification. Having recommended that the court deny class certification, AAS's arguments regarding class standing are moot.

### A. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no magic number of class members needed for a suit to proceed as a class action." *In re Nat'l Football League*, 821 F.3d at 426. Generally, numerosity is satisfied if there are more than 40 class members. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (citing *Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir. 2001)). The numerosity requirement is satisfied in the instant case because the proposed classes range from 57 to 57,982 members. (D.I. 328, Ex. 3)

### B. Commonality

The parties do not separately address the commonality requirement under Rule 23(a)(2). To satisfy this requirement, class members' "claims must depend upon a common contention . . . that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement overlaps significantly with the predominance inquiry under Rule 23(b)(3), which is discussed at § III.F, *infra*. *See Jaroslawicz v. M&T Bank Corp.*, C.A. No. 15-897-EJW, 2024 WL 474846, at *12-13 (D. Del. Feb. 7, 2024) ("The predominance requirement of Rule 23(b)(3) builds on the commonality question by requiring that questions of law or fact common to class members predominate over any questions affecting only individual members.").

### C. Typicality

Rule 23(a)(3) provides that class certification is appropriate only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "does not require that all class members share identical claims," *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004), but the proposed representative(s) must be "sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class," *In re Schering Plough Corp. ERISA Litig*, 589 F.3d 585, 597 (3d Cir. 2009). The typicality requirement "guards against class representatives who have unique interests that might motivate them to litigate against or settle with the defendants in a way that prejudices the absentees." *Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 207 (3d Cir. 2022) (internal citation and quotation marks omitted).

Some overlap exists between the typicality and adequacy requirements under Rule 23(a). *See Beck v. Maximus, Inc.*, 457 F.3d 291, 296, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."). The parties' briefing reflects this overlap, as both sides combined their analyses of the class requirements under Rules 23(a)(3) and (a)(4). (D.I. 349 at 17-19; D.I. 350 at 14-20; D.I. 352 at 16-19; D.I. 367 at 6-12) Specifically, Defendants raise the following challenges to each representative Plaintiff under the typicality and adequacy provisions of Rule 23:

| | Morales | Callier | Horton |
|---|---|---|---|
| *Deceptive conduct in response to robocall* | X | X | X |
| *Insufficient knowledge about the case[4]* | X | X | X |
| *Serial TCPA plaintiff (claim & issue preclusion)* | | X | X |
| *Waiver of class action rights* | | X | X |
| *Consent to be called* | | X | |
| *Callier's credibility* | | X | |

---

[4] The sufficiency of a class representative's knowledge of the case is generally considered in terms of the adequacy of the representation and is discussed at § III.D, *infra*. *See, e.g.*, *In re Nat'l Football League*, 821 F.3d at 430 (" '[A] minimal degree of knowledge' about the litigation is adequate.").

(*Id.*)

Morales and Horton satisfy the typicality requirement because they both received multiple prerecorded voice messages seeking to sell VSCs, even though each of the representative Plaintiffs was listed on the National Do Not Call List at the time the prerecorded calls were made. (D.I. 152 at ¶¶ 187-216) The claims of all other class members similarly arise from their receipt of unsolicited robocalls to sell VSCs. (*Id.* at ¶¶ 219-26, 230) Consequently, the claims of Morales and Horton are typical of those they represent in satisfaction of Rule 23(a)(3). *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001) ("[T]ypicality is established regardless of factual differences" if "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant[.]").

Defendants' arguments against a finding of typicality are unpersuasive. First, Defendants contend that the claims of Morales, Callier, and Horton are not typical of other class member claims because each representative Plaintiff feigned interest in buying a VSC to speak with a telemarketing agent. (D.I. 349 at 17-19; D.I. 350 at 14-20; D.I. 352 at 16-19) The declarations submitted by Morales, Callier, and Horton confirm that they responded to prerecorded calls by pressing "one" to connect with a sales agent for purposes of identifying the caller, even though they had no interest in purchasing a VSC. (D.I. 328, Ex. 19 at ¶¶ 4-5; Ex. 20 at ¶¶ 4-5; Ex. 21 at ¶¶ 4-5) In support of their argument that this conduct renders the representative Plaintiffs atypical, Amtrust and Northcoast cite case authority holding that the claim of a representative plaintiff who poses as a customer "is inherently different tha[n] those of the putative class members who presumably did not use similarly deceitful methods" in the context of a TCPA action. (D.I. 350 at 14-17); *Johansen v. Bluegreen Vacations Unlimited, Inc.*, 2021 WL 4973593, at *4 (S.D. Fla. Sept. 30, 2021).

The fact that Morales, Callier, and Horton feigned interest in buying a VSC does not render their claims atypical of the claims of other class members. "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League*, 821 F.3d at 428 (internal citations and quotation marks omitted). Here, the claims of the representative Plaintiffs and putative class members are based on their receipt of robocalls in violation of the TCPA. The fact that some of those robocalls were made to "someone prepared to feign interest in their product to remove the mask of anonymity behind disembodied robocalls, has no bearing on whether he, and other members of the putative class, received illegal calls for which Defendants are liable." *Spurlark v. Dimension Serv. Corp.*, 2022 WL 2528098, at *7 (S.D. Ohio July 7, 2022).

At least one case within the Third Circuit has acknowledged the practicality of feigning interest in a telemarketing solicitation because "[a] plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation." *Shelton v. Nat'l Gas & Elec., LLC*, 2019 WL 1506378, at *5 (E.D. Pa. Apr. 5, 2019) (denying motion to dismiss for lack of standing). The *Shelton* court distinguished this technique from more deceptive practices, such as "acquir[ing] phones to increase [the] chances of receiving calls," which are not alleged in the instant case. *Id.* Although *Shelton* did not arise in the context of a motion for class certification, its reasoning on this point is consistent with *Spurlark*, which rejected the notion that such "deceptive" behavior to identify the offending callers rendered the plaintiff's claims atypical of the class. *See Spurlark*, 2022 WL 2528098, at *7. The court finds the reasoning in these cases more persuasive than the Southern District of Florida's decision in *Johansen*, 2021 WL 4973593, at *4.

11

Next, Mepco argues that Horton and Callier do not satisfy the typicality or adequacy requirements because they waived their right to pursue a class action claim when they signed a PPA with Mepco containing a class waiver provision. (D.I. 349 at 17-18)  But this is the first time Mepco has raised this defense in nearly three years of litigation since Mepco was added as a defendant in the fourth amended complaint. (D.I. 93)  As Plaintiffs explain, Mepco moved to dismiss the pleading in this case on the merits and did not raise a class waiver defense in its answer. (D.I. 367 at 13; D.I. 106; 161; D.I. 293)  Mepco has also engaged in discovery, including taking depositions. (D.I. 130; D.I. 137; D.I. 307; D.I. 330)  Mepco's course of conduct demonstrates a preference for litigation and is at odds with its position on class certification that Horton and Callier waived their right to assert class claims. *See White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 340-41 (3d Cir. 2023) (denying motion to compel arbitration where the defendant pursued dismissal on the merits through litigation)

Defendants also cite Callier and Horton's history as TCPA plaintiffs to suggest that they have interests not shared by other class members and they may be subject to additional defenses. (D.I. 350 at 19-20)  But the fact that a class representative is a serial TCPA plaintiff is not enough, by itself, to render the class representative atypical or inadequate. *See Sapan v. Diamond Resorts Holdings, LLC*, 2023 WL 8229984, at *3 (C.D. Cal. Oct. 6, 2023) (explaining that representative plaintiffs are not inadequate because they are serial litigants, but rather "because of unique facts that [are] *related* to their serial litigant status.").  A class representative's TCPA litigation history adversely impacts the typicality and adequacy analyses only when it is accompanied by evidence showing the representative's intentional abuse of the class action device. *Id.*  There is no evidence that Callier or Horton pursued their prior TCPA cases for their own financial benefit at the expense of class members, manufactured TCPA

violations by seeking out phone calls, or otherwise abused the class action device in a manner that would subject them to unique defenses in this case. *Compare Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) (concluding that plaintiff who bought more than 35 cell phones to draw telemarketers did not have standing), *with Shelton*, 2019 WL 1506378, at \*4 (rejecting standing challenge in the absence of evidence the plaintiff only used his cell phone for the purpose of filing TCPA lawsuits).

Defendants suggest that Callier and Horton's TCPA litigation history may nonetheless expose them to defenses of claim and issue preclusion that could adversely impact other class members. (D.I. 349 at 19; D.I. 350 at 18-19) Specifically, Defendants refer to Horton's action against Sunpath in the Northern District of Texas and two consolidated actions brought by Callier in the Western District of Texas against Sunpath, Northcoast, NCC, and VAD.[5] (*Id.*; D.I. 349, Exs. J, K) But Horton's Texas action resulted in the entry of default judgment against Sunpath, as did Callier's claims against VAD. (D.I. 349, Ex. K; D.I. 351, Ex. 35); *see Horton v. Sunpath Ltd.*, C.A. No. 3:23-631-E-BN, D.I. 50 (N.D. Tex. Feb. 7, 2025) (order entering default judgment against Sunpath). In general, default judgments do not have a preclusive effect because "the underlying issues are not actually litigated." *See Dermavance Pharms., Inc. v. Medinter, Ltd.*, 2024 WL 1604005, at \*2 (E.D. Pa. Apr. 11, 2024) (citing *Wilson v. Reliance Ins. Co.*, 138 F. App'x 457, 459 (3d Cir. 2005)). Moreover, Callier's voluntary dismissal of Sunpath

---

[5] Mepco alleges that Callier filed TCPA claims against Mepco in the Western District of Texas that were dismissed with prejudice. (D.I. 349 at 19) The court is unable to verify this representation on the record before it. Mepco was not named as a defendant in the consolidated actions brought by Callier in the Western District of Texas. Mepco does not provide a case number associated with any other case brought against it in that district. The testimony Mepco cites in its briefing alludes to an order dated February 10, 2020 dismissing claims against "Marathon" with prejudice, and Callier is asked whether all claims in the complaint "against Marathon, SING for Service [Mepco], and other defendants" were dismissed with prejudice. (*Id.*, Ex. E at 224:11-24) The transcript excerpt cuts off after the question, and Callier's response to the question is not included in the record.

13

and Northcoast without prejudice in his Texas cases does not preclude him from pursuing claims against them in this action. (D.I. 368, Ex. 44) It is well-established that a dismissal without prejudice is not an adjudication on the merits and does not have preclusive effect. *See Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020).

However, the record shows that Callier dismissed his claims against NCC with prejudice in the Western District of Texas. (D.I. 349, Ex. J) This dismissal with prejudice operates as an adjudication on the merits and is likely to preclude future claims based on calls Callier received in December of 2019 and February of 2020. *See Papera*, 948 F.3d at 610 ("Only a prior dismissal with prejudice (whether voluntary or involuntary) precludes later relitigating the dismissed claims."). Although NCC is not a party to this action, Callier testified that NCC acted as the agent of every Defendant in the FAC, and those Defendants should therefore be vicariously liable for calls placed by NCC. (D.I. 349, Ex. E at 156:4-157:24) Thus, Callier is likely to face preclusion defenses not shared by other class members due to the theories of vicarious liability at issue in this case. *See Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 279 (3d Cir. 2016) (explaining that preclusion may apply based on a final judgment on the merits in a prior suit involving "the same parties or their privies"). Plaintiffs correctly allege that none of these preclusion arguments impacts Callier's receipt of calls from Pelican in October of 2021, but the fact remains that he is likely to face preclusion arguments based on the FAC's allegations about calls made in December of 2019 and February of 2020. (D.I. 152 at ¶¶ 197-207) Because claim and/or issue preclusion may be viable defenses to Callier's liability, Callier does not satisfy the typicality or adequacy requirements for being a class representative. *See Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 122 (E.D. Pa. 2018) ("Unique defenses are

relevant to typicality because of the danger that the representative will become preoccupied with such defenses, thereby disadvantaging the class.").

Defendants raise several other arguments challenging Callier's typicality and adequacy as a class representative, citing his criminal history, his failure to disclose the TCPA litigation in his bankruptcy proceeding, his consent to receive phone calls prior to the allegedly illegal calls, and his purchase of two VSCs in his ex-wife's name without her knowledge. (D.I. 349 at 18-19; D.I. 350 at 17-18) When viewed collectively in conjunction with potential preclusion defenses, it is apparent that Callier is likely to be preoccupied with defenses unique to him and inapplicable to other members of the class. *See Beck*, 457 F.3d at 296-97. Consequently, I recommend that the court DENY Plaintiffs' motion for class certification to the extent that it seeks to name Callier as a class representative. Because Callier is the only representative identified for the Renny-Mepco Class and the Renny-Mepco Texas Subclass, I recommend that the court DENY certification as to these classes. Plaintiffs otherwise satisfy the typicality requirement under Rule 23(a)(3).

### D. Adequacy of Representation

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry concerns both (1) the "experience and performance of class counsel;" and (2) the "interests and incentives of the representative plaintiffs." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (citation omitted). Although Plaintiffs bear the burden of establishing each of the Rule 23(a) requirements, "a simple demonstration of facts in the motion for class certification" is sufficient to demonstrate the adequacy of the representation. *Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 211-212 (3d Cir. 2022) (acknowledging the difficulty of producing "affirmative evidence of a lack of a conflict of interest").

Defendants do not challenge the experience or performance of class counsel, and the record before the court establishes that counsel is well-versed in class action litigation involving TCPA claims. (D.I. 328, Ex. 22; D.I. 351, Exs. 1, 3, 5, 7-8)  However, Defendants dispute whether the interests and incentives of the representative Plaintiffs align with those of the putative class.  Many of Defendants' arguments overlap with those raised in connection with the typicality requirement.  The court's analysis at § III.C, *supra*, applies equally here.

Defendants also contend that Morales, Callier, and Horton cannot adequately represent the interests of the class because they were unable to articulate how each Defendant was responsible for the offending phone calls when they testified during their depositions. (D.I. 350 at 16-17, 19-20)  But the Third Circuit has held that " '[a] minimal degree of knowledge' about the litigation is adequate." *In re Nat'l Football League*, 821 F.3d at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).  Morales and Horton meet this standard. (*See, e.g.*, D.I. 368, Ex. 40 at 36:14-19, 41:12-17, 104:9-105:21; Ex. 45 at 80:14-19, 127:17-128:4, 188:12-24)  Consequently, Morales and Horton are adequate representatives of their respective classes.

### E. Ascertainability

Having analyzed the Rule 23(a) criteria, and before turning to the requirements under Rule 23(b)(3), the court considers the threshold requirement of ascertainability. *See, e.g.*, *Lezark v. I.C. Sys., Inc.*, 2025 WL 1527029, at *2 (W.D. Pa. May 29, 2025) (describing ascertainability as "a threshold condition to Rule 23(b)(3) certification").  "The ascertainability inquiry is two–fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria;' and (2) there is a 'reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d

154, 163 (3d Cir. 2015) (quoting *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). The ascertainability requirement is not met when extensive and individualized fact-finding is necessary to identify class members. *Marcus v. BMW of N. Am.*, 687 F.3d 583, 593 (3d Cir. 2012).

Each of the proposed class and subclass definitions is confined to individuals identified in the StoneEagle File. (D.I. 328, Ex. 3)  Plaintiffs contend that membership in each class and subclass "is easily ascertained using the filter and sorting functions on the StoneEagle File," which "contains Class members' names, addresses, and phone numbers, VSC information, and the names of the relevant Defendants for each VSC." (D.I. 327 at 8; D.I. 328, Ex. 2A)  However, the StoneEagle File does not identify which potential class members were sold a VSC over the phone, which is another requirement to satisfy the class and subclass definitions.  The StoneEagle File lists individuals who purchased a VSC, but it does not indicate whether those individuals received a call or whether they purchased a VSC without receiving a call. (D.I. 328, Ex. 2A)  To overcome this hurdle, Plaintiffs submit nine declarations from potential class members verifying that they were sold a VSC over the phone. (D.I. 367 at 1-3; D.I. 328, Ex. 25)

The Third Circuit has held that a customer list in conjunction with affidavits from class members can be a reliable and administratively feasible way of determining class membership. *See City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017); *see also Hargrove v. Sleepy's LLC*, 974 F.3d 467, 479 (3d Cir. 2020).  Nonetheless, the Third Circuit has "cautioned against approving a method that would amount to no more than ascertaining by potential class members' say so[,]" especially "without further indicia of reliability." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (internal citations and quotation marks omitted).  On this record, Plaintiffs have not established that the declarations are

17

a reliable or administratively feasible means of determining whether individuals listed in the StoneEagle File satisfy the class criteria.

Plaintiffs submit a total of nine declarations as a means of demonstrating that the 97,125 potential class members listed in the StoneEagle File were sold a VSC over the phone.[6] (D.I. 328, Ex. 25) Four of the declarants (Ben Fabrikant, Catherine Shanahan, Nathen Day, and Regan Smith) are not listed in the StoneEagle File and therefore cannot qualify as class members. (*Id.*; D.I. 351 at ¶¶ 8, 18, 39, 48) Moreover, the Hurley Declaration establishes that four declarants (Fabrikant, Shanahan, Smith, and Daniel Canfield) received a final adjudication on their claims in other cases. (D.I. 351 at ¶¶ 9-13, 19-24, 28-33, 49-54; Exs. 2, 4, 6, 9) In sum, more than half of the declarants do not satisfy the objective criteria for class membership. Plaintiffs do not refute this evidence in their reply brief. (D.I. 367) On this record, Plaintiffs have not established that the declarations are a reliable means of determining whether individuals listed in the StoneEagle File satisfy the class criteria.[7]

---

[6] Mepco challenges whether these declarations were properly submitted under Rules 26(a) and (e) because they were disclosed for the first time in support of Plaintiffs' motion for class certification. (D.I. 349 at 15) For purposes of this analysis, the court assumes without deciding that the declarations are procedurally proper.

[7] Plaintiffs attribute their lack of evidence of phone calls to certain Defendants' alleged spoliation of call logs, and they advocate for an adverse inference regarding those call records. (D.I. 367 at 4-6) Although Plaintiffs cite case authority suggesting that "[t]he *jury* may make this inference as a discovery sanction[,]" (*id.* at 4; emphasis added), they provide no authority in support of their position that the court may make such an inference in the context of a class certification motion to excuse Plaintiffs of their evidentiary burden, *see Garcia v. Veneman*, 211 F.R.D. 15, 21 n.6 (D.D.C. 2002) ("It is not clear whether such an inference could be used to support a Rule 23(a) commonality finding—no precedent to that effect has been cited by plaintiffs, and we have found none—but the assertion of document destruction is unproven, and the question is thus premature."). Plaintiffs' emphasis on Defendants' purported culpability for the failure to preserve call records also ignores the fact that Plaintiffs were provided with "the vast majority of relevant documents Plaintiffs will use to prove their case" in the form of the Sunpath hard drive, yet they subsequently lost that discovery. (D.I. 265, Ex. 16 at 2; Ex. 17) The court is disinclined to draw adverse inferences in Plaintiffs' favor when it is possible that Plaintiffs once had the necessary evidence in their possession.

## F. Predominance of Common Issues under Rule 23(b)(3)

Plaintiffs have also failed to satisfy their burden on the predominance requirement under Rule 23(b)(3), which is "a standard 'far more demanding' than the commonality requirement of Rule 23(a)." *In re Hydrogen Peroxide*, 552 F.3d at 310–11 (citations omitted). Under Rule 23(b)(3), the court must consider whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). "[T]he focus of Rule 23(b)(3) is on the predominance of common *questions*," and predominance is analyzed "in the context of Plaintiffs' actual claims." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015) (internal quotation marks and citations omitted). In other words, the court must analyze whether common issues predominate over individual issues with respect to proving the elements of the asserted claims. *Drummond v. Progressive Specialty Ins. Co.*, --- F.4 th ----, 2025 WL 1860993, at *4 (3d Cir. 2025). Class certification is "unsuitable" when "proof of the essential elements of the cause of action requires individual treatment." *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)); *see also Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 156 (3d Cir. 2023) ("[P]redominance concerns arise when unnamed class members must submit individualized evidence to satisfy standing and recover damages.").

To bring a claim under either the TCPA or the Texas TCPA statute,[8] Plaintiffs must show that they received an artificial or prerecorded phone call without prior express consent. 47

---

[8] A violation under Section 302.101 of the Texas Business & Commerce Code occurs when "a seller" "make[s] a telephone solicitation . . . to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Comm. Code § 302.101. Correspondingly, Section 305.053 creates a private right of action for "a person who receives a communication that violates [the TCPA as codified at] 47 U.S.C. Section 227 [or] a regulation adopted under that provision . . . against the person who originates the communication[.]" Tex. Bus. & Comm. Code § 305.053(a). Texas case authority confirms that a plaintiff who pleads a cognizable claim under the TCPA also

U.S.C. § 227(b)(1)(B); Tex. Bus. & Comm. Code § 302.101. For the reasons stated at § III.E, *supra*, Plaintiffs have not identified a common means of establishing whether the individuals named in the StoneEagle File purchased their VSCs after receiving a phone call. Rather, an individualized inquiry would be needed to determine whether each class member received a call, whether the call was an artificial or prerecorded voice call, and whether the class member consented to receive calls, among other things. *See Drummond*, 2025 WL 1860993, at *7-8 (concluding that the predominance requirement was not met where proving breach and damages would require individualized evidence of whether each class member received less than their car's actual cash value). On this record, Plaintiffs have not met their burden as to the predominance requirement. Consequently, I recommend that the court DENY Plaintiffs' motion for class certification under Rule 23(b)(3).

### G. Injunctive or Declaratory Relief under Rule 23(b)(2)

Plaintiffs also seek to certify injunctive classes under Rule 23(b)(2). (D.I. 152 at ¶ 227; D.I. 326-1) Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2); *see Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011). The key to the inquiry is whether "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). A class cannot

---

plausibly pleads a claim under the state counterpart in the Texas Business & Commerce Code. *See Auguston v. Nat'l Admin. Serv. Co., LLC*, 2023 WL 1810397, at *7 (E.D. Tex. Jan. 11, 2023) (citing cases). Because both Section 227(b) and Section 302.101 require a showing that each proposed class member received a telephone solicitation, and because an individualized inquiry would be needed to determine whether each class member received a call, Plaintiffs fail to satisfy the predominance requirement under both the federal and Texas state statutes.

be certified under Rule 23(b)(2) "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* (emphasis in original).

I recommend that the court DENY Plaintiffs' motion for class certification under Rule 23(b)(2) because Plaintiffs "have not met their burden of demonstrating that certification of the Rule 23(b)(2) class is appropriate."[9] *In re Processed Egg Prods.*, 312 F.R.D. 124, 170 (E.D. Pa. 2015). The entirety of Plaintiffs' argument in support of their motion to certify a class under Rule 23(b)(2) is as follows: "Here, Plaintiffs are seeking injunctive relief requiring Defendants to cease the unlawful conduct on which the Class members' claims depend. Requiring Defendants to cease their unlawful activities will benefit every Class member by relieving them of the incessant robocalls." (D.I. 327 at 20) This argument does not enable the court to undertake a rigorous analysis of whether the proposed Rule 23(b)(2) class is appropriate. *See In re Thalomid & Revlimid Antitrust Litig.*, 2018 WL 6573118, at *25 (D.N.J. Oct. 30, 2018) (denying motion to certify Rule 23(b)(2) class where "Plaintiffs have devoted only a fraction of their analysis to discussing the legal requirements of Rule 23(b)(2)."). For example, Plaintiffs do not address case authority declining to certify a Rule 23(b)(2) class that is proposed alongside separate damages classes if the "primary intent" underlying the action is to recover damages. *Id.* at *24; *see also Jackson v. Locust Med., LLC*, 2024 WL 2701695, at *5 (M.D. Pa. May 24, 2024) (holding it was improper to certify a class under Rule 23(b)(2) where the complaint included a request for statutory damages under the TCPA). Nor do Plaintiffs address "the preclusive effect of an injunction-only class action on class members' ability to bring subsequent damages

---

[9] The Third Circuit has held that "ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief[.]" *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015). Consequently, the court's recommendation to deny class certification under Rule 23(b)(3) under the ascertainability inquiry does not preclude class certification under Rule 23(b)(2).

claims." *In re Thalomid*, 2018 WL 6573118, at *25 (quoting *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 578 (E.D. Tenn. 2014)). Because Plaintiffs have not met their burden on the certification of a Rule 23(b)(2) class, I recommend that the court DENY Plaintiffs' motion for class certification in its entirety.

## IV. CONCLUSION

For the foregoing reasons, I recommend that the court DENY Plaintiffs' motion for class certification. (D.I. 326)

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **July 18, 2024**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10)

pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 11, 2025

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE