# Exhibit 15

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF CALIFORNIA
2

                   No, 2:23-mc-111-KLN
3       -------------------------------x
        In the Matter of
4       KURT MORALES II, et al.,

5                          Plaintiffs,

6                   -against-

7       SUNPATH, LTD., et al.,
                          Defendants.
8       -------------------------------x

9


10


11            ZOOM DEPOSITION OF GUSTAV RENNY

12


13              Wednesday, May 10, 2023
              12:00 P.M. ET - 3:30 P.M. ET
14

15            ALL PARTIES APPEARING REMOTELY

16                       - - -

17


18


19


20


21


22
        Reported By:
23      Jack Finz
        Notary Public, State of Florida
24      West Palm Beach Office J9660716

25
```



1    A.  Ultimately, it's the customer.

2    Q.  Ultimately it is the customer.

3        So how does an entity that you operate or own

4  get paid?

5    A.  Sometimes it's advancing, sometimes it's

6  not at all.

7    Q.  And by advancing?

8    A.  Yes.

9    Q.  Advancing because it's a finance contract?

10   A.  Yes, sir.

11   Q.  So who finances the contract?

12   A.  It depends on which company I use.

13   Q.  What are some of the companies that you use

14  to finance the contracts?

15   A.  Mepco, Walco.

16   Q.  And Northcoast?

17   A.  I know who Northcoast is, but I don't know

18  how that happens after Mepco.  I don't know that

19  lineage.

20   Q.  You have transactions, sometimes you have

21  transactions without Mepco, but you would need Walco?

22  So either you would need Mepco or Walco?

23   A.  No.

24   Q.  So who would be some other plans?

25   A.  You can self-finance and you could full



1  Protection Corp. and National Car Cure?

2      A.  Marketing practices, the way we handled

3  calls, staffing.  A bunch of differences.

4      Q.  And the way you handled calls, what were the

5  differences?

6      A.  Just making sure that we were compliant.

7  We did a lot more alternative marketing, such as

8  radio and TV, and things like that, mail.

9      Q.  And who was the point of contact, when you

10  were operating National Auto Protection Corp., for

11  your contact with Sunpath?

12      A.  I believe it was both Tommy and myself.

13      Q.  And did you have a contact at Northcoast?

14      A.  I don't think I've ever spoken to anyone at

15  Northcoast.

16      Q.  And did you have a contact at Mepco?

17      A.  We do.  I don't remember.  I don't remember

18  who it was over there.

19      Q.  When you signed up National Auto Protection

20  Corp. to sell Sunpath, did you fill out an application?

21      A.  I'm sure we did.

22      Q.  Did you use prerecorded voice calls when you

23  were at National Auto Protection Corp.?

24      A.  No.

25      Q.  So what about telemarketing compliance did



1        Thank you, sir.

2        Q.   Mr. Renny, I am showing you what has been

3   previously marked by counsel for the plaintiffs as

4   Exhibit C in this matter.  And I want to direct your

5   attention to question or demand No. 10 in the subpoena.

6        And correct me if I'm wrong, No. 10 indicates

7   documents and communications exchanged between you,

8   which would be National Car Cure, and AmTrust North

9   America, Inc., including prior negotiations,

10  promotional material, contracts, guidelines,

11  invoices, receipts, sales reports and correspondence

12  between you and any such persons.

13       I read that correctly; right?

14       A.   Yes, sir.

15       Q.   And we can agree that "you" means National

16  Car Cure; correct?

17       A.   Yes, sir.

18       Q.   Your response, through counsel, to that

19  request, and I'm summarizing, is that you were not in

20  possession of any such materials, nor were you aware

21  of any third parties that were in possession of such

22  materials.  Correct?

23       A.   Yes, sir.

24       Q.   And that's because National Car Cure never

25  communicated directly, or has any documents that it



GUSTAV RENNY                                    May 10, 2023
KURT MORALES II vs SUNPATH                                97

1  received directly from AmTrust North America, Inc.;

2  correct?

3      A.  Yes, sir.  That's all above my pay grade.

4      Q.  Mr. Renny, I want to go back to a different

5  line of questioning now that Mr. Javitch went

6  through, and some responses that you had in that

7  regard.

8          MR. HURLEY:  And, Mr. Javitch, I need to

9          impose again, but if you could move it up to

10         subpoena item No. 2.

11     Q.  Mr. Renny, looking at the same Exhibit C,

12 item No. 2, would you agree with me that that item

13 says documents you contend demonstrate consent to be

14 called for plaintiffs or for plaintiffs' phone

15 numbers, including but not limited to telephone calls

16 placed to Brandon Callier's cellular phone number on

17 December 27, 2019 and February 12, 2020, and calls

18 placed to Kurt Morales' cellular phone number on

19 March 4, 2020, all of which used prerecorded or

20 artificial voice messages."

21         That's what that reads, sir; correct?

22     A.  Yes, sir.

23     Q.  Please do correct me if I'm wrong, and I

24 don't mean to put words in your mouth, but if I heard

25 your testimony correctly when you were questioned

