IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KURT MORALES II; BRANDON CALLIER; LUCAS HORTON, individually, and on behalf of all others similarly situated, Plaintiffs, | : : : : : : |
| v. | : : |
| SUNPATH LTD.; NORTHCOAST WARRANTY SERVICES, INC.; AMTRUST NORTH AMERICA, INC.; SING FOR SERVICE, LLC; and PELICAN INVESTMENT HOLDINGS GROUP, LLC, Defendants. | Case No.: 20-cv-01376-JLH-SRF : : : : : : : : |

**DEFENDANT AFFORDABLE AUTO SHIELD, INC.'S
OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Stephen D. Dargitz (Del. Bar No. 3619)
O'HAGAN MEYER PLLC
800 North King Street, Suite 303
Wilmington, DE 19801
(302) 492-2150
sdargitz@ohaganmeyer.com

*Counsel to Defendant
Affordable Auto Shield, Inc.*

Dated: July 11, 2025

#7881796v1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I. **INTRODUCTION** ........................................................................................................1

II. **NATURE AND STAGE OF PROCEEDINGS** ...........................................................1

III. **STATEMENT OF FACTS**..........................................................................................1

IV. **SUMMARY OF ARGUMENT** ..................................................................................5

V. **LEGAL STANDARD** .................................................................................................5

VI. **ARGUMENT**..............................................................................................................7

    A. None of the Named Plaintiffs Was Called By AAS ……………………………….7

    B. Plaintiffs Have Not Proven Alter Ego Liability Against AAS ………………………8

VII. **CONCLUSION**........................................................................................................13

#7881796v1

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Secore*,
    2024 U.S. Dist. LEXIS 231445 (E.D. Pa. Dec. 23, 2024) ................................................. 7

*Anderson v. Liberty Lobby Inc.,*
    477 U.S. 242, 248 (1986) ................................................................................................. 6

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 322-23 (1986)) .......................................................................................... 6

*Clark v. Welch,*
    2016 WL 859259, at *2 (D. Del. Mar. 3, 2016) .............................................................. 6

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC.,*
    2023 Del. Ch. LEXIS 359 (Del. Ch. Sept. 5, 2023) ................................................. 11,12

*Compagnie des Grands Hôtels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC,*
    2024 U.S. App. LEXIS 24065 (3d Cir. Sept. 20, 2024) ................................................ 12

*DG BF, LLC v. Ray,*
    2021 Del. Ch. LEXIS 37 (Del. Ch. Mar. 1, 2021) .......................................................... 9

*ECB USA, Inc. v. Savencia, S.A.*,
    2025 U.S. Dist. LEXIS 10454 (D. Del. Jan.16, 2025) ........................................... 9, 10,11

*Empower Brands, LLC v. Tristar Prods., Inc*
    2024 U.S. Dist. LEXIS 225561 (D. Del. Dec. 12, 2024) .............................................. 12

*Fidelity Nat. Info. Servs., Inc. v. Plano Encryption Techs., LLC.*
    Civil Action No. 15-777-LPS-CJB, 2016 U.S. Dist. LEXIS 54653, 2016 WL
    1650763, at *4 (D. Del. Apr. 25, 2016); ......................................................................... 9

*Gracey v. Albawardi,*
    2024 Del. Ch. LEXIS 383 (Del. Ch. Dec. 13, 2024) ..................................................... 11

*I AM Athlete, LLC v. IM Enmotive, LLC.*,
    2023 Del. Ch. LEXIS 651 (Del. Ch. Dec. 27, 2023) ...................................................... 9

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,*
    2024 Del. Ch. LEXIS 383 (Del. Ch. Dec. 13, 2024) ..................................................... 11

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) .................................................................................................. 8

*Lamont v. New Jersey*,
    637 F.3d 177, 181 (3d Cir. 2011) ........................................................................... 6

*Mason v. Network of Wilmington, Inc.*,
    No. Civ. A. 19434-NC, 2005 Del. Ch. LEXIS 99, 2005 WL 1653954, at *2-3 (Del. Ch. July 1, 2005) ..................................................................................................... 9

*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 587 (1986) ........................................................................................ 6

*Maxus Energy Corp.*,
    617 B.R. 806, (Bankr. D. Del. 2020) ..................................................................... 10

*Regions Bank v. NBV Loan Acquisition Member LLC.*,
    2022 U.S. Dist. LEXIS 86588, 2022 WL 1499942, at *6 [(S.D. Fla. May 12, 2022)] ..................................................................................................................... 9

*Unijax, Inc. v. Factory Ins. Ass'n*,
    328 So.2d 448 (Fla. Dist. Ct. App. 1976) ............................................................. 10

*Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*,
    752 A.2d 1175 (Del. Ch. 1999) ............................................................................... 9

*Weiss Cap. Mgmt., Inc. v. Crowder.*,
    964 So.2d 865 (Fla. Dist. Ct. App. 2007) ............................................................. 10

*Wenske v. Blue Bell Creameries, Inc.*,
    2018 Del. Ch. LEXIS 530 (Del. Ch. Nov. 13, 2018) ............................................ 10

*Williams v. Borough of West Chester, Pa.*,
    891 F.2d 458, 460-61 (3d Cir. 1989) ...................................................................... 6

*Yu v. GSM Nation, LLC.*,
    2017 Del. Ch. LEXIS 117 (Del. Ch, July 7, 2017) .............................................. 10

## I.     INTRODUCTION

Plaintiffs' counsel tried and failed to find a client with standing to bring TCPA claims against Defendant Affordable Auto Shield, Inc. ("AAS"). It is undisputed that AAS did not call any of the Plaintiffs. As explained previously in AAS' Answering Brief in Opposition to the Motion for Class Certification (D.I. No. 352; *see also* D.I. Nos. 353, 362), the resulting lack of Article III standing is fatal to Plaintiffs' attempt to certify a class against AAS. Now, upon the conclusion of discovery, the same lack of standing means that Plaintiffs can no longer proceed with claims against AAS on either an individual or classwide basis.

## II.    NATURE AND STAGE OF PROCEEDINGS

On December 20, 2024, Plaintiffs filed a motion to certify classes and subclasses in this action, D.I. 326, along with a brief, D.I. 327, and an attorney affidavit attaching 38 exhibits. D.I. 328 (the "Blake Affidavit"). Exhibit 2 to the Blake Affidavit was a spreadsheet containing a list of customer information produced to Plaintiffs in discovery by third party Stone Eagle (the "Stone Eagle List"), along with subsets of the master list containing information for the members of proposed classes and subclasses.

The Order entered by the Court on September 15, 2024, provides in part that dispositive motions may be made on or before July 11, 2025. D.I. 309, at 3. This is the Opening Brief of Defendant AAS in support of its Motion for Summary Judgment.

## III.   STATEMENT OF FACTS

*AAS was not named as a defendant until the sixth iteration of the Complaint.*

On October 9, 2020, Plaintiffs Kurt Morales II, Ben Fabrikant, Stephen Ost, Brandon Callier, and Nathan Byars filed the original complaint in this action, naming as Defendants Sunpath Ltd ("Sunpath"), Northcoast Warranty Services, Inc. ("Northcoast"), and Matrix

1

#7881795v1

Financial Services, LLC ("Matrix"). D.I. 1. On November 17, 2020, the same Plaintiffs filed the First Amended Complaint against the same Defendants. D.I. 12. On February 10, 2021, Plaintiffs Morales, Fabrikant, and Callier (but not Ost and Byars) filed the Second Amended Complaint against Defendants Sunpath and Northcoast (but not Matrix). D.I. 46. On June 3, 2021, Plaintiffs Morales, Callier, and Lucas Horton (but not Fabrikant) filed the Third Amended Complaint, again against Defendants Sunpath and Northcoast. D.I. 58.

On September 20, 2022, Plaintiffs filed the Fourth Amended Complaint, naming for the first time as Defendants Amtrust North America, Inc. ("Amtrust"), Sing for Service, LLC ("Mepco"), and Pelican Investment Holdings LLC ("Pelican" or, when appropriate, "AAP"). D.I. 93. Among the classes proposed by Plaintiffs were four classes defined by reference to AAP, with some classes based on contact more than four years prior to the filing of the Fourth Amended Complaint.[1]

On <u>July 14, 2023</u>, Plaintiffs filed the Fifth Amended Complaint, naming AAS as a Defendant for the first time. D.I. 152. Plaintiffs alleged that AAP and AAS were "the alter egos of each and every one of Renny's other entities that engaged in robocalling to solicit VSCs." *Id.* ¶ 141, *see also* ¶¶ 142-45. However, despite being a named Defendant and a purported alter ego

---

[1] **AAP Monetary Relief Class.** All persons in the United States who: (1) from July 14, 2018 [sic] to the present; (2) were sent at least one telephone call; (3) on their cellular or residential phone; (4) that used an artificial or prerecorded voice message; (5) promoting AAP's vehicle service contracts.
**AAP Injunctive Relief Class**. All persons who did not give express written consent prior to receiving calls advertising AAP's vehicle service contracts on their cellular or telephone numbers.
**AAP Do Not Call Class.** All persons in the United States who: (1) from July 14, 2018 [sic] to the present; (2) were called two or more times within a twelve month period by a person authorized to sell AAP vehicle service contracts without prior express written consent; (3) while their number was registered on the National Do Not Call Registry.
**AAP Texas Subclass.** All persons in Texas who: (1) from July 24, 2018 [sic] to the present, (2) were called by AAP; and (3) the purpose of the call was to sell a VSC." D.I. 93, ¶ 82.

2

#7881795v1

of other unnamed companies, AAS was not expressly included in any of Plaintiffs' proposed classes, which used the undefined term, "Renny-affiliated company."[2] *Id.* ¶ 227. Nor did Plaintiffs make any classwide allegations against AAS, including alter ego allegations. *Id.* ¶¶ 64 ("Renny's *AAP is the alter ego of* various companies formed, controlled, and owned by Renny, including but not limited to … *AAS*.") (emphasis added); *id.* ¶ 227. Plaintiffs have never since filed an amended pleading adding any other entities as Defendants.

Plaintiffs' counsel and/or Plaintiff Callier have filed putative class actions in other courts against many of the "Renny Entities" not named as Defendants in this action, as well as VAD. *Callier v. Sunpath Ltd, et al.*, 3:20-cv-00106 (W.D. Tex.) (National Car Cure, LLC, Celtic Marketing LLC [a/k/a VAD]); *Canfield v. VAD, et al.*, 8:19-cv-01162-AG-KES (C.D. Cal.); *Day v. Renny, et al.*, 8:20-cv-00104-JFB-CRZ (D. Neb.) (National Car Cure LLC, National Auto Protection Corp.); *Fabrikant v. Assured Auto Group, Inc., et al.*, 8:2019-cv-00383-SMB (D. Neb.); *Shanahan v. National Auto Protection Corp., et al.*, 1:19-cv-03788 (N.D. Ill.); *Smith v. Affordable Automotive Solution, et al.*, 8:19-cv-00259-LSC-MDN (D. Neb.). *See also Rowan v. Affordable*

---

[2] **AAP Monetary Relief Class.** All persons in the United States who: (1) from July 14, 2018 to the present; (2) were sent at least one telephone call; (3) on their cellular or residential telephone; (4) that used an artificial or prerecorded voice message; (5) promoting AAP's or other Renny-affiliated company's vehicle service contracts.
**AAP Injunctive Relief Class.** All persons who did not give express written consent prior to receiving calls advertising AAP's or other Renny-affiliated company's vehicle service contracts on their cellular or residential telephone numbers.
**AAP Do Not Call Class.** All persons in the United States who: (1) from July 14, 2018 to the present; (2) were called two or more times within a twelve month period by a person authorized to sell AAP's or other Renny-affiliated company's vehicle service contracts without prior express written consent; (3) while their number was registered on the National Do Not Call Registry.
**AAP Texas Subclass.** All persons in Texas who: (1) from July 14, 2018 to the present; (2) were called by AAP or other Renny-affiliated company; and (3) the purpose of the call was to sell a VSC.

3

*Car Cure, Inc., et al.*, 9:20-cv-82168-RKA (S.D. Fla.). *See generally* Dargitz Declaration Exhibit 1. Notably, none of those plaintiffs brought suit against AAS.

*AAS never called Plaintiffs.*

None of the Plaintiffs have presented evidence to show that they were called by someone from Affordable Auto Shield. First, Plaintiffs do not claim they heard the name of any Defendant in the phone calls they allege they received. Dargitz Decl., Ex. 4 (Callier 84:12-85:10, 229:21-24, 234:15-18, 235:21-236:4); Horton *passim*; Dargitz Decl. Ex. 6 (Morales 102:1-10, 104:9-105:2, 105:17-20, 126:11-127:13, 207:13-21). Second, each Plaintiff simply drew inferences that certain companies were at least tangentially resolved in the phone calls by virtue of the fact that those companies were mentioned in paperwork that Plaintiff received after agreeing over the phone to purchase a VSC. Dargitz Decl. Ex. 4 (Callier 230:1-13, 234:19-21, 235:21-236:4); Dargitz Decl. Ex. 5 (Horton 98:22-99:3, 102:11-14, 106:19-107:17, 112:13-18); Dargitz Decl. Ex. 6 (Morales 57:16-58:17, 181:11-182:5, 207:23-208:16). None of the post-call paperwork produced by Plaintiffs mentioned AAS. Dargitz Decl. Ex. 8(Callier Dep. Exhibits 18, 19); Dargitz Decl. Ex. 9 (Horton Dep. Exhibits 9, HM-2, HM-3); Dargitz Decl. Ex. 10 (Morales Dep. Exhibits 2, 5). Third, of the companies named by Plaintiffs as having involvement with their VSC purchases, none were Affordable Auto Shield. DI. 328 Ex. 19 (Morales) ¶ 5; D.I. 328 Ex. 21 (Horton) ¶¶ 5, 8; D.I. 328 Ex. 20 (Callier) ¶¶ 5, 9, 13, 16. Finally, none of the Plaintiffs possessed knowledge directly linking Affordable Auto Shield to any of the phone calls. Dargitz Decl. Ex. 4 (Callier 234:15-22); Dargitz Decl. Ex. 5 (Horton 175:6-16); Dargitz Decl. Ex. 6 (Morales 207:13-208:20); *see al*so Horton 191:14-192:5 (e.g., "Gus Renny and the last defendant … didn't have anything to do with these two batches of calls.").

Nor was Affordable Auto Shield mentioned by any of the other individuals who provided declarations that Plaintiffs submitted in support of their motion for class certification. D.I. 328, Ex. 25: Ballan (National Car Cure); Boehm (VAD); Canfield (VAD); Day (National Car Cure); Fabrikant (Assured Auto Group); Shanahan (National Auto Protection Corp.); Smith (Affordable Automotive Solution); Teleis (Affordable Car Cure, Inc.); Trowbridge (National Car Cure). Many of those individuals filed class action lawsuits against the entities they claim called them, with some appearing to have settled their claims. None sued AAS. This should not be surprising, because as acknowledged by Plaintiffs, Renny testified that AAS relied primarily on incoming calls in response to mailers. Dargitz Decl. Ex. 7 (Renny 185:20-188:22, 240:9-21).

Plaintiffs also have failed to show that AAS is an alter ego of persons who actually did call them, such that AAS should be held accountable for the actions of those who made calls. Gus Renny, who allegedly is the common thread between AAS and other entities, testified that in fact he does not own any interest in AAS. Dargitz Decl. Ex. 7 (Renny 16:2-3).

### IV.  SUMMARY OF ARGUMENT

This Court lacks subject matter jurisdiction if Plaintiffs lack Article III standing to assert their claims. Here, it is undisputed that AAS never called any of the plaintiffs at all, let alone in a way that violated the TCPA. As explained previously in AAS' Answering Brief in Opposition to the Motion for Class Certification, Plaintiffs' attempt to alchemize a class from nothing is unsuccessful.

### V.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a

5

#7881795v1

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). The existence of some alleged factual dispute may not be sufficient to deny a motion for summary judgment; rather, there must be enough evidence to enable a reasonable jury to find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*, 2016 WL 859259, at *2 (D. Del. Mar. 3, 2016). If the non-movant makes an insufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

#7881795v1

## VI. AS A MATTER OF LAW, AAS CANNOT BE LIABLE TO PLAINTIFFS

"A plaintiff cannot maintain an action against a defendant that did not injure him." *Alexander v. Secore*, 2024 U.S. Dist. LEXIS 231445, at *10 (E.D. Pa. Dec. 23, 2024). As a matter of law, Plaintiffs have no legally cognizable claim against AAS, whether as a caller or as an alter ego.

### A. None of the Named Plaintiffs Was Called By AAS

There is no evidence in the record to show that Plaintiffs were called by someone from Affordable Auto Shield. First, Plaintiffs do not claim they heard the name of any Defendant in the phone calls they allege they received. Dargitz Decl., Ex. 4 (Callier 84:12-85:10, 229:21-24, 234:15-18, 235:21-236:4); Horton *passim*; Dargitz Decl. Ex. 6 (Morales 102:1-10, 104:9-105:2, 105:17-20, 126:11-127:13, 207:13-21). Second, each Plaintiff simply drew inferences that certain companies were at least tangentially resolved in the phone calls by virtue of the fact that those companies were mentioned in paperwork that Plaintiff received after agreeing over the phone to purchase a VSC. Dargitz Decl. Ex. 4 (Callier 230:1-13, 234:19-21, 235:21-236:4); Dargitz Decl. Ex. 5 (Horton 98:22-99:3, 102:11-14, 106:19-107:17, 112:13-18); Dargitz Decl. Ex. 6 (Morales 57:16-58:17, 181:11-182:5, 207:23-208:16). None of the post-call paperwork produced by Plaintiffs mentioned AAS. Dargitz Decl. Ex. 8(Callier Dep. Exhibits 18, 19); Dargitz Decl. Ex. 9 (Horton Dep. Exhibits 9, HM-2, HM-3); Dargitz Decl. Ex. 10 (Morales Dep. Exhibits 2, 5). Third, of the companies named by Plaintiffs as having involvement with their VSC purchases, none were Affordable Auto Shield. DI. 328 Ex. 19 (Morales) ¶ 5; D.I. 328 Ex. 21 (Horton) ¶¶ 5, 8; D.I. 328 Ex. 20 (Callier) ¶¶ 5, 9, 13, 16. Finally, none of the Plaintiffs possessed knowledge directly linking Affordable Auto Shield to any of the phone calls. Dargitz Decl. Ex. 4 (Callier 234:15-22); Dargitz Decl. Ex. 5 (Horton 175:6-16); Dargitz Decl. Ex. 6 (Morales 207:13-208:20); *see also* Horton

7

#7881795v1

191:14-192:5 (e.g., "Gus Renny and the last defendant … didn't have anything to do with these two batches of calls.").

Nor was Affordable Auto Shield mentioned by any of the other individuals who provided declarations that Plaintiffs submitted in support of their motion for class certification. D.I. 328, Ex. 25: Ballan (National Car Cure); Boehm (VAD); Canfield (VAD); Day (National Car Cure); Fabrikant (Assured Auto Group); Shanahan (National Auto Protection Corp.); Smith (Affordable Automotive Solution); Teleis (Affordable Car Cure, Inc.); Trowbridge (National Car Cure). Many of those individuals filed class action lawsuits against the entities they claim called them, with some appearing to have settled their claims. None sued AAS. This should not be surprising, because as acknowledged by Plaintiffs, Renny testified that AAS relied primarily on incoming calls in response to mailers. Dargitz Decl. Ex. 7 (Renny 185:20-188:22, 240:9-21).

### B. Plaintiffs Have Not Proven Alter Ego Liability Against AAS

In their motion to certify a class, Plaintiffs asserted that "federal common law" applies to their claim of alter ego liability.[3] D.I. 327, at 17-18. AAS is a Delaware corporation, and the non-party "Renny Entities" were formed in Florida and, in the case of Affordable Car Cure, Inc., Wyoming. D.I. 328, Ex. 13; see Dargitz Decl. Ex. 2. *See generally Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) (stating that under internal affairs doctrine, law of incorporating jurisdiction applies to rights and duties of stockholders). In similar circumstances, this Court has

---

[3] Plaintiffs cite an opinion from the District of Vermont applying law from Second Circuit district courts to determine whether to exercise personal jurisdiction over a Chinese entity, based on the acts of its purported alter ego, a New Hampshire corporation with its office in China. *Concepts NREC, LLC v. Qiu*, 662 F. Supp. 3d 496, 507 (D. Vt. 2023). The question in that case was not whether to impose liability on the New Hampshire corporation based on the acts of a non-party foreign entity. Regardless, the opinion does not purport to describe either Delaware or Florida law.

applied the law of both Delaware and Florida, while recognizing its analysis remains the same. *ECB USA, Inc. v. Savencia, S.A.*, 2025 U.S. Dist. LEXIS 10454, at *11 (D. Del. Jan.16, 2025).

> In Delaware, the party seeking to demonstrate that one entity is the alter ego of another must show: (1) that there has been a lack of attention applied to corporate separateness between two entities (i.e., that the two are functionally a single economic entity); and (2) that the alleged misuse of the corporate form would work a fraud or some form of injustice or unfairness. *See Fidelity Nat. Info. Servs., Inc. v. Plano Encryption Techs., LLC*, Civil Action No. 15-777-LPS-CJB, 2016 U.S. Dist. LEXIS 54653, 2016 WL 1650763, at *4 (D. Del. Apr. 25, 2016); *Mason v. Network of Wilmington, Inc.*, No. Civ. A. 19434-NC, 2005 Del. Ch. LEXIS 99, 2005 WL 1653954, at *2-3 (Del. Ch. July 1, 2005); *see also Regions Bank [v. NBV Loan Acquisition Member LLC]*, 2022 U.S. Dist. LEXIS 86588, 2022 WL 1499942, at *6 [(S.D. Fla. May 12, 2022)]. In assessing the first of these elements, Delaware courts consider various factors, including: (1) whether the corporation is adequately capitalized; (2) whether the corporation is solvent; (3) whether corporate formalities were observed (e.g., whether dividends were paid, corporate records kept, or officers and directors functioned properly); (4) whether the controlling shareholder siphoned company funds; and (5) in general, whether the corporation simply functioned as a facade for the controlling shareholder.

*ECB USA*, at *13 n.2. No single factor is determinative, and "[t]he overarching issue is whether 'the corporate structure [has] cause[d] fraud or similar injustice' – in other words, whether the corporation is 'a sham and exist[s] for no other purpose than as a vehicle for fraud.'" *I AM Athlete, LLC v. IM Enmotive, LLC*, 2023 Del. Ch. LEXIS 651, at *12 (Del. Ch. Dec. 27, 2023) (Magistrate's Report) (citing *Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999)).

The documents that Plaintiffs claim establish alter ego liability establish exactly the opposite. For example, Plaintiffs have cited Exhibit 14 to the Blake Affidavit as showing that "the same key employees" worked for each entity, D.I. 327, at 5. Even if that were relevant, Plaintiffs failed to identify any such key employees or the tenure of their employment with each respective entity. Moreover, Exhibit 14 to the Blake Affidavit contains a series of contracts with *different companie*s – Assured Auto Group, Inc., Affordable Car Cure, Inc., Affordable Auto Shield, Inc.,

National Auto Protection Corp., Zander Collins Smith, and Pelican Investment Holdings LLC. If, as Plaintiffs suggest, the "Renny Entities" were all one unitary being, separate contracts would not have been necessary. In addition, the fact that each entity entered into contracts and conducted business demolishes any notion that any of them was a "sham." *DG BF, LLC v. Ray*, 2021 Del. Ch. LEXIS 37 (Del. Ch. Mar. 1, 2021); *Yu v. GSM Nation, LLC*, 2017 Del. Ch. LEXIS 117 (Del. Ch, July 7, 2017).

Finally, the fact that there is overlap among some directors and officers, or even common ownership, is insufficient to ignore corporate separateness and pierce the corporate veil. *Wenske v. Blue Bell Creameries, Inc.*, 2018 Del. Ch. LEXIS 530 (Del. Ch. Nov. 13, 2018); *see In re Maxus Energy Corp.*, 617 B.R. 806, 818 (Bankr. D. Del. 2020). "One-hundred percent ownership and identify of directors are, even together, an insufficient basis for applying an alter ego theory to pierce the corporate veil." *Weiss Cap. Mgmt., Inc. v. Crowder*, 964 So.2d 865, 866-67 (Fla. Dist. Ct. App. 2007) (citation omitted); *see Unijax, Inc. v. Factory Ins. Ass'n*, 328 So.2d 448, 454 (Fla. Dist. Ct. App. 1976).

Plaintiffs' other evidence is even less persuasive. For example, Plaintiffs cite an email in which a creditor sought payment for one so-called "Renny Entity" before entering into a contract with another entity. D.I. 328, Ex. 15. Again, this only goes to establish that the two entities were separate. If the new entity were merely the same company under a different name, no pre-payment would be necessary. Moreover, Plaintiffs cite no authority for the proposition that, for example, a common guarantor establishes corporate unity for purposes of veil piercing. Plaintiffs also draw sweeping inferences from requests for "toggle access" to *different companies*, made years before AAS existed, as though this also establishes a unitary entity. D.I. 328, Exs. 16-17. To the contrary, switching from one account to another establishes that separate entities were kept separate. *See*

10

#7881795v1

*ECB USA*, at *16. Exhibit 18 to the Blake Affidavit – a series of five different account numbers, followed by account statements for two different entities *with different account numbers for each entity* – only further establishes corporate separateness.

Finally, from a narrative standpoint, it also is simply not true that one entity was dissolved and then replaced by another. As shown in the table attached as Exhibit 2 and the timeline attached as Exhibit 3 to the Transmittal Declaration in support of this brief, there was substantial overlap of the years of operation of different "Renny Entities." In addition, entities tended to be created during the same period, and dissolved during the same period. This does not suggest even a hint of the misuse of the corporate form for any purpose.

Veil piercing requires an exceptionally high standard, and is available only when a corporation is a sham, existing for no purpose other than fraud. Plaintiffs must show "'that the corporate form in and of itself operates to serve some fraud or injustice, distinct from the alleged wrongs.'" *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 Del. Ch. LEXIS 359, at *14 n.89 (Del. Ch. Sept. 5, 2023) (quoting *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 Del. Ch. LEXIS 21 (Del. Ch. Mar. 4, 2004)). Plaintiffs do not even attempt to meet that standard. To the contrary, Plaintiffs allege that each of the "Renny Entities" was in the business of selling VSCs over the phone. That each entity had actual business operations belies any inference of sham entities. *Cleveland-Cliffs Burns*, at *13-14 & n. 86; *see also Gracey v. Albawardi*, 2024 Del. Ch. LEXIS 383, at *10-11 (Del. Ch. Dec. 13, 2024) (declining to pierce veil of offshore entities formed and owned by the same former spouse, and noting that each entity existed prior to any judgment).

Nor have Plaintiffs shown that separate corporate entities worked an injustice. First, Plaintiffs were free to bring actions in a court of competent jurisdiction against entities that actually

11

called them.  *See Compagnie des Grands Hôtels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*, 2024 U.S. App. LEXIS 24065, at *8-9 (3d Cir. Sept. 20, 2024). That Plaintiffs, for whatever reason, may not have done so, or may not have pursued those cases to a judgment, does not allow them to sue an entity that the record proves never called them.  Second, Plaintiffs never named Mr. Renny as a defendant in this action, because they knew they could not satisfy the requirements for traditional veil piercing, even to meet the standard for personal jurisdiction.  Plaintiffs do not attempt to meet the standard for traditional veil piercing for any of the "Renny Entities," and particularly, not for AAS.  Replacing one inadequate, unpled, and unproven veil piercing claim with several implied, unpled, and unproven veil piercing claims does not make any of them stronger.  *Id.* at *9-10.  Finally, Plaintiffs have not shown that they brought suit against a "*Renny Entity*," but that funds in the possession of that entity were funneled to another.  *Cf. id.* at *12. Exhibit 18 to the Blake Affidavit shows only the following:  (1) On May 18, 2022, an account opened for AAS with an initial transfer of $10,000, and an additional $60,000 was transferred into the account on May 25, 2022; and (2) Transfers of *different amounts* were made out of a Pelican account on May 23, May 24, May 25, May 26, and May 27, 2022.  Plaintiffs did not add any so-called "Renny Entity" to this suit until September 20, 2022.  We also note that the last page of Exhibit 18 is a signature page for a completely different account.

      Moreover, as none of the "Renny Entities" is alleged to be a parent or subsidiary of another, the veil piercing that Plaintiffs are attempting to undertake has been described as "horizontal" or "sister" veil piercing.  Delaware has not adopted horizontal piercing and "enterprise" liability. *Empower Brands, LLC v. Tristar Prods., Inc.*, 2024 U.S. Dist. LEXIS 225561, at *9 (D. Del. Dec. 12, 2024); *Cleveland-Cliffs Burns*, at *15 & n.94.  Under any theory of veil piercing, Plaintiffs have failed to make the requisite showing.

## C. CONCLUSION

For all of the above reasons, the Court should grant this motion for summary judgment and dismiss with prejudice all claims against Affordable Auto Shield, Inc.

                                              Respectfully,

                                              */s/   Stephen D. Dargitz*
                                              Stephen D. Dargitz (Del. No. 3619)
                                              O'HAGAN MEYER PLLC
                                              800 North King Street, Suite 303
                                              Wilmington, DE 19801
                                              (302) 492-2150
                                              sdargitz@ohaganmeyer.com
                                              Counsel to Defendant
                                              Affordable Auto Shield, Inc.

Date: July 11, 2025

#7881795v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of July, 2025, I caused the foregoing to be filed through the Court's electronic filing system, which will send notice electronically to all parties of record.

/s/ *Stephen D. Dargitz*
Stephen D. Dargitz (Del. No. 3619)

#7881795v1